UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
*Western Division*

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE COCA-COLA COMPANY, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. C-1-02-393 <br><br> Hon. Walter Herbert Rice <br> Hon. Sharon Ovington (Magistrate) |

**PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF FORMULATION INFORMATION AND IN OPPOSITION TO CROSS-MOTION FOR A PROTECTIVE ORDER**

*I.  Introduction*

In an attempt to avoid producing information that is clearly relevant, and potentially crucial, to The Procter & Gamble Company's ("P&G") allegations of patent infringement, The Coca-Cola Company ("Coca-Cola") has: (1) misinterpreted the standard for seeking discovery; (2) made questionable assertions about the composition of its products; (3) denigrated the Confidentiality Stipulation and Protective Order that it helped draft; and (4) drawn an irrelevant comparison between its discovery obligations in this case and the obligations of a third party. Despite Coca-Cola's best efforts at misdirection, however, it cannot escape one important fact: the information P&G seeks is "reasonably calculated to lead to the discovery of admissible evidence" within the meaning of Fed. R. Civ. P. 26. On this basis alone, the Court should order Coca-Cola to produce the formulation information that it has withheld and allow P&G (and the Court) to fully explore all the issues in this case. Further, Coca-Cola's cross-motion for a

protective order is nothing more than a tactic designed to recast the issues in its favor. That cross-motion should be denied.

## *II.* *Argument*

### A. The Information At Issue Is Discoverable Under Fed. R. Civ. P. 26.

To obtain discovery, P&G is merely required to demonstrate that the information sought *may* lead to the discovery of admissible evidence; contrary to Coca-Cola's suggestion, P&G need not (and, in the absence of the information itself, *cannot*) establish a direct nexus between the requested formulation information and its claims of patent infringement. The information P&G seeks is undeniably part of Coca-Cola's formula for the products that are accused of infringement. Understanding *all* the ingredients and their interactions with each other is certainly necessary to any infringement determination. As one court stated, "in most disputes over the discoverability of trade secrets . . . the necessity of the discovery of the *complete* formulae *follows logically* from the determination that the formulae are relevant." *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 107 F.R.D. 288, 297-98 (D. Del. 1985) (ordering disclosure of alleged trade secrets) (emphasis added).[1]

In seeking to avoid legitimate discovery, Coca-Cola focuses on only one specific reason proffered by P&G as to why the information at issue is potentially relevant – the possible relationship between the ingredients at issue and the "acid component" of the accused products. In doing so, Coca-Cola effectively seeks to have the Court resolve the merits of the case in a discovery motion, by submitting expert affidavits and information aimed at demonstrating that the ingredients at issue do not contribute to Coca-Cola's infringement of P&G's patent. As an

---

[1] Given Coca-Cola's reliance on this case to support its position in correspondence with P&G prior to the filing of the instant motion, Coca-Cola's failure to cite – or even address – this case in its memorandum is surprising, to say the least.

initial matter, even if Coca-Cola were ultimately to prevail on this issue, infringement is for the fact-finder to decide based upon full information, not merely Coca-Cola's representations. Moreover, Coca-Cola's representations are subject to challenge given the existence of contrary evidence that at least some of the ingredients that Coca-Cola may be adding to the accused products do, in fact, contain some acids. (See Declaration of Robert Baker, attached hereto as Exhibit 1.) Ultimately, the only way to resolve the accuracy of Coca-Cola's representations on this issue is to permit P&G (and the fact-finder) to review the relevant information at issue.

Additionally, in its opening memorandum, P&G expressly stated that the withheld information might lead to relevant information regarding other claim limitations of the patent-in-suit. (See Mem. at 7, n.4.) Coca-Cola redacted numerous documents on the basis of trade secrets. Coca-Cola has never provided any basis for its "trade secret" assertions. Moreover, because Coca-Cola has not provided any index or log identifying the subject matter of the information redacted, P&G can only guess as to the potential relevance of the material at issue. However, given that Coca-Cola itself has deemed the underlying documents responsive to P&G's discovery requests, its suggestion that the redacted information is utterly irrelevant is simply not credible. At the very least, P&G is entitled to review such information in order to understand the context of the documents produced, many of which discuss improvements in or changes to the accused products due to competition from P&G or its licensee. Coca-Cola's brief in opposition to P&G's motion to compel fails to address these other issues.[2]

---

[2] Additionally, Coca-Cola's few citations to case law do not support its position regarding the discoverability of the information at issue. In *Advanced Cardiovascular Sys. Inc v. Medtronic, Inc.*, the Federal Circuit found that the district court did not abuse its discretion in refusing to allow an accused infringer to introduce a settlement agreement *at trial*. 265 F.3d 1294, 1308 (Fed. Cir. 2001). It is well-established that the standard for discoverability of information is broader than the standard for admissibility at trial. *See Balalovski v. Lucent Tech., Inc*, No. C-2-00-189, 2002 WL 32094430, at **2-3 (S.D. Ohio Sept. 5, 2002) (Sargus, M.J.) (denying two motions for protective order for depositions and documents since "liberal relevance standards" of discovery rules preclude court from
(continued on next page . . . .)

BOSTON 1731425v1

B.  **Coca-Cola's Arguments Concerning The Inadequacy Of
The Existing Protective Order Are Unfounded.**

In an attempt to rebut P&G's argument that the Protective Order previously negotiated and agreed upon by the parties, and entered by this Court, is sufficient to protect the confidentiality of the information at issue, Coca-Cola offers a parade of horribles concerning the potential for inadvertent disclosure or misuse of the information.

This Court has previously recognized that protective orders limiting access to outside counsel (including counsel's associates and employees) adequately guard against the potentially injurious disclosure of confidential information. *See Liberty Folder v. Curtiss Anthony Corp.*, 90 F.R.D. 80 82-84 (S.D. Ohio 1981) (Rice, J.) (ordering production of confidential business information to outside counsel for competitor and denying motion for protective order notwithstanding allegation that requesting party had "propensity" to misuse confidential information). As evidenced by Coca-Cola's extensive use of the confidentiality provisions of the Protective Order during the discovery process, the Protective Order provides more than adequate protection for Coca-Cola's confidential information.

That P&G did not specifically mention "oils" and "essences" during the course of negotiating the Protective Order or in its Complaint is irrelevant to whether Coca-Cola should be required to produce the information it has withheld. Prior to the entry of the Protective Order, discovery had barely begun. As such, P&G did not know the exact components of the accused products and could not have been expected to anticipate that there would be a particular

---

danying discovery based on speculative assessment of admissibility at trial); *Cupac, Inc. v. Mid-West Ins. Agency*, 100 F.R.D. 440, 442 (S.D. Ohio 1983) (Rice, J.) (denying motion for protective order since assumed inadmissibility at trial of information sought is improper basis to limit discovery request). In *Micro Motion, Inc. v. Kane Steel Co., Inc.*, the Federal Circuit quashed subpoenas issued to non-party competitors seeking the companies' confidential business information on the ground that there was no established link between the products of those competitors and the accused products. 894 F.2d 1318, 1326-28 (Fed. Cir. 1990). By contrast, the issue here is the discoverability of information in the possession of Coca-Cola, a *party* to the case, concerning the formulation *of the accused products*.

BOSTON 1731425v1

confidentiality concern with respect to certain of the ingredients. Indeed, given that P&G's allegations related to the *entire composition* of the accused products, Coca-Cola was in the best position when the Protective Order was being negotiated to know whether particular aspects of its formulation raised unique confidentiality concerns. Nevertheless, Coca-Cola did not raise the issue during the vigorous negotiations in which the parties engaged concerning the terms of the Protective Order. Instead, it agreed to a Protective Order that expressly provided for the treatment of formulation information such as that which Coca-Cola now seeks to withhold.

The concerns that Coca-Cola raises in attempting to evade the plain meaning and application of the Protective Order are based upon sheer conjecture.

- First, Coca-Cola contends that there is an increased risk of "inadvertent disclosure" with respect to the information at issue that warrants its protection. As a practical matter, there is no factual or legal reason why the alleged sensitivity of the information increases the risk of inadvertent disclosure. In addition, Coca-Cola has presented no evidence to suggest that P&G's outside counsel has failed to take steps necessary to avoid inadvertent disclosure.[3] Indeed, the knowledge that disclosure of restricted information, inadvertent or otherwise, is a violation of a Court Order and subject to contempt is reason enough for P&G's attorneys to act appropriately.

- Second, the fact that P&G has licensed the patent-in-suit to Tropicana Products, Inc. ("Tropicana") is irrelevant to the issue of whether *P&G* should be granted access to the information at issue. Likewise, the fact that P&G has asserted the joint defense privilege with respect to certain of its communications with Tropicana or its counsel concerning the litigation is equally irrelevant. P&G is well aware of the sensitivity of much of the information that Coca-Cola has produced in discovery and the potential harm that Coca-Cola would suffer if that information were to be disclosed to its competitor, Tropicana. Accordingly, P&G has no intention of sharing such information with Tropicana or its counsel. Indeed, the Protective Order would not permit such disclosure, and P&G will fully comply with that order.

---

[3] To support its warnings of potential "irreparable harm", Coca-Cola points to ¶¶ 10-11 of the Declaration of Dr. Edison J. Geromel, a Coca-Cola employee. The cited paragraphs, however, contain nothing more than conclusory statements that cannot serve as a reasoned basis for a finding of irreparable harm. For example, Dr. Geromel states that disclosure to outside counsel and experts is insufficient protection because of the potential for "mistake, neglect or even intentional misappropriation" without any evidentiary support for these imagined possibilities. *See* Coca-Cola Br., Ex. 11, at ¶ 11.

- Third, Coca-Cola proffers the conclusory assertion that P&G's experts may work as flavoring consultants or may conduct "reverse engineering" of products on behalf of Coca-Cola's competitors. As an initial matter, all of P&G's experts are bound by the terms of the Protective Order both during and after the life of this case. If they violate the Protective Order in any way, they will be subject to severe penalties. The mere possibility that these experts *might* do some work for a ***direct competitor*** of Coca-Cola at some ***unspecified*** date and then disclose information regarding formulation of specific Coca-Cola products, in direct violation of the Protective Order, is too speculative a basis for the Court to excuse Coca-Cola's discovery obligations. Indeed, if potential future injury were a legitimate basis upon which to prevent disclosure of confidential information, no expert would ever be allowed to view confidential information in industries in which they consult. By allowing its own experts to view information that P&G (and third parties) have designated as restricted under the Protective Order, Coca-Cola plainly believes that these experts will not disclose such information to unauthorized persons now or in the future. P&G's experts deserve the same benefit of the doubt. The vague specter of improper disclosure should not stymie P&G's legitimate efforts to prosecute its case.

In short, the arguments asserted by Coca-Cola about the alleged inadequacy of the Protective Order are nothing more than an attempt to recast this straightforward issue in apocalyptic terms and to avoid legitimate discovery obligations.

### C. The Position Adopted By Tropicana Concerning The Confidentiality Of Its Information Is Irrelevant.

P&G is not bound by Tropicana's position regarding discovery of confidential information. P&G has no control over Tropicana's actions in responding to Coca-Cola's discovery requests, and, as such, Tropicana's actions in no way indicate P&G's "tacit consent" to the redaction of information regarding the accused products. *See* Coca-Cola Br. at 7. Additionally, Tropicana's products (in contrast to Coca-Cola's) are ***not*** accused of infringement; Tropicana's formulation information is certainly irrelevant to whether ***Coca Cola's*** products infringe the patent-in-suit. *See infra* at n.2.

BOSTON 1731425v1

For the foregoing reasons, as well as for the reasons stated in P&G's opening memorandum, the Court should grant P&G's motion to compel formulation information and deny Coca-Cola's cross-motion for a protective order.

Respectfully submitted,

**THE PROCTER & GAMBLE COMPANY**

By its attorneys,

/s/ Mark A. Vander Laan
Mark A. Vander Laan
Trial Attorney (Reg. No. 0013297)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202-3172
(513) 977-8200

William F. Lee (admitted *pro hac vice*)
David B. Bassett (admitted *pro hac vice*)
Vinita Ferrera (admitted *pro hac vice*)
Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Dated: September 16, 2003

## Certificate of Service

I, Mark Vander Laan, hereby certify that on this 16th day of September, 2003, a true and correct copy of the above document was served by facsimile and federal express upon Roger J. Makley, Esq., Coolidge Wall Womsley & Lombard, Ste. 600, 33 West First Street, Dayton, Ohio 45402-1289, and Robert Burns, Esq., Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Two Freedom Square, 11955 Freedom Drive, Reston, Virginia 20190-5675.

/s/ Mark A. Vander Laan
Mark A. Vander Laan