## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### *Western Division*

| | | |
|---|---|---|
| THE PROCTER & GAMBLE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. C-1-02-393 |
| | ) | |
| v. | ) | Hon. Walter Herbert Rice (Chief Judge) |
| | ) | Hon. Sharon L. Ovington (Magistrate) |
| THE COCA-COLA COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## THE COCA-COLA COMPANY'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT
## (EXHIBITS 1 AND 2 FILED SEPARATELY UNDER
## SEAL IN ACCORDANCE WITH PROTECTIVE ORDER)

Date: September 18, 2003

Donald R. Dunner, Esq. (admitted *pro hac vice*)
Gerald F. Ivey, Esq. (admitted *pro hac vice*)
Christopher P. Isaac, Esq. (admitted *pro hac vice*)
Robert L. Burns, Esq. (admitted *pro hac vice*)
Christopher W. Day, Esq. (admitted *pro hac vice*)
Michele L. Mayberry, Esq. (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
1300 I Street, N.W., Suite 700
Washington, DC 20005-3315
Telephone:     (202) 408-4000
Facsimile:     (202) 408-4400
e-mail:          michele.mayberry@finnegan.com


Roger J. Makley
Trial Attorney (Reg. No. 0018702)
COOLIDGE, WALL. WOMSLEY & LOMBARD
33 West First Street, Suite 600
Dayton, Ohio 45402
Telephone:  937-223-8177
Facsimile:  937-223-6705

Michael J. Kline, Esq.
Michael V. Kruljac, Esq.
The Coca-Cola Company
P.O. Box 1734
Atlanta, GA 30301
Telephone:    (404) 676-3162
Facsimile:    (404) 676-7636

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

STANDARD OF REVIEW ............................................................................................ 2

BACKGROUND ............................................................................................................ 3

ISSUE PRESENTED ..................................................................................................... 3

ARGUMENT .................................................................................................................. 4

I.    BECAUSE THIS ELEVENTH HOUR MOTION TO AMEND DEMONSTRATES
      UNDUE DELAY AND DILATORY MOTIVE, LEAVE SHOULD BE DENIED. .......... 4

      A.    The Assertion Of Newly Discovered Evidence Is Not Supported On This Record.
            ........................................................................................................................... 4

      B.    Since The Obtaining Of A Formal Opinion Of Invalidity Or Noninfringement Is
            An Element Of The Defense Against An Accusation Of Willfulness, The Mere
            Existence Of Such An Opinion Does Not Excuse P&G's Excessive Delay. ......... 6

II.   THE COCA-COLA COMPANY WILL BE UNDULY PREJUDICED BY THE
      LATE ADDITION OF NEWLY ACCUSED PRODUCTS AND NEWLY
      ASSERTED PATENT CLAIMS. ......................................................................... 8

      A.    The Newly Accused Line Of Concentrates Implicates Entirely Different Patent
            Claims And Entirely Different Lines Of Products Than Those P&G Previously
            Disclosed; Thus, The Additions Are A Significant Change, Not "Minor
            Amendments." ..................................................................................................... 8

      B.    The Addition Of New Independent And Dependent Patent Claims Is Highly
            Prejudicial To The Coca-Cola Company. ........................................................... 10

      C.    A Claim Of "Clerical Error" Simply Fails To Provide Valid Grounds To Excuse
            P&G's Excessive Delay In Attempting To Add Certain Juice Box Products Into
            The Case. ............................................................................................................. 11

CONCLUSION .............................................................................................................. 13

CERTIFICATE OF SERVICE ..................................................................................... 14

i

## TABLE OF AUTHORITIES

**Federal Cases**

*Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002).............................. 10, 11

*Brennan v. Arkay Indus., Inc.*, 164 F.R.D. 464 (S.D. Ohio 1996)............................................ 2, 10

*Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322 (Fed. Cir. 1999) ................ 6

*Gustafson Inc. v. Intersystems Industr. Prods., Inc.*, 897 F.2d 508 (Fed. Cir. 1990) ..................... 6

*Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. 30 (D. Del. 1995)..................................................... 7

*Kinberg v. Colorforms*, 1991 U.S. Dist. Lexis 7795, *4 (S.D.N.Y. 1991)................................... 11

*Vargas v. McNamara*, 608 F.2d 15 (1st Cir. 1979) ................................................................ 10, 11

*Wade v. Knoxville Utilities Bd.*, 259 F.3d 452 (6th Cir. 2001)...................................................... 10


**Federal Rules**

FED. R. CIV. P. 11 .......................................................................................................................... 2

FED. R. CIV. P. 15 .......................................................................................................................... 2

## INTRODUCTION

The Coca-Cola Company respectfully opposes The Procter & Gamble Company's ("P&G") motion for leave to file a second amended Complaint, which alleges willful infringement of U.S. Patent No. 4,722,847 ("the '847 patent"), and alleges that additional product lines under the Minute Maid brand infringe the '847 patent. The excuses offered for the last minute amendments are "recently discovered evidence" and "clerical error," but, in fact, P&G's motion is a product of excessive delay that would result in undue prejudice to The Coca-Cola Company.

## SUMMARY OF ARGUMENT

The Court should deny P&G's belated attempt to amend its Complaint to add new allegations of patent infringement and a count for willful infringement. The Court has already permitted P&G to amend its Complaint previously, and the deadline for doing so passed on December 16, 2002. With fact discovery closing on September 23, 2003,[1] The Coca-Cola Company will suffer substantial prejudice in, among other things, being forced to reorient and expand its defenses to address these last-minute and ill-defined charges.

At the same time, P&G has offered no valid excuse for its undue delay in raising the specter of willful infringement and treble damages in such a dilatory manner. On this record, P&G has failed to identify a single piece of new evidence to justify these tactical amendments so close to the end of discovery. And while P&G argues that it recently uncovered evidence supporting the idea that The Coca-Cola Company willfully infringed the '847 patent, this claim of recent discovery is entirely inconsistent with P&G's earlier certification under

---

[1]    The Court has already extended fact discovery once, from August 1, 2003 to September 23, 2003. Trial is scheduled to commence on August 2, 2004, not two years from now as P&G incorrectly stated in its motion.

FED. R. CIV. P. 11 to a diligent pre-filing inquiry into the facts supporting the original Complaint. In reality, P&G would need to erase 10 to 15 years of history to claim that its count of willful infringement was somehow based on newly discovered evidence. None of the information P&G ostensibly relies upon to excuse its delay is newly discovered, or of any relevance to the new allegations. On this record, the attempt to add a count for willful infringement is demonstrably, and solely, a matter of dilatory motive on the part of the movant.

P&G's Motion also attempts to explain the delay in accusing entirely new products of infringement on what seems to be some form of misunderstanding, or otherwise on grounds of clerical error. Contrary to P&G's representations, however, the frozen concentrate products P&G seeks to add in this case were never previously identified in any of P&G's earlier pleadings, and, in fact, implicate an entirely new set of patent claims not previously raised. Because P&G's second attempt to add new product lines to its Complaint lacks sufficient grounds for finding excusable neglect and also disserves the interests of justice, relief under FED. R. CIV. P. 15 is inappropriate. Accordingly, the Court should deny P&G's motion to amend the Complaint for a second time.

## STANDARD OF REVIEW

Although FED. R. CIV. P. 15 enables the Court to grant amendments under the clause "leave shall be freely given," this Court has discretion under the same rule to deny requests for relief where the record reflects evidence of undue delay, dilatory motive on the part of the movant or unfair prejudice to the opposing party by virtue of allowance of amendment.[2]

---

[2]    *See Brennan v. Arkay Indus., Inc.*, 164 F.R.D. 464, 466 (S.D. Ohio 1996).

## BACKGROUND

This is a patent infringement action involving the '847 patent, owned by P&G, and directed to "Fruit Juice Beverages and Juice Concentrates Nutritionally Supplemented With Calcium." The Coca-Cola Company first introduced the Minute Maid calcium-fortified orange juice products that are at the center of this lawsuit in 1986. P&G obtained the '847 patent in 1988 and The Coca-Cola Company received a patent directed to its own calcium-fortified orange juice in 1989.

Although the '847 patent issued in 1988, and P&G was aware of the Minute Maid products at the time of their introduction to the U.S. market, 14 years passed without any complaint by P&G against The Coca-Cola Company for patent infringement. P&G has admitted that during these 14 years it monitored, studied, tested and analyzed The Coca-Cola Company's calcium-fortified products.

In addition, none of the products P&G now seeks to add to this case were either unknown to P&G or somehow unavailable for testing before P&G filed its lawsuit in May 2002. The scheduling order in this case set a deadline for amending the pleadings of December 16, 2002. P&G took advantage of this deadline and filed its First Amended Complaint to accuse additional Minute Maid products of infringement. The Coca-Cola Company did not oppose P&G's first motion to amend, which was timely filed within the Court's deadline. Now, some nine months later, P&G files this second motion for leave to amend its Complaint, and, in contrast to the first, it comes at the end of fact discovery and is extraordinarily and inexplicably late.

## ISSUE PRESENTED

Whether this second motion for leave to amend the Complaint should be granted in the absence of any good faith excuse for the pronounced delay and demonstrable indication of

dilatory motive on the movant's part, given the obvious tactical advantage P&G finds in the mere act of alleging willful infringement and raising new allegations of patent infringement for a new class of Minute Maid products a few weeks before the close discovery?

## ARGUMENT

I.    **BECAUSE THIS ELEVENTH HOUR MOTION TO AMEND DEMONSTRATES UNDUE DELAY AND DILATORY MOTIVE, LEAVE SHOULD BE DENIED.**

    A.    **The Assertion Of Newly Discovered Evidence Is Not Supported On This Record.**

P&G's only proffered reason for its failure to include an allegation of willfulness at an earlier stage in this case is that it supposedly learned only recently that The Coca-Cola Company was both aware of the '847 patent since 1988, and sought legal advice on the patent's scope. This is a frivolous excuse that borders on disingenuousness. Although FED. R. CIV. P. 15 ordinarily allows complaints to be amended, a combination of factors exists in this case that reveals a dilatory motive on the movant's part, but also establish that the allowance of belated amendments disserves the interests of justice.

In the first instance, there is no suggestion from any source that The Coca-Cola Company ever claimed ignorance of P&G's patent.[3] Indeed, seven years or more before P&G filed this lawsuit, P&G attempted to license its patent to The Coca-Cola Company and most of the U.S. beverage industry. The notion therefore that The Coca-Cola Company somehow feigned ignorance of the '847 patent's issuance in the late 1980s, which was recently dispelled in discovery, is a complete fabrication. As such, this discredited notion cannot serve to justify P&G's excuse for seeking to add a count for willful infringement so late in the case.

---

[3]    The Coca-Cola Company stated that it was aware of the '847 patent as of 1988 in an interrogatory response served three months prior to the deadline for amending the Complaint (and a full year before P&G's present motion).

4

More importantly, P&G's professed recent discovery that The Coca-Cola Company's legal counsel reviewed the '847 patent and provided advice to the company is mere subterfuge for a thinly disguised dilatory motive. No one disputes that both P&G and The Coca-Cola Company had in-house legal counsel specializing in intellectual property by at least the mid-1980s. There is also no dispute that P&G and The Coca-Cola Company were vigorous competitors in the calcium-fortified orange juice field beginning in 1986.[4] The record in this case demonstrates that <u>years</u> before this lawsuit was filed, high level P&G executives initiated licensing talks with The Coca-Cola Company representatives -- including in-house counsel -- to license the '847 patent for sale in orange juice products and other beverages. Against this backdrop, P&G's claim of ignorance as to whether The Coca-Cola Company knew of the '847 patent and had likely obtained legal advice about its scope and validity constitutes a plainly unpersuasive excuse.

Well in advance of the filing date of P&G's First Amended Complaint, on October 30, 2002, in response to P&G's Interrogatory No. 5, The Coca-Cola Company identified in-house counsel William Lee as having knowledge of the facts and circumstances through which the company first learned of the '847 patent in 1988. The privilege log P&G received on May 30, 2003, disclosed not only Mr. Lee's correspondence involving P&G's patent portfolio, but also his request for and receipt of opinions of outside counsel regarding the '847 patent.

---

[4]    P&G sold calcium-fortified orange juice products under the Citrus Hill label and marked each product with the '847 patent number, thereby giving the public constructive notice of that patent.

**B.**     **Since The Obtaining Of A Formal Opinion Of Invalidity Or Noninfringement Is An Element Of The Defense Against An Accusation Of Willfulness, The Mere Existence Of Such An Opinion Does Not Excuse P&G's Excessive Delay.**

P&G's mysterious argument of "newly discovered" evidence is entirely irrelevant to P&G's tactical decision to omit an accusation of willfulness from its original and first amended Complaints. Willfulness is a measure of reasonable commercial behavior in the context of potential patent infringement. The Federal Circuit requires that a punitive finding of willfulness must be supported by clear and convincing evidence in view of the totality of the circumstances that the infringer acted in disregard of the patent and lacked a reasonable basis for believing that it had a right to do what it did.[5] Thus, the act of obtaining in-house and outside counsel opinions may serve as a defense to the charge, but the presence or absence of a formal opinion of invalidity or non-infringement is not a prerequisite for pleading the elements of an allegation of willfulness.[6]

P&G relies entirely on the fact that The Coca-Cola Company obtained an opinion of counsel in 1988 directed to the '847 patent, and that this evidence should relieve P&G's neglect in failing to raise an allegation of willfulness within the prescribed limits ordered by the Court.[7]

Any party engaged in litigation would welcome the opportunity to inspect an adversary's attorney-client communications and work product without first having to establish entitlement through waiver or substantial need and hardship. The advantage for the receiving party is

---

[5]     *See, e.g., Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1334 (Fed. Cir. 1999).

[6]     There is no requirement that an accused infringer "must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon filing of suit." *Gustafson Inc. v. Intersystems Industr. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990). Indeed, "[e]xercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." *Id.*

[7]     *See* Plaintiff's Mem. In Support of its Mot. For Leave at 6.

6

obvious, and there is no concomitant downside. Indeed, there is no denying the fact that willful

infringement counts are often thrown into complaints because they accomplish this purpose

without any corresponding requirement to plead the charge with specificity. Few substantive

areas of the law make it so easy to seek such advantage merely by alleging willful misconduct in

a complain. Thus, the ease with which willful infringement can be pled provides strong

justification for strict scrutiny of any wholesale demand for an adversary's work product. The

district court in *Johns Hopkins Univ. v. Cellpro,* 160 F.R.D. 30 (D. Del. 1995) has recognized

this difficulty, observing that controlling precedent will

> . . . all but force a defendant to respond to a claim of willful infringement by
> asserting an affirmative defense of good faith reliance on the advice of counsel,
> which results in a waiver of the attorney-client privilege. That waiver, in turn,
> leads to disclosure of the advice, discovery on communications relating to the
> subject of the opinion, and other potential mischief which at the moment appears
> fairly open ended.[8]

Because P&G has completely failed to establish that any recently obtained evidence

justifies adding an allegation of willful infringement to the Complaint at this late stage of the

case. In fact, on this record, P&G's only apparent reason for the belated allegation is to pry into

The Coca-Cola Company's work product and attorney client communications. The motion

should therefore be denied.

---

[8]    *Id.* at 34. It is irrelevant to the exercise of deciding the extent of waiver during discovery
that, at trial, the accusing party may actually offer admissible evidence of willful infringement. The point
is that the defending party should have an equal opportunity to present its evidence in the same forum,
and the tactical decision about the evidence introduced for the jury's consideration should be counsel's
exclusively. State of mind presents an issue of fact, the determination of which, along with witness
credibility, is for the jury to consider.

II.    **THE COCA-COLA COMPANY WILL BE UNDULY PREJUDICED BY THE LATE ADDITION OF NEWLY ACCUSED PRODUCTS AND NEWLY ASSERTED PATENT CLAIMS.**

    A.    **The Newly Accused Line Of Concentrates Implicates Entirely Different Patent Claims And Entirely Different Lines Of Products Than Those P&G Previously Disclosed; Thus, The Additions Are A Significant Change, Not "Minor Amendments."**

Under the guise of correcting mere technicalities and clerical errors, P&G's Motion characterizes the request to add new allegations of patent infringement as ostensibly "minor amendments."[9] In reality, this is hardly the case. What P&G's brief fails to highlight is that granting leave to add orange juice concentrates to the products already accused of infringement would dramatically expand the scope of this lawsuit, by adding seven (7) new patent claims to the original nine, and by accusing eighteen (18) products in addition to the original thirteen at issue. None of the allegations in P&G's original Complaint, First Amended Complaint, Proposed First Amended Complaint, or interrogatory responses ever mention or identify the orange juice concentrate products as potentially infringing the '847 patent.

In September 2002, The Coca-Cola Company served interrogatories requesting that P&G identify every asserted claim of the '847 patent and every product accused of infringement. P&G attached to its response a claim chart supporting its infringement allegations that compared "the accused products with the asserted claims of the '847 patent."[10] P&G's response focused exclusively on independent claim 1 and dependent claims 2-5, 7, 8, 10, and 11 -- all of which are

---

[9]    Plaintiff's Mem. in Support of its Mot. For Leave at 1.

[10]    *See* Plaintiff's Suppl. Resp. to The Coca-Cola Company's First Set of Interrog. (Nos. 1-18) dated October 18, 2002.

8

expressly limited to a "single-strength fruit juice beverage."[11]  Despite being aware of The Coca-Cola Company's frozen concentrate products since 1986, P&G never accused any concentrate product of infringing independent claim 12 or dependent claims 13-18, which only apply to "fruit juice concentrate" products.

In January 2003, when P&G filed its Amended Complaint, no frozen concentrate products were accused of infringement.  Even after The Coca-Cola Company requested in January, and again in February 2003, that P&G supplement its infringement contentions in light of P&G's Amended Complaint and in light of P&G's previously deficient responses, P&G never accused any frozen concentrate products of infringement and it never made any effort to identify any intention to assert or rely upon any of claims 12-18.

P&G has produced documents showing that it tested Minute Maid calcium-fortified frozen orange juice concentrate products as early as October of 1986.[12]  The inescapable difficulty for P&G, which its motion barely acknowledges, is that this is the same product that P&G now accuses of infringement.

From an objective standpoint, there is no apparent basis on the record to support P&G's effort to recast its negligence in complying with this Court's order as a mere technicality or an innocent typographical error.  The fifteen months between P&G's decision to file suit and then seek leave to amend its Complaint to add claims and products directed to concentrates constitutes an extraordinary delay.  With at least seven months' time and at least five distinct opportunities

---

[11]    Further, in identifying the single-strength fruit juice patent claims at issue, P&G omitted claims 6 and 9.  Clearly, P&G's conscious decision to omit some of the single-strength fruit juice patent claims undercuts the notion that omitting claims 12-18 was "accidental."

[12]    *See, e.g.,* Ex. 1, PGJ0009329-9330 (filed under seal in accordance with Protective Order) (summarizing an evaluation dated October 14, 1986 of Minute Maid Plus Calcium Orange Juice Concentrate and Single Strength Juice in a half-gallon carton).

for P&G to have brought this issue to the Court's attention, P&G's delay until August 2003 to seek leave of Court to amend its Complaint is excessive. Given P&G's long awareness of the full line of The Coca-Cola Company's products, the attempt to assert several new patent claims against nearly a score of concentrate products is inexcusable and will result in substantial prejudice to The Coca-Cola Company.[13]

**B.     The Addition Of New Independent And Dependent Patent Claims Is Highly Prejudicial To The Coca-Cola Company.**

In *Brennan v. Arkay Indus., Inc.*, 164 F.R.D. 464 (S.D. Ohio 1996), the Southern District Court of Ohio offered a well-reasoned opinion for denying the plaintiff's motion to add a loss of consortium claim because a delay of thirteen months from filing suit to moving to amend the complaint constituted "extraordinary delay" and would result in prejudice to the opponent when the main plaintiff's witnesses had already been deposed at length and no prior suggestion of intent to add such a claim was made.[14] Where a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed an "increased burden" upon the movant to establish a valid reason for his neglect and delay.[15]

Belatedly inserting new products into the case frustrates a full and fair opportunity to establish defenses based on the invalidity of these patent claims. P&G's omission of these claims naturally suggested throughout the discovery process that P&G believed the claims were

---

[13]      *See Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 96 (S.D.N.Y. 2002) (finding that the failure to "immediately" assert patent claims against an opponent upon learning that the opponent had not yet learned the full extent of the proponent's legal claims has been found to constitute a flagrant disregard of the Federal Rules of Civil Procedure).

[14]      *Id.* at 466-67.

[15]      *See, e.g., Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001); *Vargas v. McNamara*, 608 F.2d 15, 19 (1st Cir. 1979) (finding that inadvertence for leaving out a count was insufficient to justify leave to amend).

10

not infringed.[16] The new claims that P&G seeks to add to the lawsuit cover concentrates, a distinctly different product category than the "single strength" type of products currently accused of infringement.[17] Each patent claim is considered its own invention, and requires its own set of defenses. Moreover, the addition of claims 12-18, which are directed to subject matter not previously asserted by P&G in this lawsuit, will present a different set of facts as to which the original complaint had not provided fair notice. The Coca-Cola Company faces undue prejudice if this untimely filing is accepted in, among other things, not being able to explore and develop noninfringement defenses, which would require, for example, analytical testing of the newly accused products.[18]

**C.     A Claim Of "Clerical Error" Simply Fails To Provide Valid Grounds To Excuse P&G's Excessive Delay In Attempting To Add Certain Juice Box Products Into The Case.**

When this lawsuit commenced on May 31, 2002, P&G accused only two products of infringement, namely Minute Maid Premium Calcium Original and Minute Maid Premium Calcium Home Squeezed Style. P&G, however, knew of and had analytically tested several drink boxes at least as early as 1999, and, thus, had every opportunity to include such products in

---

[16]     *See, e.g., Vargas,* 608 F.2d at 15 ("A factor the court may wish to take into account is that plaintiff's pretrial memoranda and interrogatories made some, albeit brief, reference to alleged unseaworthiness; on the other hand, the omission of a seaworthiness count naturally led defendants to expect that the matter was not in issue. Attention should also be paid to the costs to the taxpayers, the courts, other litigants and our legal system generally of proceeding with a matter which has been so unnecessarily prolonged because of counsel's failure not only to plead unseaworthiness but to research basic legal authorities relevant to plaintiff's claim.")

[17]     *See, e.g., Am. Stock Exchange,* 215 F.R.D. at 93-96 (holding that an unseasonable delay in asserting additional patent claims, where the sought-to-be-asserted patent claims are different in scope from those previously asserted, has been found to cause prejudice to the opponent).

[18]     *See Kinberg v. Colorforms,* 1991 U.S. Dist. Lexis 7795, *4-6 (S.D.N.Y. 1991) (denying plaintiff's motion to amend complaint because opponent would be unduly prejudiced by potential new issues of fact presented by a requirement of testing the accused products to support infringement).

11

its initial Complaint.[19]  Further, in the fall of 2002 -- before filing its Amended Complaint --

P&G commissioned additional chemical analyses of the drink box product line it now seeks to

add to the case.

In January 16, 2003, P&G amended its Complaint specifically to add additional accused

products, but P&G did not name either the Disney Hundred Acre Wood Juices or the Minute

Maid Juice Boxes at that time.  In light of these circumstances, P&G should not be allowed to

name the Disney Hundred Acre Wood Juices and the Minute Maid Juice Boxes as additional

accused products, when P&G had ample time and opportunity to amend the Complaint earlier,

but repeatedly neglected to do so.

---

[19]    *See* Ex. 2, PGJ0012852 (filed under seal in accordance with Protective Order) (summarizing results dated May 1999 of analytical testing of "MM Aseptic Drink Box - Calcium Enriched").

## CONCLUSION

For the foregoing reasons, The Coca-Cola Company respectfully requests that the Court

deny P&G's motion for leave to file a second amended Complaint.

THE COCA-COLA COMPANY

s/ Michele L. Mayberry

By: _____

Donald R. Dunner, Esq. (admitted *pro hac vice*)
Gerald F. Ivey, Esq. (admitted *pro hac vice*)
Christopher P. Isaac, Esq. (admitted *pro hac vice*)
Robert L. Burns, Esq. (admitted *pro hac vice*)
Christopher W. Day, Esq. (admitted *pro hac vice*)
Michele L. Mayberry, Esq. (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
1300 I Street, N.W., Suite 700
Washington, DC 20005-3315
Telephone:    (202) 408-4000
Facsimile:    (202) 408-4400
e-mail:       michele.mayberry@finnegan.com

Roger J. Makley
Trial Attorney (Reg. No. 0018702)
COOLIDGE, WALL. WOMSLEY & LOMBARD
33 West First Street, Suite 600
Dayton, Ohio 45402
Telephone: 937-223-8177
Facsimile: 937-223-6705

Michael J. Kline, Esq.
Michael V. Kruljac, Esq.
The Coca-Cola Company
P.O. Box 1734
Atlanta, GA 30301
Telephone:    (404) 676-3162
Facsimile:    (404) 676-7636

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing, THE

COCA-COLA COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO

FILE A SECOND AMENDED COMPLAINT was served on this 18th day of September 2003,

via facsimile and Federal Express upon the following:

Mark A. Vander Laan
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio  45202-3172
(513) 977-8200

William F. Lee
David B. Bassett
Vinita Ferrera
Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000

s/ Michele L. Mayberry

_____

Michele L. Mayberry

14