IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
*Western Division*

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, )<br>)<br>Plaintiff,           )<br>)<br>v.                           )<br>)<br>THE COCA-COLA COMPANY,       )<br>)<br>Defendant.        )<br>_____) | CIVIL ACTION NO. C-1-02-393<br><br>Hon. Walter Herbert Rice (Chief Judge)<br>Hon. Sharon L. Ovington (Magistrate) |

**REPLY BRIEF OF THE COCA-COLA COMPANY IN RESPONSE TO
PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF ITS
MOTION TO COMPEL PRODUCTION OF FORMULATION INFORMATION
AND IN OPPOSITION TO CROSS-MOTION FOR A PROTECTIVE ORDER**

**(EXHIBITS 1 AND 2 FILED SEPARATELY UNDER
<u>SEAL IN ACCORDANCE WITH PROTECTIVE ORDER</u>)**

Date: September 24, 2003

Donald R. Dunner, Esq. (admitted *pro hac vice*)
Gerald F. Ivey, Esq. (admitted *pro hac vice*)
Christopher P. Isaac, Esq. (admitted *pro hac vice*)
Robert L. Burns, Esq. (admitted *pro hac vice*)
Christopher W. Day, Esq. (admitted *pro hac vice*)
Michele L. Mayberry, Esq. (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
1300 I Street, N.W., Suite 700
Washington, DC 20005-3315
Telephone: (202) 408-4000
Facsimile:  (202) 408-4400
e-mail:     michele.mayberry@finnegan.com

Roger J. Makley
Trial Attorney (Reg. No. 0018702)
COOLIDGE, WALL, WOMSLEY &
LOMBARD
33 West First Street, Suite 600
Dayton, Ohio 45402
Telephone: (937) 223-8177
Facsimile:  (937) 223-6705

Michael J. Kline, Esq.
Michael V. Kruljac, Esq.
The Coca-Cola Company
P.O. Box 1734
Atlanta, GA 30301
Telephone: (404) 676-3162
Facsimile: (404) 676-7636

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................1

    I.    IN ABANDONING ITS ORIGINAL ARGUMENT THAT THE FLAVORING INGREDIENTS AT ISSUE "MAY" HAVE ADDED CITRIC AND MALIC ACIDS, P&G HAS CONCEDED THE LACK OF RELEVANCE AND SUBSTANCE TO THE ONLY PREMISE IT ORIGINALLY ARTICULATED FOR SEEKING THE SURRENDER OF CRITICAL TRADE SECRETS. ..................................................................................................1

    II.    P&G'S THEORY OF WHAT INFORMATION "MAY" LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE CONTINUES TO BE AN ELUSIVE AND CHANGING TARGET..........................................................................................................4

    III.    IN ATTEMPTING TO SHIFT SCRUTINY AWAY FROM THE UNDISPUTED SENSITIVITY OF THE FLAVORING RECIPES, P&G'S MEMORANDUM OFFERS NO SUGGESTION AS TO HOW THE PROTECTIVE ORDER CONTEMPLATED OR ACTUALLY GUARDS AGAINST THE ULTIMATE LOSS OF THE TRADE SECRETS. ..................................................................................................5

CONCLUSION......................................................................................................................7

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*,
  265 F.3d 1294 (Fed. Cir. 2001) ...................................................................................3

*American Standard v. Pfizer Inc.*,
  828 F.2d 734 (Fed. Cir. 1987) .....................................................................................3

*Brown Bag Software v. Symantec Corp.*,
  960 F.2d 1465 (9th Cir. 1992) .....................................................................................7

*Coca-Cola Bottling Co. v. Coca-Cola Co.*,
  107 F.R.D. 288 (D. Del. 1985) .....................................................................................6

*Cochran Consulting, Inc. v. Uwatec USA, Inc.*,
  102 F.3d 1224 (Fed. Cir. 1996) ....................................................................................5

*Genentech, Inc. v. Amgen, Inc.*,
  289 F.3d 761 (Fed. Cir. 2002) .....................................................................................3

*Hill v. Motel 6*,
  205 F.R.D. 490 (S.D. Ohio 2001) ................................................................................3

*Koch v. Koch Industries, Inc.*,
  203 F.3d 1202 (10th Cir. 2000) ...................................................................................3

*Micro Motion, Inc. v. Kane Steel Co. Inc.*,
  894 F.2d 1318 (Fed. Cir. 1990) ....................................................................................3

*Quality Aero Tech., Inc. v. Telemetric Elektronic, GmbH*,
  212 F.R.D. 313 (E.D.N.C. 2002) .................................................................................3

*Struthers Scientific and Int'l Corp. v. General Foods Corp.*,
  45 F.R.D. 375 (S.D. Tex. 1968) ...................................................................................5

*Tate Access Floors, Inc. v. Maxcess Technologies, Inc.*,
  222 F.3d 958 (Fed. Cir. 2000) .....................................................................................5

**FEDERAL STATUTES**

FED. R. CIV. P. 26(b)(1) ..............................................................................................................2, 3

FED. R. CIV. P. 26(b)(1) Advisory Committee Note (2000) .......................................................3

FED. R. CIV. P. 26(b)(2) ...............................................................................................................3

FED. R. EVID. 702 ........................................................................................................................2

## INTRODUCTION

The Coca-Cola Company files this reply brief in response to the Plaintiff's Memorandum in Further Support of its Motion to Compel Production of Formulation Information. In its opening brief in opposition to Procter & Gamble's ("P&G") motion to compel, The Coca-Cola Company explained why a protective order was appropriate to bar any disclosure of the essential trade secret formulas, flavoring ingredients, and recipes of the Minute Maid® line of fruit juice products. P&G's memorandum either conceded The Coca-Cola Company's position or simply failed to provide any substantive support for its newly evolving and ill defined insistence on seeking such irrelevant and oppressive discovery.

## ARGUMENT

I. **IN ABANDONING ITS ORIGINAL ARGUMENT THAT THE FLAVORING INGREDIENTS AT ISSUE "MAY" HAVE ADDED CITRIC AND MALIC ACIDS, P&G HAS CONCEDED THE LACK OF RELEVANCE AND SUBSTANCE TO THE ONLY PREMISE IT ORIGINALLY ARTICULATED FOR SEEKING THE SURRENDER OF CRITICAL TRADE SECRETS.**

At the outset, P&G argued that it was entitled to the disclosure of The Coca-Cola Company's redacted flavoring recipes on the theory that the secret flavoring ingredients "may" somehow be within the scope of U.S. Patent No. 4,722,847 patent ("the '847 patent"). Specifically, the contention was that liberal discovery ought to be allowed because the flavoring oils and essences added to the accused Minute Maid products "may contain" some of the citric and malic acids identified in the claim phrase "acid component comprising a mixture of citric and malic acids."[1] Through the affidavits of two highly-qualified scientists, Laszlo Somogyi, Ph.D., and Robert J. Braddock, Ph.D., The Coca-Cola Company established that, as a matter of

---

[1] Opp'n Br., Ex. 1, the '847 Patent at Col. 13, lns. 20-22.

basic chemistry, citric and malic acids are not present in the secret flavoring oils and essences P&G has attempted to target for disclosure. The statements made by Drs. Somogyi and Braddock were scientifically correct, and indeed the affidavit P&G has attached to its memorandum conceded this point.[2]

The inescapable conclusion in light of the declarations of these two preeminent experts, and the concessions made in the affidavit offered by P&G, is that citric and malic acids are <u>not</u> present in flavoring ingredients. Thus, the flavoring oils and essences that are blended into the Minute Maid calcium-fortified juices do not contribute citric or malic acid to the final products.[3] In light of this, P&G's theories never reached even the lowest threshold under Rule 26 in suggesting that it "is merely required to demonstrate that the information sought may lead to the discovery of admissible evidence."[4] On this record, it is undisputed that the information P&G seeks is entirely irrelevant to the asserted claim elements regarding citric or malic acid, and cannot in good faith be characterized as likely to lead to the discovery of admissible evidence.

Moreover, while P&G abdicates responsibility for attempting to establish any "direct nexus" between the Minute Maid secret ingredients and recipes on the one hand, and its allegations of infringement on the other, this line of argument simply overlooks the impact of the 2000 amendments to Rule 26(b)(1). These amendments narrowed discovery to matters "relevant

---

[2] *See* P&G's Mem. in Further Supp. of its Mot. to Compel, Ex. 1, Decl. of Robert Baker at ¶ 6. An analysis of Mr. Baker's credentials immediately raises a question as to whether he actually has the expertise under FED. R. EVID. 702 to opine on the subject of the chemical make-up of flavoring oils and essences in the first place. At this point, however, the question is largely academic since the affiant concedes the scientific accuracy of Drs. Somogyi's and Braddock's analyses. To the extent Mr. Baker engaged in a discussion of "acqueous essences," he nevertheless did not suggest that these contain citric and malic acids. *See id.* at 8.

[3] *See, e.g.,* Opp'n Br., Ex. 3, Decl. of Somogyi at ¶¶ 15, 16, & 29. By letter dated June 9, 2003, The Coca-Cola Company stated that "[t]he redacted information involves highly valuable and irrelevant trade secrets, such as formulae or specifications for the precise amounts and types of flavoring ingredients present in certain beverages." Opp'n Br., Ex. 5.

[4] P&G's Mem. in Further Supp. of its Mot. to Compel at 2.

2

to the claim or defense of any party."[5] In the context of patent infringement cases, the Federal Circuit has specifically explained that "[o]ne seeking discovery of [trade secrets] must show some relationship between the claimed invention and the information sought."[6] In this case, science disproved any nexus between P&G's curiosity about The Coca-Cola Company's secret formulas and the asserted claims under the '847 patent. P&G's switch to a mysterious new line of argument has not altered this reality.

Finally, it bears emphasizing that, although it is true that relevant information need not be admissible at trial if it is reasonably calculated to lead to the discovery of admissible evidence, it is equally true that "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)."[7] In this regard, The Coca-Cola Company has provided an unrefuted demonstration that its formulas are (1) highly valued trade secrets; (2) irrelevant to the '847 patent claims; and (3) should not be divulged to an adversary based entirely upon unfounded suspicions.[8] Rule 26(b)(2) empowers this Court to tailor discovery to the needs of the particular case, including issuing an order that discovery not be had on certain subjects.[9] The Court's broad discretion certainly enables it to preclude discovery when information is sought solely on the basis of unfounded suspicion or for the purpose of oppression.[10]

---

[5] *See, e.g.,* FED. R. CIV. P. 26(b)(1) Advisory Committee Note (2000); *Quality Aero Tech., Inc. v. Telemetric Elektronic, GmbH*, 212 F.R.D. 313, 315 n.2 (E.D.N.C. 2002) ("The 2000 amendments implicitly seek to farm out the 'fishing expeditions' previously allowed and serve as an attempt to reduce the broad discovery which heretofore been afforded litigants in civil actions."); *accord Hill v. Motel 6*, 205 F.R.D. 490, 493 (S.D. Ohio 2001).

[6] *American Standard v. Pfizer Inc.*, 828 F.2d 734, 742 (Fed. Cir. 1987).

[7] FED. R. CIV. P. 26(b)(1) (emphasis added).

[8] *See, e.g., Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308 (Fed. Cir. 2001); *Micro Motion, Inc. v. Kane Steel Co. Inc.*, 894 F.2d 1318, 1327-28 (Fed. Cir. 1990).

[9] *See, e.g., Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 773 (Fed. Cir. 2002) (affirming the district court's denial of the patentee's attempt to discover the entire structure of the accused gene sequence because the patent at issue only covered part of the gene sequence).

[10] *See, e.g., Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000) (stating that parties are not entitled to conduct a "fishing expedition").

## II. P&G'S THEORY OF WHAT INFORMATION "MAY" LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE CONTINUES TO BE AN ELUSIVE AND CHANGING TARGET.

Even Timothy Dake, who testified as P&G's corporate designee, rejected the notion that flavoring oils and essences contain citric and malic acids.[11] There is, in short, no dispute that the Minute Maid line of products contain flavoring oils and essences do not include citric or malic acid. Having abandoned its pivotal reason for seeking to force disclosure of the flavoring oils and essences, P&G's supplemental memorandum now seeks to substitute the argument that, perhaps, "at least some of the ingredients that The Coca-Cola Company may be adding to the accused products do, in fact, contain some acids."[12]

On a tactical level, P&G's argument leads to a dead-end. By abandoning all interest in citric and malic acids, P&G's position became completely disconnected from the '847 patent since there is no claim covering acids other than citric or malic. If P&G's only concern is with acids other than citric or malic that "may" be present in the accused products, The Coca-Cola Company has produced documents relevant to the acid level in its products. The acid levels in the final Minute Maid products have not been redacted from The Coca-Cola Company's documents.[13] In any event, there is no relevance to the specific flavoring oils and essences because they do not provide any additional information on the collateral subject of other acid levels in the final products.

---

[11] See Ex. A, FED. R. CIV. P. 30(b)(6) Dake Dep. Tr. at 343, l. 2, to 344, l. 2 (acknowledging the scientific fact that citric and malic acids are "nonvolatile" in nature, unlike flavoring oils and essences, which are "volatile" substances). See also, Opp'n Br., Ex. 3, Decl. of Somogyi at ¶¶ 15-16 ("The term 'volatile' refers to how flavoring substances readily vaporize at relatively low temperatures . . . Orange essence does not contain either citric or malic acids as it is produced by distillation, and these acids are not volatile under the distillation conditions.")

[12] P&G's Mem. in Further Supp. of its Mot. to Compel at 3.

[13] See, e.g., Ex. B, TCCC 009681 (filed under seal) (disclosing the percentage of acid in a single strength product).

4

On a more technical level, if P&G's argument is that the claim phrase "acid component comprising a mixture of citric and malic acids" is somehow aimed at <u>other</u> acids aside from those actually claimed, P&G had ample opportunity to demonstrate such an interpretation in its opening motion and again in its supplemental memorandum utilizing appropriate affidavits and expert testimony; but P&G did not even try and surely cannot bluff its way through on conjecture or surmise. The entire focus of P&G's motion to compel, and the issue to which the expert declarations focused, had to do with the specific presence of citric and malic acids. The existence of other, unclaimed acids in the accused products is a *non sequitur* to the issue of infringement in this case.[14]

### III. IN ATTEMPTING TO SHIFT SCRUTINY AWAY FROM THE UNDISPUTED SENSITIVITY OF THE FLAVORING RECIPES, P&G'S MEMORANDUM OFFERS NO SUGGESTION AS TO HOW THE PROTECTIVE ORDER CONTEMPLATED OR ACTUALLY GUARDS AGAINST THE ULTIMATE LOSS OF THE TRADE SECRETS.

P&G's memorandum attempts to dismiss all of the articulated concerns about the disclosure of the most sensitive formulas The Coca-Cola Company possesses as, essentially, a matter of reciprocal courtesy. In advancing this argument, P&G necessarily tried to divert the Court's attention from Tropicana Products, Inc.'s ("Tropicana") own sensitivity about precisely the same type of secrets. The fact that P&G has chosen not to address the seriousness of this argument on its merits is tantamount to an admission of the extreme sensitivity of the

---

[14] For example, by employing the claim term "comprising," the '847 patent indicates that the presence of additional unclaimed elements, such as other acids, has no bearing on infringement. *See Tate Access Floors, Inc. v. Maxcess Technologies, Inc.*, 222 F.3d 958, 970 (Fed. Cir. 2000) (finding that the addition of unclaimed painting trim to the accused flooring panel had no bearing on the issue of infringement); *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1226 (Fed. Cir. 1996) (reversing discovery sanctions imposed against accused infringer for failing to produce source code because the presence of the claim elements did not depend on the use of the particular source code); *Struthers Scientific and Int'l Corp. v. General Foods Corp.*, 45 F.R.D. 375, 378 (S.D. Tex. 1968) (refusing to compel accused infringer to answer interrogatory identifying freeze concentration of its accused process where freeze concentration was outside the scope of the patent).

information in the first place. Ultimately, no one can seriously challenge the contention that the flavoring oils and essences, together with the secret recipes for developing marketable juice products, fall into the most sensitive category of trade secrets in the beverage industry. That explains why Tropicana, the primary licensee of the '847 patent, has taken precisely the same position as The Coca-Cola Company with regard to its flavoring trade secrets.[15]

In attempting to downplay the irreparable harm associated with any disclosure of The Coca-Cola Company's flavoring ingredients in this case, P&G relies heavily on the opinion in *Coca-Cola Bottling Co. v. Coca-Cola Co.*[16] The result reached in that case, however, is entirely distinguishable on the facts because the formula was <u>the</u> central issue. In other words, the case involved the rare, and virtually unprecedented, situation where the central issue in dispute was the identity of flavoring trade secrets themselves. Specifically, the federal judge in the Delaware case faced the issue of whether a new Coke® flavoring formulation was identical to an old Coke flavoring formulation covered by an existing pricing agreement between The Coca-Cola Company and its bottlers.[17] By contrast, the resolution of P&G's infringement claims has nothing to do with the identity of Minute Maid's flavoring ingredients since oils and essences are not claimed under the '847 patent, and as has been shown, do not contribute citric or malic acids to the juice products.

---

[15] Moreover, given the multimillion dollar revenue generated annually under the '847 patent license, P&G's attempt to distance itself from its business partner and from this lucrative relationship is entirely unpersuasive.

[16] 107 F.R.D. 288 (D. Del. 1985). As stated in The Coca-Cola Company's opposition brief, The Coca-Cola Company's decision to settle that case, even though its flavoring trade secrets were subject to limited discovery under "the maximum protection that the law allows," illustrates the inability of protective orders to adequately protect these kinds of flavoring trade secrets. *See* Opp'n Br. at 9 n.24.

[17] *Coca-Cola Bottling*, 197 F.R.D. at 299 (noting that "[b]ecause plaintiffs are The Coca-Cola Company bottlers, they will have an incentive to keep the formulae secret.").

Belatedly, P&G seeks to erase any concern over the acknowledged sensitivity of Minute Maid's flavoring trade secrets by assuring everyone that it "has no intention of sharing such information with Tropicana or its counsel."[18] Of course, P&G could not seriously have argued otherwise in light of its heavy reliance upon the protective order in this case. Yet, in arguing that both parties have allowed their designated experts to review the more typical categories of confidential information under the restrictions of the protective order, P&G has neglected the importance of its admission that at the time the protective order was negotiated, no one intended it to apply to information as sensitive as the secret flavoring ingredients and recipes that a given beverage producer uses to create its unique blend of products. Because the disclosure P&G seeks is not only irrelevant, but also involves The Coca-Cola Company's most highly prized secrets, counsel's good intentions are simply insufficient to overcome the risks of inadvertent and inevitable disclosure.[19]

## CONCLUSION

For the reasons stated in this Reply Brief and in The Coca-Cola Company's Opposition Brief, a protective order is respectfully requested denying the requests for discovery of The Coca-Cola Company's trade secret flavoring information.

---

[18] P&G's Mem. in Further Supp. of its Mot. to Compel at 5.
[19] *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470-71 (9th Cir. 1992). While P&G referred to the problem of inevitable disclosure via its experts and their unaccounted for staff members as a "parade of horribles," its memorandum never refuted or undercut the reasonable foreseeability of this scenario, or the inadequacy of any protective order to prevent it.

Dated: September 24, 2003                Respectfully submitted,


By:  s/Michele L. Mayberry
Donald R. Dunner, Esq. (admitted *pro hac vice*)
Gerald F. Ivey, Esq. (admitted *pro hac vice*)
Christopher P. Isaac, Esq. (admitted *pro hac vice*)
Robert L. Burns, Esq. (admitted *pro hac vice*)
Christopher W. Day, Esq. (admitted *pro hac vice*)
Michele L. Mayberry, Esq. (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
1300 I Street, N.W., Suite 700
Washington, DC  20005-3315
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400
e-mail:      michele.mayberry@finnegan.com

Roger J. Makley
Trial Attorney (Reg. No. 0018702)
COOLIDGE, WALL, WOMSLEY & LOMBARD
33 West First Street, Suite 600
Dayton, OH  45402
Telephone:  (937) 223-8177
Facsimile:  (937) 223-6705

Michael J. Kline, Esq.
Michael V. Kruljac, Esq.
THE COCA-COLA COMPANY
P.O. Box 1734
Atlanta, GA  30301
Telephone:  (404) 676-3162
Facsimile:  (404) 676-7636

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing, REPLY BRIEF OF THE COCA-COLA COMPANY IN RESPONSE TO PLAINTIFF'S MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF FORMULATION INFORMATION AND IN OPPOSITION TO CROSS-MOTION FOR A PROTECTIVE ORDER was served on this 24th day of September 2003, via facsimile and Federal Express upon the following:

Mark A. Vander Laan
Dinsmore & Shohl L.L.P.
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH  45202-3172
(513) 977-8200

William F. Lee
David B. Bassett
Vinita Ferrera
Hale and Dorr LLP
60 State Street
Boston, MA  02109
(617) 526-6000


s/ Michele L. Mayberry
Michele L. Mayberry