

**EXHIBIT**

tabbies®

D

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### *Western Division*

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, | ) |
| | ) |
| Plaintiff/Counterclaim-<br>Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| THE COCA-COLA COMPANY, | ) |
| | ) |
| Defendant/Counterclaim-<br>Plaintiff. | ) |
| | ) |

CIVIL ACTION NO. C-1-02-393

Hon. Walter Herbert Rice
Hon. Michael R. Merz (Magistrate)

---

### PLAINTIFF'S RESPONSE TO THE COCA-COLA
### COMPANY'S FIRST SET OF INTERROGATORIES (NOS. 1-18)

Pursuant to Fed. R. Civ. P. 33, the plaintiff, The Procter & Gamble Company ("P&G"),

objects and responds to Defendant The Coca-Cola Company's ("Coca-Cola") First Set of

Interrogatories as follows:

### GENERAL OBJECTIONS

1.      P&G objects to any interrogatory that calls for the disclosure of information

protected by the attorney-client privilege, the work product doctrine, or any other applicable

privilege or immunity.

2.      P&G objects to any interrogatory that purports to impose upon P&G any

obligation not required by the Federal Rules of Civil Procedure or the Local Rules of this Court,

including, without limitation, any interrogatory that exceeds the scope of Fed. R. Civ. P. 26 and

33.  P&G will respond to each of the interrogatories in accordance with the requirements of the

Federal Rules of Civil Procedure and the Local Rules.

3.    P&G objects to the definition of "P&G" to the extent that it purports to include independent entities that are not parties to this action and that P&G does not control.

4.    P&G objects to the interrogatories to the extent that they seek information not within P&G's possession, custody, or control.

5.    P&G objects to the interrogatories to the extent that they purport to require P&G to identify or describe "all" persons, products, communications, or documents on the grounds that such interrogatories are overly broad, unduly burdensome, and oppressive.

6.    P&G objects to the interrogatories to the extent that they seek premature disclosure of expert opinions.

7.    P&G objects to the interrogatories to the extent they are not limited in time and seek information for periods of time that are not relevant to any claim or defense.

8.    Neither these general objections nor the specific responses set forth below are an admission relative to the existence of any information sought, the relevance or admissibility of any response, or the truth or accuracy of any statement or characterization contained in any particular interrogatory.

9.    P&G has responded to Coca-Cola's interrogatories based on documents and information in P&G's possession, custody, and control that it has been able to ascertain based on reasonable search and inquiry.  P&G provides these responses without prejudice to its right to obtain and present additional documents and information ascertained in the future, such as through further investigation, discovery, or otherwise.

10.    P&G reserves the right to supplement or change its answers to the interrogatories as appropriate.

# RESPONSES

## INTERROGATORY NO. 1

Identify each and every TCCC product that P&G contends infringes the '847 patent and, for each such product, identify which claims of the '847 patent are alleged to be infringed.

### Response No. 1

In addition to its General Objections, P&G objects to this interrogatory because the response to this interrogatory depends, in part, on information that is in the possession, custody, or control of Coca-Cola. As such, since discovery has only recently begun, and P&G's investigation is ongoing, this interrogatory is premature.

Subject to and without waiving the foregoing General and Specific Objections, P&G responds, based on the information currently available to it, that Coca-Cola, through its Minute Maid division, has made, sold, offered to sell, and used in the United States at least two different calcium-supplemented fruit juice beverages, one labeled "Minute Maid Premium Calcium Original" and another labeled "Minute Maid Premium Calcium Home Squeezed Style." Both the "Minute Maid Premium Calcium Original" and the "Minute Maid Premium Calcium Home Squeezed Style" products infringe at least claims 1, 2, 3, 7, 8, and 11 of the '847 patent.

## INTERROGATORY NO. 2

Identify the claim construction, on an element-by-element basis, that Plaintiff utilized to conclude that TCCC infringes the '847 patent, including every specific basis for that construction found in the specification, the prosecution history, and/or extrinsic evidence.

### Response No. 2

In addition to its General Objections, P&G objects to this interrogatory to the extent that the information sought by this interrogatory is protected from disclosure by the attorney-client

privilege and/or attorney work product doctrine. P&G further objects to this interrogatory as premature because discovery has only recently begun, and P&G's investigation is ongoing.

Subject to and without waiving the foregoing General and Specific Objections, P&G states that it has attached hereto as Exhibit 1 a claim chart comparing, on an element-by-element basis, the accused products with the asserted claims of the '847 patent.

## INTERROGATORY NO. 3

To the extent that any claim of the '847 patent is alleged to be infringed under the doctrine of equivalents, identify each and every element of each claim that is not literally met by the accused TCCC products and provide a complete explanation for the assertion of equivalency, including an identification of all evidence known to P&G supporting such equivalency assertion and why the differences between the claim element and the corresponding TCCC product is believed to be insubstantial. This interrogatory applies to any claim for which P&G asserts infringement by equivalency, even if that same claim is alleged in the alternative to be literally infringed.

## Response No. 3

P&G objects to this interrogatory as premature because discovery has only recently begun, and P&G's investigation is ongoing. As such, P&G is not yet in a position to identify "all evidence" which may support an assertion that the accused products infringe under the doctrine of equivalents.

Subject to and without waiving the foregoing Specific and General Objections, P&G responds that, based on the information presently available to it, the same claims as are literally infringed by the accused products are alternatively infringed under the doctrine of equivalents and refers Coca-Cola to its response to Interrogatory No. 2, which is incorporated by reference herein.

## INTERROGATORY NO. 4

Specify when P&G first became aware of any facts it relied upon to file the Complaint in this civil action, provide a detailed chronological account of the steps taken to acquire the facts relied upon to file the Complaint, and all persons involved in or consulted in making the decision to institute this civil action.

## Response No. 4

In addition to its General Objections, P&G objects to this interrogatory to the extent that the information sought by this interrogatory is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. P&G further objects to this interrogatory to the extent it seeks a "detailed" chronological account of certain information on the grounds that this request is vague, overbroad, and unduly burdensome.

Subject to and without waiving the foregoing General and Specific Objections, P&G states that it first became aware that the accused products might infringe the '847 patent on October 31, 2001 as a result of communications from its exclusive licensee, Tropicana Products, Inc. ("Tropicana"). The individual from Tropicana who alerted P&G to the potential infringement was Nancy Green. The individual at P&G who received information concerning the potential infringement from Tropicana was David Lawson. Further information concerning the investigation undertaken by P&G, through counsel, is protected from discovery pursuant to the attorney-client privilege and the attorney work product doctrine.

## INTERROGATORY NO. 5

Provide a chronological account of the facts and circumstances surrounding the conception and the actual reduction to practice (including specific dates for each) concerning the claimed subject matter set forth in the '847 patent, including an identification of all laboratory notebooks or any other documents reflecting research conducted that supports or corroborates this chronological account.

- 5 -

**Response No. 5**

In addition to its General Objections, P&G objects to this interrogatory to the extent that it seeks information concerning documents that "support" or "corroborate" particular assertions on the grounds that this interrogatory calls for a legal conclusion.

Without waiving and subject to the foregoing General and Specific Objections, P&G responds that, upon entry of an appropriate protective order, it will produce or make available, pursuant to Fed. R. Civ. P. 33(d), non-privileged business records, including laboratory notebooks, from which the answer to this interrogatory may be derived or ascertained.

**INTERROGATORY NO. 6**

Identify all issued patents or abandoned or pending patent applications in the United States or another country that refer to, or claim the benefit of the filing date of, the '847 patent, the '342 patent, the '375 patent, and the '963 patent, and any other application in the chain of applications leading to those patents, including, but not limited to, any foreign counterpart application.

**Response No. 6**

In addition to its General Objections, P&G objects to this interrogatory to the extent it seeks information concerning the '342 patent, the '375 patent, and the '963 patent on the grounds that P&G has not asserted any claim of infringement based on those patents and, therefore, this interrogatory seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of any admissible evidence. P&G also objects to this interrogatory to the extent it seeks information concerning abandoned or pending patent applications in the United States or another country on the grounds that such information is highly confidential and proprietary and is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of any admissible evidence.

- 6 -

Subject to and without waiving the foregoing General and Specific Objections, P&G responds that the following issued patents claim the benefit of the filing date of the '847 patent:

U.S. Patent No. 4,919,963

Philippines Patent No. 27164

Philippines Patent No. 23972

European Patent No. 0244903

Austria Patent No. 0244903

Australia Patent No. 594271

Belgium Patent No. 0244903

Canada Patent No. 1325130

Chile Patent No. 36806

Finland Patent No. 91481

France Patent No. 0244903

Germany Patent No. 0244903

Hellenic Republic Patent No. 3031471

Ireland Patent No. 60333

Italy Patent No. 50135BE/90

Japan Patent No. 2559732

Korea Patent No. 102794

Luxembourg Patent No. 0244903

Monaco Patent No. 20969

Mexico Patent No. 165456

Netherlands Patent No. 0244903

Portugal Patent No. 84820

Spain Patent No. 2016336

Sweden Patent No. 0244903

Switzerland Patent No. 0244903-1

Turkey Patent No. 24771

United Kingdom Patent No. 0244903

Venezuela Patent No. 50037

## INTERROGATORY NO. 7

Identify all patents, publications, prior art, or other information cited by or to the foreign or U.S. Patent Offices with respect to each patent or application identified in response to Interrogatory No. 6, and specify the date on which such material was first cited by or to each patent office.

## Response No. 7

Subject to and without waiving the foregoing General Objections, P&G responds as follows based on the information currently available to it:

U.S. Patent No. 2,325,360    Ayers et al.

U.S. Patent No. 3,114,641    Sperti

U.S. Patent No. 3,657,424    Atkins et al.

European Patent No. 75114

Japan Patent No. 59-31710

Japan Patent No. 59-187768

United Kingdom Patent No. 2095530

P&G will produce or make available, pursuant to Fed. R. Civ. P. 33(d), documents from which additional information responsive to this request may be derived or ascertained.

- 8 -

## INTERROGATORY NO. 8

Describe in detail any test or investigation that P&G, Tropicana, or anyone on their behalf has undertaken to determine whether any product marketed within the United States potentially infringed the '847 patent, and identify each person who was involved in or assisted with each test or investigation, the product that was at issue, and the results of each such test or investigation.

## Response No. 8

In addition to its General Objections, P&G objects to this interrogatory to the extent it

seeks information that is protected from discovery by the attorney-client privilege and/or

attorney work product doctrine. P&G further objects to this interrogatory to the extent it seeks

information concerning the actions of Tropicana, or anyone acting on behalf of Tropicana, on the

grounds that such information is beyond the possession, custody, or control of P&G. Finally,

P&G objects to this interrogatory to the extent it requires P&G to respond "in detail," on the

grounds that such request is vague, overbroad, and unduly burdensome.

Subject to and without waiving the foregoing General and Specific Objections, P&G

responds that, upon entry of an appropriate protective order, it will produce or make available,

pursuant to Fed. R. Civ. P. 33(d), non-privileged business records, including laboratory

notebooks, from which the answer to this interrogatory may be derived or ascertained.

## INTERROGATORY NO. 9

Specify whether P&G contends that there are calcium fortified orange juice products on the market that do not infringe the '847 patent and, if so, identify each product and explain why each product does not infringe the '847 patent.

## Response No. 9

In addition to its General Objections, P&G objects to this interrogatory to the extent it

seeks information that is protected from discovery by the attorney-client privilege and/or

attorney work product doctrine. P&G further objects to this interrogatory as premature because discovery in this case has only recently begun, and P&G's investigation is ongoing.

## INTERROGATORY NO. 10

With the exception of the TCCC products already identified in response to Interrogatory No. 1, identify each product sold, offered for sale by, or manufactured at any time by P&G, Tropicana, or any other entity (authorized or unauthorized), which P&G contends is covered by the '847 patent.

### Response No. 10

In addition to its General Objections, P&G objects to this interrogatory to the extent it seeks information that is protected from discovery by the attorney-client privilege and/or attorney work product doctrine. P&G also objects to this interrogatory to the extent it seeks information concerning products sold, offered for sale by, or manufactured at any time by entities other than P&G on the grounds that this information is beyond the possession, custody, or control of P&G. P&G further objects to this interrogatory to the extent it seeks information concerning products sold, offered for sale, or manufactured anywhere and "at any time" on the grounds that this request is overbroad, unduly burdensome and seeks information that is neither relevant to the subject matter of this litigation nor reasonably likely to lead to the discovery of admissible evidence.

Without waiving and subject to the foregoing General and Specific Objections, P&G responds that the following products that were sold, offered for sale, or manufactured in the United States by P&G were covered by the '847 patent:

Citrus Hill Plus Calcium Orange Juice (Chilled)

Citrus Hill Plus Calcium Grapefruit Juice (Chilled)

Citrus Hill Plus Calcium Orange Juice (Frozen)

Citrus Hill Plus Calcium Grapefruit Juice (Frozen)

- 10 -

Citrus Hill Select Ten

Speas Farm Apple Juice with Calcium

P&G further responds that, to the best of its knowledge, the following products that are

sold, offered for sale, or manufactured in the United States by Tropicana are covered by the '847

patent:

Tropicana Grovestand Calcium Orange Juice

Tropicana Orange Banana with Calcium Juice

Tropicana Orange Juice with Calcium and Vitamin Supplement

Tropicana Orange Juice with Calcium and Vitamin Supplement with Pulp

Tropicana Orange Pineapple with Calcium Juice

Tropicana Orange Ruby Red with Calcium Juice

Tropicana Orange Tangerine Juice with Calcium

Tropicana Original with Calcium Orange Juice

Tropicana Pink Grapefruit with Calcium and Vitamin C Supplement

Tropicana Ruby Red Grapefruit with Calcium Juice

In addition, P&G believes, based upon the information currently available to it, that the

following products that have been sold, offered for sale, or manufactured in the United States by

other entities may be covered by the '847 patent:

Gerber fruit juices for infants and toddlers

Beech-Nut fruit juices for infants and toddlers

## INTERROGATORY NO. 11

Provide a chronological account of all communications between P&G and TCCC that
involve potential or actual licensing of P&G's Calcium Citrate Malate (CCM) technology
generally and/or the '847 patent specifically, including, for each such communication, the

- 11 -

persons and specific corporate entities (including divisions and departments) involved, the general time frame, and the substance of the communication.

## Response No. 11

Subject to and without waiving the foregoing General Objections, P&G responds that,

upon entry of an appropriate protective order, it will produce or make available, pursuant to Fed.

R. Civ. P. 33(d), non-privileged business records, including internal notes and memoranda

concerning the communications between P&G and Coca-Cola's division, The Minute Maid

Company ("Minute Maid"), regarding a potential license and correspondence between P&G and

Minute Maid regarding such a potential license, from which the answer to this interrogatory may

be derived or ascertained.

## INTERROGATORY NO. 12

State whether any product covered by the '847 patent and sold by P&G or its licensees has not been marked with the '847 patent number pursuant to 35 U.S.C. § 287 and, if so, identify each such product and the three persons most knowledgeable about such non-marking.

## Response No. 12

In addition to its General Objections, P&G objects to this interrogatory to the extent it

seeks information that is beyond the possession, custody or control of P&G.

Subject to and without waiving the foregoing General and Specific Objections, P&G

responds that, to the best of its knowledge, all products covered by the '847 patent and sold by

either P&G or its licensees have been marked with the '847 patent number.

## INTERROGATORY NO. 13

State with specificity any and all facts currently known by P&G which might form a basis to defend against a laches and/or estoppel defense that is premised upon P&G not filing suit until May 31, 2002, even though P&G concedes that it has been aware of the sale of calcium fortified products by TCCC since approximately 1988.

**Response No. 13**

In addition to its General Objections, P&G objects to this interrogatory on the grounds

that it is vague, overbroad, unduly burdensome and fails to describe with reasonable specificity

the information sought. P&G also objects to this request to the extent it requires P&G to state

information "with specificity" on the grounds that this language is vague, overbroad, and unduly

burdensome. P&G further objects to this interrogatory as premature on the grounds that its

response to this interrogatory is dependent upon information that is in the possession, custody, or

control of Coca-Cola. As such, since discovery in this matter has only recently begun, and

P&G's investigation is still ongoing, P&G is unable to respond to this interrogatory at this time.

## INTERROGATORY NO. 14

For each product made by P&G or by an authorized licensee that P&G contends is
covered by the '847 patent, identify the date and describe the circumstances, both in the United
States and abroad, of the (1) first disclosure to any third party (including test or focus groups),
(2) first public introduction, and (3) first offer for sale and customer order, including shipment
date.

**Response No. 14**

In addition to its General Objections, P&G objects to this interrogatory to the extent it

seeks information that is beyond the possession, custody, or control of P&G.

Subject to and without waiving the foregoing General and Specific Objections, P&G

responds as follows:

(a)     Citrus Hill Plus Calcium Orange Juice (Chilled) was first publicly introduced in

the fall of 1986. P&G is unable to state with specificity the date on which it was

first disclosed to any third party, but P&G's  general practice at that time was for

such products to be test marketed or tested with focus groups six to nine months

prior to the official public introduction of the product. P&G is also unable to state

- 13 -

with specificity the date of the first offer for sale or customer order of this product. However, P&G's investigation is ongoing, and should additional information responsive to this request become available, it will supplement its response appropriately.

(b)     Citrus Hill Plus Calcium Grapefruit Juice (Chilled) was first publicly introduced in the fall of 1986. P&G is unable to state with specificity the date on which it was first disclosed to any third party, but P&G's general practice at that time was for such products to be test marketed or tested with focus groups six to nine months prior to the official public introduction of the product. P&G is also unable to state with specificity the date of the first offer for sale or customer order of this product. However, P&G's investigation is ongoing, and should additional information responsive to this request become available, it will supplement its response appropriately.

(c)     Citrus Hill Plus Calcium Orange Juice (Frozen) was first publicly introduced in the fall of 1986. P&G is unable to state with specificity the date on which it was first disclosed to any third party, but P&G's general practice at that time was for such products to be test marketed or tested with focus groups six to nine months prior to the official public introduction of the product. P&G is also unable to state with specificity the date of the first offer for sale or customer order of this product. However, P&G's investigation is ongoing, and should additional information responsive to this request become available, it will supplement its response appropriately.

(d)     Citrus Hill Plus Calcium Grapefruit Juice (Frozen) was first publicly introduced
in the fall of 1986. P&G is unable to state with specificity the date on which it
was first disclosed to any third party, but P&G's general practice at that time was
for such products to be test marketed or tested with focus groups six to nine
months prior to the official public introduction of the product. P&G is also
unable to state with specificity the date of the first offer for sale or customer order
of this product. However, P&G's investigation is ongoing, and should additional
information responsive to this request become available, it will supplement its
response appropriately.

(e)     Citrus Hill Select Ten was test marketed to a limited geographic area in
approximately 1988 or 1989. It was never formally introduced to a broader
market. P&G is unable to state with specificity the date of the first offer for sale
or customer order of this product. However, P&G's investigation is ongoing, and
should additional information responsive to this request become available, it will
supplement its response appropriately.

(f)     Speas Farm Apple Juice with Calcium was first publicly introduced in
approximately 1990. P&G is unable to state with specificity the date on which it
was first disclosed to any third party, but P&G's general practice at that time was
for such products to be test marketed or tested with focus groups six to nine
months prior to the official public introduction of the product. P&G is also
unable to state with specificity the date of the first offer for sale or customer order
of this product. However, P&G's investigation is ongoing, and should additional

- 15 -

information responsive to this request become available, it will supplement its

response appropriately.

P&G further responds that it is not in possession, custody, or control of information

concerning the first disclosure to any third party, the first public introduction, or the first offer for

sale and customer order of any products covered by the '847 patent that are or were made by any

authorized licensee.

## INTERROGATORY NO. 15

Describe all facts supporting any allegations of secondary considerations of
nonobviousness, including, without limitation, long-felt but unsolved need, failure of others,
commercial success, commercial acquiescence through the acceptance of licenses, initial
expressions of disbelief by experts, professional approval, copying, departure from acceptable
principles of the art, and/or acclaim by industry.

## Response No. 15

In addition to its General Objections, P&G objects to this interrogatory to the extent that

it seeks information that is protected from discovery by the attorney-client privilege and/or

attorney work product doctrine. P&G further objects to this interrogatory as premature because

discovery in this case only recently begun and P&G's investigation is ongoing. Finally, P&G

objects to this interrogatory to the extent that it seeks information that will be the subject of

expert testimony.

Subject to and without waiving the foregoing General and Specific Objections, P&G

responds that, upon entry of an appropriate protective order, it will produce or make available,

pursuant to Fed. R. Civ. P. 33(d), non-privileged documents, including laboratory notebooks and

publications, from which the answer to this interrogatory may be derived or ascertained.

- 16 -

**INTERROGATORY NO. 16**

Describe in detail the method by which P&G contends the amount of alleged damages in this case should be calculated. The detailed description of the method by which P&G contends the amount of damages are to be calculated should include, without limitation, an identification of each damages theory that P&G alleges should be used in the damages calculation, an identification of the specific factors that P&G alleges should be used under each such damages theory, and an identification of the amount of damages resulting from the calculation under each such damages theory. For example, if P&G alleges the damages should be calculated under a theory of reasonable royalty, the detailed description should include at least the applicable royalty rate or rates and the TCCC product sales to which the royalty rate should be applied; and if P&G alleges the damages should be calculated under a theory of lost profits, the detailed description should include at least an explanation of how P&G satisfies the four factors enumerated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978), or any other lost profits damage theory upon which P&G relies.

**Response No. 16**

In addition to its General Objections, P&G objects to this interrogatory to the extent it

seeks information that is protected from discovery by the attorney-client privilege and/or

attorney work product doctrine. P&G also objects to this interrogatory as premature because

discovery in this matter has only recently begun and P&G's investigation is still ongoing. P&G

further objects to this interrogatory to the extent it requires P&G to state information "in detail,"

on the grounds that this language is vague, overbroad, and unduly burdensome. Finally, P&G

objects to this interrogatory to the extent that it seeks information that will be the subject of

expert testimony.

Subject to and without waiving the foregoing General and Specific Objections, P&G

responds as follows:

P&G's damages claim is grounded on 35 U.S.C. § 284:

Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty, together with interests and costs as fixed by the court.

When damages are not found by a jury the court shall assess them. In either event, the court may increase the damages up to three times the amount found or assessed.

- 17 -

At a minimum, P&G is entitled to recover no less than a reasonable royalty for Cola-Cola's making, using, and selling the patented invention. A reasonable royalty is the amount a licensee would pay for the right to make, use, or sell a patented article and yet make a reasonable profit. A "hypothetical negotiation" approach to calculating a reasonable royalty, where a licensing negotiation between an licensor and licensee is deemed to take place, will require discovery from Coca-Cola. This calculation will be premised on the fact that such a negotiation would have set a royalty equal to a substantial portion of the income enjoyed by, and expected to be enjoyed by, Coca-Cola from infringing sales.

P&G also claims prejudgment interest from the date of infringement to the date of judgment. As presently advised, interest should be assessed at Coca-Cola's cost of capital, compounded annually. P&G also claims attorneys' fees pursuant to 35 U.S.C. § 285 as well as costs.

## INTERROGATORY NO. 17

Identify each witness you intend to call or to have testify by affidavit or report during any Markman proceeding, summary judgment proceeding, Daubert proceeding, or trial, whose testimony or opinions are offered under any provision of Article VII of the Federal Rules of Evidence, and for each identified witness, provide detailed information concerning:

    A)     the subject matter on which the witness is expected to testify;

    B)     the substance of facts and opinions to which the witness is expected to testify, and

    C)     a summary of the grounds for each opinion held.

## Response No. 17

In addition to its General Objections, P&G objects to this interrogatory as premature on the grounds that the Proposed Stipulated Scheduling Order submitted to the Court by the parties on October 9, 2002 sets forth dates for the identification of primary and rebuttal expert witnesses and the service of reports detailing the subject matter on which each such expert is expected to

testify, the substance of the facts and opinions that each such expert is expected to give, and the grounds for each opinion to be offered by such expert.

Subject to and without waiving the foregoing General and Specific Objections, P&G responds that it has not yet determined the identity of any expert witness whose opinions it expects to offer in any Markman proceeding, summary judgment proceeding, Daubert proceeding, or trial in connection with this matter.

## INTERROGATORY NO. 18

Identify all P&G employees (past or present) having responsibility for sales, marketing, licensing, research and development, business strategy, and/or legal counseling relating to fruit juice beverages or fruit juice concentrates that have had knowledge of the TCCC products that are now accused of infringing the '847 patent at any time between 1988-present and, for each such employee, describe the general nature of that employee's knowledge and the general time frame when that knowledge was acquired.

## Response No. 18

In addition to its General Objections, P&G objects to this interrogatory on the grounds that, in seeking identification of "all P&G employees (past or present) . . . that have had knowledge" of the accused products "at any time between 1988-present," it is overbroad, unduly burdensome, and seeks information that is beyond the possession, custody, or control of P&G.

Subject to and without waiving the foregoing General and Specific Objections, P&G responds that, upon entry of an appropriate protective order, it will produce or make available, pursuant to Fed. R. Civ. P. 33(d), non-privileged business records, including organization charts, laboratory notebooks, patent prosecution histories, internal memoranda, notes, and electronic mail, from which the answer to this interrogatory may be derived or ascertained.

## VERIFICATION

On behalf of The Procter & Gamble Company ("P&G"), I have read the foregoing responses to interrogatories. The responses were prepared with the assistance of P&G's employees and with the assistance and advice of counsel. The answers are based on P&G's review of the records and information currently available. I reserve the right to make changes in or additions to any of these responses if at any time it appears that errors or omissions have been made or if more accurate or complete information becomes available. Subject to these limitations and reservations, these responses are true to the best of my present knowledge, information, and belief.

Signed this 18th day of October, 2002

By: _____
Kenneth Smith

10/18/02

As to objections:

THE PROCTER & GAMBLE COMPANY

By it attorneys,

_____

William F. Lee (admitted *pro hac vice*)
David B. Bassett (admitted *pro hac vice*)
Vinita Ferrera (admitted *pro hac vice*)
Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Mark Vander Laan (Bar No. #0013297)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202-3172
(513) 977-8200

Dated: October 18, 2002

## Certificate of Service

I, Vinita Ferrera, hereby certify that, on this 18th day of October, 2002, a true and correct copy of the above document was served by facsimile and overnight mail on Gerald F. Ivey, Esq., Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 1300 I Street, N.W., Suite 700, Washington, D.C. 20005-3315, and Roger J. Makley, Esq., Coolidge, Wall, Womsley & Lombard, 33 West First Street, Suite 600, Dayton, Ohio 45402.

Vinita Ferrera

# EXHIBIT 1

## Claims Chart for U.S. Patent No. 4,722,847

**Claim 1:**

| Claim limitation | Specification | Minute Maid 100% Orange Juice, Plus Calcium (Original and Home Squeezed) |
|---|---|---|
| A calcium-supplemented single-strength fruit juice beverage, | The specification describes "fruit juice beverage" as being in a "single-strength, ready to serve, drinkable form" (col. 4, l. 44-46). | Minute Maid (MM) juice is a calcium-supplemented 100% orange juice from concentrate (based upon product label), and is sold in a ready-to-serve, drinkable form. Thus, MM juice is a calcium-supplemented single-strength fruit juice beverage. |
| substantially free of added protein, | The specification describes "substantially free" of added protein as being "generally no more than about 0.1% by weight" (col. 7, l. 16-19). | MM label states "protein 2 g - not a significant source of protein." The product label does not indicate that any protein has been added; thus, the MM product meets the limitation of "substantially free" of added protein. |
| which comprises: from about 0.06 to about 0.26% by weight solubilized calcium; | "Solubilized calcium" means the amount of calcium that is dissolved in the beverage (col. 5, l. 25-32). | MM juice has a range of 0.113-0.154 wt% solubilized calcium. |
| from about 0.4 to about 4% by weight of an acid component | "Acid component" is determined as the total acid including both natural and added acids in both undissociated (free acid) and dissociated (salt) forms (col. 5, l. 56-68, and col. 6, l. 4-6). | MM juice has a range of 1.2-1.7 wt% acid component. |
| comprising a mixture of citric acid and malic acid in a weight ratio of citric acid:malic acid of from about 5:95 to about 90:10; | The citric acid to malic acid ratio is determined based on total malic and citric acid, including both natural and added sources in undissociated (free acid) and dissociated (salt) forms (col. 5, l. 56-68, and col. 6, l. 4-6). | MM juice has a range of 80:20 – 87:13 citric acid:malic acid. |
| at least about 45% fruit juice; | | MM juice includes water, orange juice from concentrate, calcium phosphate and calcium lactate. The label states "100% orange juice plus calcium." Given that the non-juice ingredients constitute a small percentage of the total MM product, MM juice approaches 100% fruit juice content and meets the limitation of "at least 45% fruit juice." |

| a sugar content from about 2° to about 16° Brix; and | | MM juice has a sugar content range of 2.3-13.0° Brix. |
|---|---|---|
| no more than about 0.07% by weight chloride ion. | | MM juice has a chloride ion range of 0.001-0.014 wt%. |

**Claim 2:**

| Claim limitation | Specification | Minute Maid 100% Orange Juice, Plus Calcium (Original and Home Squeezed) |
|---|---|---|
| The beverage of claim 1, wherein said fruit juice is citrus juice. | "Citrus juice" is defined as "orange juice, lemon juice, lime juice, grapefruit juice, tangerine juice and mixtures thereof" (col. 5, l. 6-9). | MM juice is a calcium-supplemented single strength orange juice based upon product label; orange juice is a citrus juice. |

**Claim 3:**

| Claim limitation | Specification | Minute Maid 100% Orange Juice, Plus Calcium (Original and Home Squeezed) |
|---|---|---|
| The beverage of claim 2, wherein said fruit juice is orange and wherein said weight ratio of citric acid:malic acid is from about 60:40 to about 90:10. | See, claim 1 above. | MM juice has a range of 80:20 – 87:13 citric acid:malic acid. |

**Claim 7:**

| Claim limitation | Specification | Minute Maid 100% Orange Juice, Plus Calcium (Original and Home Squeezed) |
|---|---|---|
| The beverage of claim 3 wherein said orange juice comprises at least about 95% of the beverage. | See, claim 1 above. | MM juice includes water, orange juice from concentrate, calcium phosphate and calcium lactate. The label states "100% orange juice plus calcium." Given that the non-juice ingredients constitute a small percentage of the total MM product, MM juice approaches 100% orange juice content and meets the limitation of "at least about 95%" orange juice. |

**Claim 8:**

| Claim limitation | Specification | Minute Maid 100% Orange Juice, Plus Calcium (Original and Home Squeezed) |
|---|---|---|
| The beverage of claim 3, wherein said solubilized calcium comprises from about 0.10 to about 0.16% by weight of the beverage | See, claim 1 above. | MM juice has a range of 0.113-0.154 wt% solubilized calcium. |
| and wherein said acid component comprises from about 0.8 to about 1.8% by weight of the beverage. | See, claim 1 above. | MM juice has a range of 1.2-1.7 wt% acid component. |

**Claim 11:**

| Claim limitation | Specification | Minute Maid 100% Orange Juice, Plus Calcium (Original and Home Squeezed) |
|---|---|---|
| The beverage of claim 1 which comprises no more than about 0.03% by weight chloride. | See, claim 1 above. | MM juice has a chloride ion range of 0.001-0.014 wt%. |