UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

*Western Division*

| | |
|---|---|
| THE PROCTOR & GAMBLE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. C-1-02-393 |
| v. ) | |
| ) | Hon. Walter Herbert Rice (Chief Judge) |
| THE COCA-COLA COMPANY, ) | Hon. Sharon L. Ovington (Magistrate) |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT**

**I.   INTRODUCTION**

In objecting to The Procter & Gamble Company's ("P&G") Motion for Leave to File a Second Amended Complaint, The Coca-Cola Company ("Coca-Cola") goes to great lengths to characterize P&G's request as a product of negligence and undue delay, when, in fact, the circumstances giving rise to P&G's request are of Coca-Cola's own making.

P&G's Motion seeks to amend the Complaint in this case in two ways. First, it seeks to add an allegation of willful infringement, based upon *newly-discovered* evidence that Coca-Cola not only was *aware* of the patent-in-suit, U.S. Patent No. 4,722,847 (the "'847 patent"), but that it had been sufficiently concerned about the patent to seek legal analysis of it, Coca-Cola has refused to produce that legal analysis in discovery. With respect to this allegation, Coca-Cola's argument that P&G could have asserted a willful infringement claim earlier, based upon Coca-Cola's disclosure that it was aware of the '847 patent as early as 1988, implies that an allegation

of willfulness would be proper in almost every patent infringement case. Given the seriousness of the willful infringement allegation, this cannot be the law.

Second, P&G seeks to clarify further the products at issue in this case in response to Coca-Cola's assertion that P&G's earlier allegations were not sufficiently specific. P&G's initial Complaint was more than adequate to put Coca-Cola on notice of the fact that its calcium-fortified frozen concentrates, Disney Hundred Acre Wood™ 100% Juices, and Minute Maid Juice Boxes were involved in the case, as evidenced by the fact that in response to P&G's discovery requests concerning the accused products, Coca-Cola has produced documents relating to all of these products. Nevertheless, the requested amendment is necessitated at this time because of the unduly narrow position that Coca-Cola has taken during recent discovery with respect to these products.

Accordingly, although Coca-Cola conveniently complains that P&G's Motion is untimely, where its own actions have given rise to the requested amendments, this argument is disingenuous at best and should be rejected.

## II. ARGUMENT

### A. P&G's Assertion Of Willful Infringement Was Timely.

Coca-Cola's argument in opposition to P&G's request to add an allegation of willful infringement is based on a strained interpretation of the requirements for pleading willful infringement. In essence, Coca-Cola contends that the mere admission that it was aware of the '847 patent in 1988 was enough to warrant an allegation of willful infringement, such that P&G's caution in making such a serious charge until it obtained further evidence relating to the circumstances of Coca-Cola's awareness constitutes undue delay. If that were the case, then in

any case involving large competitors, the patent holder would be required to assert a claim of willful infringement at the outset to avoid being precluded from doing so later. Coca-Cola argues inconsistently that it is too easy for a party to add a claim of willful infringement in an effort to obtain the opposing party's privileged information. (Opposition at 6-7.) In other words, under Coca-Cola's theory, had P&G alleged willful infringement at the outset of the case, it would have been an unfair tactic designed solely to obtain discovery of privileged communications, but by waiting until more information was obtained through discovery, P&G is guilty of undue delay. This certainly is a perverse result, which this Court should not countenance.

Instead of alleging willful infringement in this case as a matter of course, P&G took the reasonable approach of waiting to see whether discovery revealed any facts suggesting that such an allegation might be warranted. Contrary to Coca-Cola's assertion, those facts were not known until P&G deposed Coca-Cola's in-house counsel, Mr. William Lee, on June 27, 2003 in spite of P&G's efforts to obtain discovery of them earlier. Specifically, in its First Set of Interrogatories to Coca-Cola, served on September 27, 2002, P&G asked Coca-Cola to "identify the date on and circumstances and persons through which Coca-Cola first learned of the '847 patent." (See Coca-Cola's Answers and Objections to P&G's First Set of Interrogatories, Interrogatory No. 5.) (attached hereto as Exhibit A.) In response, Coca-Cola stated: "TCCC first learned of the '847 patent in approximately mid-1988. Mr. William Lee is a person having knowledge of these activities." (Id. at Response to Interrogatory No. 5.) Coca-Cola did not identify who learned of the patent in 1988 or the circumstances of the discovery. In May 2003, Coca-Cola produced a privilege log that for the first time identified as privileged various communications relating to "legal advice and analysis concerning a potential patent infringement investigation." (See

- 3 -

Excerpts From Coca-Cola's Privilege Log.) (attached hereto as Exhibit B.) The entries did not identify the '847 patent as the subject of the advice and analysis, however. In other words, had Coca-Cola more fully answered the interrogatory posed by P&G directed to the issue of its awareness of the '847 patent or provided more specific information in its privilege log, P&G might have had enough information to allege willful infringement earlier. As it is, the first time that P&G became aware of the circumstances surrounding Coca-Cola's discovery of the '847 patent and request for legal advice was during the deposition of Mr. Lee a few weeks before it sought to amend the Complaint. P&G therefore cannot be faulted for filing the instant Motion when it did.[1]

Moreover, the information that P&G obtained concerning Coca-Cola's discovery of the '847 patent and its decision to obtain legal advice concerning that patent is highly relevant to willful infringement. Coca-Cola's position throughout this case has been that the '847 patent on its face is inapplicable to its products for various reasons. However, the revelation that, shortly after becoming aware of the '847 patent, Coca-Cola sought legal advice concerning potential infringement calls this assertion into question by suggesting that, in 1988 at least, Coca-Cola was concerned about the scope of the '847 patent. It is the fact of Coca-Cola's concern about the '847 patent is significant for purposes of this motion. That fact, combined with Coca-Cola's refusal to disclose the nature of the advice it received even when faced with the possible addition of a willful infringement claim, gives rise to an adverse inference of willfulness. See, e.g., L.A. Gear v. Thom McAn Shoe Co., 988 F.2d 1117, 1126 (Fed. Cir. 1993) (stating that asserting privilege or otherwise failing to produce opinion of counsel may support adverse inferences with

---

[1] As P&G stated in its previous memorandum, the time between Mr. Lee's deposition and the filing of the instant motion was spent engaged in discussions with Coca-Cola designed to avoid the filing of the instant motion. (P&G Memorandum In Support Of Its Second Motion to Amend at 6-7.)

respect to willfulness); <u>Kloster v. Speedsteel AB v. Crucible Inc.</u>, 793 F.2d 1565, 1580 (Fed. Cir. 1988) (stating that accused infringer's silence as to existence of an opinion of counsel contributed, with other factors, to the ruling that infringement was willful). Coca-Cola may rebut the inference by coming forward with evidence that it relied on the advice of counsel, but that, as Coca-Cola observes is a *defense* – not a basis to defeat a motion to amend.[2]

In short, Coca-Cola's exclusive reliance on the fact that P&G only filed its motion to amend after discovery of this information is unpersuasive.[3]

### B. Coca-Cola Has Had Ample Notice That The Complaint Covers The Products Identified Expressly In The Proposed Second Amended Complaint.

Contrary to Coca-Cola's suggestion, P&G's proposed amendments do not seek to expand the scope of the products at issue in this case, but merely to clarify its earlier allegations.

#### 1. Frozen Concentrates.

With respect to frozen concentrates, Coca-Cola's argument that P&G omitted them from prior filed versions of the Complaint mischaracterizes the earlier pleadings. A review of both the Complaint and the Amended Complaint reveals that P&G identified several product lines that infringe the '847 patent. Nothing in either document limits the varieties within these product

---

[2] Coca-Cola's additional complaint that a claim of willful infringement might force it to waive its attorney-client privilege regarding the 1988 opinion should be equally unpersuasive. That is *always* true in any case involving a written opinion and a claim of willful infringement. The decision whether to waive the privilege, however, will still remain Coca-Cola's. If Coca-Cola does not wish to waive the privilege, it can *still* refuse to produce the opinion on the grounds of attorney/client privilege, even if P&G's motion to amend is allowed.

[3] The reason for Coca-Cola's vigorous objection is apparent. A finding of willful infringement could bar Coca-Cola's laches and equitable estoppel actions. <u>See, e.g.</u>, <u>Loral Corp. v. B.F. Goodrich Co.</u>, Civ.A.No. C-3-86-261, 1989 U.S. Dist. LEXIS 16865, at *134 (S.D. Ohio. Jan. 30, 1989), <u>rev'd on other grounds</u>, 15 U.S.P.Q. 1396 (Fed. Cir. 1990) (per curiam) (holding that defendant's willful patent infringement precluded it from relying on defense of equitable estoppel); <u>see also</u> <u>A.C. Auckerman Co. v. R.L. Chades Constr. Co.</u>, 29 U.S.P.Q.2d 1054, 1058 (N.D. Cal. 1993) (stating that because the infringer "did not engage in its infringing activities in good faith", it "has come to this Court with unclean hands" and "is precluded from raising the laches defense" and "from asserting an equitable estoppel defense").

lines in any fashion. *See* Amended Complaint at ¶ 14 ("Coca-Cola, through its Minute Maid division, has made, sold, offered to sell, and used in the United States *at least* seven different calcium-supplemented fruit juice beverages) (emphasis added); Complaint at ¶ 13 ("Coca-Cola, through its Minute Maid division, has made, sold, offered to sell, and used in the United States *at least* two different calcium-supplemented fruit juice beverages") (emphasis added). Coca-Cola's assertion that P&G's earlier allegations were restricted to chilled calcium-fortified juice beverages simply reads into the language of the pleadings limitations that do not exist. Likewise, Coca-Cola's assertion that the frozen concentrates implicate claims of the '847 patent that were not identified in earlier pleadings ignores the fact that the Complaint and the Amended Complaint identify the '847 patent as a whole as being infringed, and do not identify any particular claim. Indeed, under notice pleading standards, that is all that is required. See Fed. R. Civ. P. 8; see also Reed Eleviser Inc., v. Thelaw.Net Corp., 296 F. Supp.2d 942, 949 (S.D. Ohio 2003) (Rice, J.) (concluding that defendant took too restrictive view of what notice pleading system requires and stating that Supreme Court has "consistently admonished" district courts for imposing unduly heightened requirements).

Moreover, the facts show that, notwithstanding its protestations to the contrary, Coca-Cola has understood since early in discovery that the frozen concentrate versions of the products identified in the pleadings were at issue in the case. In response to discovery requests seeking production of documents relating to the formulation of the accused products, for example, Coca-Cola produced formulation sheets for both chilled and frozen concentrated versions of the products. (See, e.g., Exhibit C attached hereto.) Coca-Cola's more recent position that such products are beyond the scope of the allegations therefore is belied by its own actions.

- 6 -

Additionally, Coca-Cola's reliance on the fact that P&G did not initially provide any data concerning its testing of frozen concentrate products in its answers to interrogatories is misplaced. P&G plainly indicated that it would supplement those responses as additional information became available, and it did so as soon as it had such information concerning the frozen concentrates.[4] (See P&G's Response To Coca-Cola's First Set of Interrogatories, General Objection No. 10.) (attached hereto as Exhibit D.)

Finally, as a practical matter, Coca-Cola's objection to the addition of the frozen concentrates to the list of accused products is pointless. If the Court were to deny P&G's motion to amend, P&G could simply file another complaint relating to those products, there being no applicable statute of limitations. To require P&G to do that would elevate form over substance. Many, if not most, of the factual and legal issues that have been raised in the current case would apply equally in a separately-filed complaint relating to frozen concentrates; as such, requiring the frozen concentrate claims to be address separately would be tremendously inefficient. The better course would be to allow all claims to be addressed in one suit, particularly where this case is still in a pretrial position.

### 2. Disney Hundred All Woods 100% Juices and Minute Maid Boxes.

Coca-Cola's argument with respect to these products is wholly perfunctory – perhaps because it recognizes the futility of its objection. Coca-Cola correctly notes that P&G obtained test data evidencing the fact that these products infringed the '847 patent in late 2002. Based on that test data, on December 16, 2002 P&G requested leave to amend its Complaint to specifically

---

[4] The information that Coca-Cola attached to its Opposition relating to P&G's testing of Minute Maid's products is irrelevant to its motion. It in no way indicates that P&G was aware that Minute Maid's frozen concentrates infringed the '847 patent. There is no data reported in that document referring to the citric:malic acid ratio and other elements of the asserted claims of the '847 patent. Even if the 1986 data that Coca-Cola produced is complete, P&G could not have relied on it to establish infringement of the '847 patent at a later time.

- 7 -


identify those, and other products for which it had obtained data.[5] The Court allowed that motion on December 23, 2002.

## IV.    **CONCLUSION**

For the foregoing reasons, Proctor & Gamble requests that the Court allow its Motion for Leave to File Second Amended Complaint.

THE PROCTER & GAMBLE COMPANY

By its attorneys,

/s/ Mark A. Vander Laan
Mark A. Vander Laan
Trial Attorney (Reg. No. 0013297)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202-3172
(513) 977-8200

William F. Lee (admitted *pro hac vice*)
David B. Bassett (admitted *pro hac vice*)
Vinita Ferrera (admitted *pro hac vice*)
Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109

Dated: September 29, 2003

---

[5] As with the frozen concentrates documents that Coca-Cola attached to its Opposition, the documents referring to the composition of these products prove nothing since they do not contain any information relating to the citric:malic acid ratio of those products.

## Certificate of Service

I, Mark Vander Laan, hereby certify that, on this 29th day of September, 2003, a true and correct copy of the above document was served by facsimile and overnight mail on Robert L. Burns, Esq., Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Two Freedom Square, 11955 Freedom Drive, Reston, VA 20190-5675, and Roger J. Makley, Esq., Coolidge, Wall, Womsley & Lombard, 33 West First Street, Suite 600, Dayton, Ohio 45402.

/s/ Mark A. Vander Laan
Mark A. Vander Laan