

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>THE COCA-COLA COMPANY,<br><br>    Defendant/Counterclaim-Plaintiff. | CIVIL ACTION NO. C-1-02-393<br><br>Chief Judge Walter Herbert Rice<br>Hon. Michael R. Merz (Magistrate) |

### DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-17)

Defendant, The Coca-Cola Company ("TCCC"), hereby responds to the First Set of Interrogatories (Nos. 1-17) served by Plaintiff, The Procter & Gamble Company ("P&G"), on September 27, 2002.

### GENERAL OBJECTIONS

1. TCCC objects generally to P&G's interrogatories to the extent that they request information protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or immunity.

2. To the extent that TCCC responds by offering to produce documents in lieu of identifying them or compiling information from them, TCCC will produce such documents as they exist, can be located after a reasonable search of TCCC's files, and are not subject to the attorney/client privilege, work-product doctrine, or any other objection. A response that documents will be produced should not be construed as a representation that such documents

HALE AND DORR
FILE COPY

exist or existed. Such responses indicate only that documents responsive to the request, subject to applicable objections, will be produced if any such documents are found after a reasonable search.

    3.    TCCC objects generally to P&G's interrogatories to the extent that P&G seeks to require TCCC to provide any information beyond what is available to TCCC at present from a reasonable search of TCCC's physical files at its corporate headquarters, principal offices, and research and manufacturing facilities, and from a reasonable inquiry of TCCC's present employees on the ground that such discovery sought is unduly burdensome.

    4.    TCCC objects to any interrogatory to the extent P&G seeks to impose on TCCC any burden and/or obligation in excess of those required by the Federal Rules of Civil Procedure and the Local Rules of this Court.

    5.    TCCC objects to P&G's interrogatories to the extent they purport to require TCCC to search for information not within TCCC's possession, custody or control on the ground that to do so would place an undue burden upon TCCC.

    6.    Nothing in these responses should be construed as waiving rights or objections that otherwise might be available to TCCC, nor should TCCC's answering of any of these discovery requests be deemed an admission of the existence of any information sought, or of the relevancy, materiality, or admissibility in evidence of the discovery requests or the responses thereto, or of the truth or accuracy of any statement or characterization contained in any particular interrogatory.

    7.    An objection based on attorney-client privilege and/or work product immunity should not be construed as a representation that such information exists or existed. Such

objections indicate only that the requests are of such a scope as to embrace subject matter protected by the attorney-client privilege and/or work product doctrine.

8. The General Objections apply to all of P&G's Interrogatories Nos. 1-17. To the extent that specific General Objections are cited in response to specific interrogatories, those specific citations are provided because they are believed to be particularly applicable to the interrogatory and are not to be construed as a waiver of any other General Objections applicable to information falling within the scope of the interrogatory.

9. Because discovery is only beginning in this case, TCCC's answers to these interrogatories are by no means exhaustive. The following responses reflect TCCC's present knowledge, information, and belief and may be subject to change or modification based on TCCC's further discovery, and/or on facts or circumstances that may come to TCCC's knowledge. TCCC reserves the right to supplement its answers to these interrogatories and/or to include additional information at trial that may be obtained during yet to be conducted discovery and/or investigation.

10. To the extent that P&G's interrogatories seek the production of internal Finnegan, Henderson et al. work product files, TCCC objects to either the production or the listing of these documents on a withheld document list.

11. TCCC objects to the interrogatories to the extent that they call for information derived after the filing date of the lawsuit, which was derived in conjunction with or at the direction of counsel, that is subject to the attorney-client privilege or work product doctrine, and that would present a tremendous burden on TCCC to disclose in a privilege log.

12. TCCC objects to the interrogatories as unduly broad and burdensome and not likely to lead to the discovery of admissible information, to the extent that they seek information concerning products not accused of infringement.

13. TCCC objects to the interrogatories to the extent that they call for the disclosure of trade secrets and/or other confidential and/or proprietary information before an appropriate Protective Order is entered or before a satisfactory agreement is reached between the parties concerning access to such information.

14. TCCC objects to P&G's definition of "Accused Products" as unduly broad to the extent it includes products other than those accused of infringement in the Complaint. P&G is not entitled to use discovery as a fishing expedition. The accused products are the products accused of infringement in the Complaint.

15. TCCC objects to the interrogatories to the extent that they purport to require TCCC to identify people and documents in the detailed manner requested.

## ANSWERS

### P&G INTERROGATORY NO. 1

> Please identify by brand name or other similar designation each and every product containing calcium-fortified juice or juice concentrate that Coca-Cola has made, used, imported, offered for sale, and/or sold.

### ANSWER NO. 1

TCCC objects to this interrogatory as being unduly broad and burdensome and as seeking information that is irrelevant under the standards of Rule 26(b) to the extent that, *inter alia*, it (1) seeks information concerning "calcium-fortified" products not accused of infringement, (2) seeks information concerning products sold outside the United States, and (3) seeks

4

information concerning products that TCCC may have made, used, imported, offered for sale, and/or sold more than six years prior to the filing of the lawsuit.

Subject to and without waiving its specific and General Objections, TCCC states that it has sold in the United States products fortified with calcium and having at least 45% fruit juice under the following brand designations:

1. Minute Maid Premium Calcium Original;

2. Minute Maid Premium Calcium Home Squeezed Style;

3. Disney Hundred Acre Wood Juices;

4. Minute Maid Premium Blends;

5. Simply Orange Plus Calcium;

6. Minute Maid Juice Boxes (excluding lemonade);

7. Minute Maid Premium Apple Juice and Grapefruit Juice;

8. Minute Maid Juices To Go Orange Juice with Calcium; and

9. Odwalla Juices.

These branded products have been sold in one or more forms, including chilled juice, frozen concentrated juice, single-serving, and multiserve forms.

**P&G INTERROGATORY NO. 2**

> For each product identified in response to Interrogatory No. 1, please state:
>
> (a) the date on which such product was first offered for sale; (b) the date on which such product was first sold, and (c) if no longer being offered for sale, the date on which such product ceased being offered for sale.

## ANSWER NO. 2

TCCC objects to this interrogatory as being unduly broad and burdensome and as seeking information that is irrelevant for the reasons asserted in TCCC's Answer to Interrogatory No. 1. Despite the fact that information concerning the products identified in the Answer to Interrogatory No. 1 is readily available to P&G through, *inter alia*, acquisition of the publicly sold products or inspection of the ingredients on the package labels, P&G has made no accusation of infringement for products other than Minute Maid Premium Calcium Original and Minute Maid Premium Calcium Home Squeezed Style. TCCC objects to providing detailed discovery responses on products that are not at issue in this lawsuit.

Subject to and without waiving its specific and General Objections, TCCC states that it began selling calcium-fortified fruit juices on or about September 1986.

## P&G INTERROGATORY NO. 3

Separately for each product identified in response to Interrogatory No. 1, and separately for domestic U.S. sales and foreign sales, please state on a monthly, quarterly, and yearly basis, since such product was first sold, that product's:

(a) total gross net sales;
(b) total net unit sales;
(c) total gross dollar sales;
(d) total net dollar sales;
(e) average unit gross wholesale selling price;
(f) average unit net wholesale selling price;
(g) total cost of goods sold;
(h) average unit cost of goods sold;
(i) total gross profit margin;
(j) average gross profit margin per unit;
(k) total net profit margin; and
(l) average net profit margin per unit.

## ANSWER NO. 3

TCCC objects to this interrogatory as being unduly broad and burdensome and as seeking information that is irrelevant for the reasons asserted in TCCC's Answer to Interrogatory No. 1. Despite the fact that information concerning the products identified in the Answer to Interrogatory No. 1 is readily available to P&G through, *inter alia*, acquisition of the publicly sold products or inspection of the ingredients on the package labels, P&G has made no accusation of infringement for products other than Minute Maid Premium Calcium Original and Minute Maid Premium Calcium Home Squeezed Style. TCCC objects to providing detailed discovery responses on products that are not at issue in this lawsuit.

TCCC further objects to this interrogatory as being vague and ambiguous as to what the twelve categories (a-l) of financial information are intended to encompass. Subject to and without waiving its specific and General Objections, TCCC will produce documents pursuant to Rule 33(d) in response to this interrogatory that are sufficient to show sales, costs, and profits for the products accused of infringement in the Complaint.

## P&G INTERROGATORY NO. 4

> With respect to each amount identified in response to Interrogatory No. 3(g)-(l), please state the amounts of and describe in detail: (a) each expense (including raw material costs, labor costs, variable costs, direct costs, and indirect costs) used to compute the cost and profit amounts stated; and (b) each overhead depreciation, research, development, and other fixed cost allocated to or used to compute the cost and profit amounts stated.

## ANSWER NO. 4

TCCC objects to this interrogatory as being unduly broad and burdensome, vague and ambiguous, and as seeking information that is irrelevant for the reasons asserted in TCCC's Answer to Interrogatory Nos. 1-3.

## P&G INTERROGATORY NO. 5

> Please identify the date on and circumstances and persons through which Coca-Cola first learned of the '847 patent.

## ANSWER NO. 5

TCCC objects to this interrogatory to the extent that it calls for information that is protected from discovery by the attorney-client privilege and the work product doctrine. TCCC still further objects to this interrogatory as requesting specific details about events that occurred more than 14 year ago.

Subject to and without waiving its specific and General Objections, TCCC states that TCCC first learned of the '847 patent in approximately mid-1988. Mr. William Lee is a person having knowledge of these activities.

## P&G INTERROGATORY NO. 6

> If Coca-Cola contends that any of the claims of the '847 patent are invalid, please state the basis for that contention and identify all documents that refer or relate to that contention.

## ANSWER NO. 6

In addition to the General Objections, TCCC further objects to this interrogatory because it prematurely seeks TCCC's legal contentions in this action. Still further, TCCC objects to this interrogatory as premature since invalidity positions may be impacted by the claim construction that is eventually adopted by the Court.

Subject to and without waiving its specific and General Objections, TCCC states that its investigation of the invalidity of the '847 patent is ongoing. TCCC further states that the '847 patent is invalid in at least the following respects: (1) the '847 specification lacks an adequate written description of the claimed subject matter and of the manner and process of making and using the claimed subject matter as required by 35 U.S.C. § 112, (2) the asserted '847 claims fail

8

to particularly point out and distinctly claim the subject matter of the invention as required by 35 U.S.C. § 112, (3) the asserted '847 claims are anticipated under 35 U.S.C. § 102 by the prior art, and (4) the asserted '847 claims are obvious under 35 U.S.C. § 103 in light of the prior art.

**P&G INTERROGATORY NO. 7**

> Please identify all prior art that Coca-Cola contends affects the validity of the '847 patent.

**ANSWER NO. 7**

In addition to the General Objections, TCCC objects to this interrogatory because it prematurely seeks TCCC's legal contentions in this action. Further, TCCC objects to this interrogatory as premature since invalidity positions may be impacted by the claim construction that is eventually adopted by the Court.

TCCC further objects to this interrogatory because the term "affects" is vague and ambiguous. Subject to and without waiving its specific and General Objections, TCCC states that its investigation of the alleged validity of the '847 patent is ongoing. TCCC further states that at least the following prior art "affects" the validity of the '847 patent:

U.S. Patent No. 2,325,360;

U.S. Patent No. 3,968,263;

Japanese Patent Application No. 60-94075;

U.S. Patent No. 3,723,133;

Great Britain Patent No. 1 250 535;

Japanese Patent Application No. 59-31710;

Japanese Patent No. 4-48421;

U.S. Patent No. 4,551,342;

U.S. Patent No, 4,737,375;

U.S. Patent No. 3,227,562;

U.S. Patent No, 2,567,038;

U.S. Patent No. 1,141,458;

US. Patent No. 2,928,744;

R.F. Cain, *Factors Influencing the Nutritional Quality and Fortification of Fruits and Vegetables* in TECHNOLOGY OF FORTIFICATION OF FOODS, NATIONAL ACADEMY OF SCIENCES, 76-92 (1975);

PHYSICIANS' DESK REFERENCE 854 (1981);

McHard, James A. et al., *A Comparison of Trace Element Contents of Florida and Brazil Orange Juice*, 27 J. AGRIC. FOOD CHEM. 1326, 1327 tbl.I (1979);

Krehl, W.A. & George R. Cowgill, *Vitamin Content of Citrus Products*, 15 FOOD RESEARCH, Jan.-Dec. 1950, 179-191;

Berry, Robert E., *Recent Developments in Analytical Techniques for Citrus Products*, Food Technology, Sept. 1985, 91-94;

Nagy, et al., CITRUS SCIENCE AND TECHNOLOGY, Vol. 1, 177-265, Tbl.5.2 (AVI Publishing Co. 1977);

Anderson, E.E. & Fagerson, I.S., *Ascorbic Acid Contents of Frozen Orange Concentrates as Purchased on Retail Markets*, 44 JOURNAL OF HOME ECONOMICS 277 (1952);

Floyd, Kermit M. & Grayson R. Rogers, *Chemical Composition of Florida Orange Juices and Concentrates*, 17 JOURNAL OF AGRICULTURAL & FOOD CHEMISTRY, Sept.-Oct. 1969, 1119; and

Reussner, G.H. et al., *Effects of Phosphates in Acid-Containing Beverages on Tooth Erosion*, J. DENT. RES., Mar.-Apr. 1975, 365.

**P&G INTERROGATORY NO. 8**

Please identify all prior art which Coca-Cola contends affects the validity of the '330 patent.

**ANSWER NO. 8**

In addition to the General Objections, TCCC objects to this interrogatory because the phrase "the '330 patent" is undefined. TCCC further objects to this interrogatory as unduly

10

broad and burdensome, and not likely to lead to the discovery of admissible information to the extent that it seeks information concerning a patent other than the '847 patent.

**P&G INTERROGATORY NO. 9**

> If Coca-Cola contends that any of the claims of the '847 patent are unenforceable, please state the basis for that contention and identify all documents that refer or relate to that contention.

**ANSWER NO. 9**

In addition to the General Objections, TCCC objects to this interrogatory because it prematurely seeks TCCC's legal contentions in this action.

Subject to and without waiving its specific and General Objections, TCCC states that its investigation with respect to the enforceability of the '847 patent is ongoing. TCCC expects to supplement its answer to this interrogatory with information obtained through discovery and/or further investigation.

**P&G INTERROGATORY NO. 10**

> Please state the basis for Coca-Cola's contention in its "Defenses" to the Compliant that P&G is barred by the doctrines of laches, waiver, or equitable estoppel from asserting infringement of the '847 patent and identify all documents that refer or relate to that contention.

**ANSWER NO. 10**

In addition to the General Objections, TCCC objects to this interrogatory because it prematurely seeks TCCC's legal contentions in this action.

TCCC further objects to this interrogatory because the phrase "waiver" is vague and ambiguous. TCCC did not assert "waiver" as a defense in this action.

Subject to and without waiving its specific and General Objections, TCCC states that the '847 patent issued more than fourteen years ago. TCCC has been selling Minute Maid products

11

fortified with its proprietary blend of calcium since at least 1986. P&G has never accused nor even suggested that TCCC (or The Minute Maid Company) has infringed the '847 patent until a few weeks before filing this lawsuit, even though P&G admits to having been aware in 1988 that TCCC was selling calcium-fortified products. P&G should have been aware of the accused products as early as 1986 because P&G was selling a calcium-fortified product in competition with TCCC. TCCC has significantly expanded its calcium-fortified juice product line from 1986 to the present.

A presumption of laches arises when a patentee delays filing suit for more than six years after the date the patentee knew or should have known of the alleged infringing activity. *A. C. Aukerman Co. v. R. L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed.Cir. 1992) (*en banc*). In this case, P&G admits knowledge of the alleged infringing activity since 1988 — fourteen years before suit was filed. P&G's delay in filing suit was unreasonable and inexcusable. Moreover, TCCC has suffered material prejudice attributable to P&G's delay. That prejudice is of both an evidentiary and economic nature.

P&G is also equitably estopped from pursuing its infringement claim against TCCC. P&G, through misleading conduct, led TCCC to reasonably infer that P&G did not intend to enforce its patent against TCCC. The law specifically recognizes that such misleading conduct may include specific statements, actions, inactions, or silence. TCCC relied upon P&G's misleading conduct and, due to its reliance, will be materially prejudiced if P&G is allowed to proceed with its claim.

TCCC states that, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, TCCC will produce, at a mutually-convenient time, copies of documents and/or things in TCCC's possession, custody, or control that are not otherwise protected from disclosure, such as by

privilege exceptions, and from which further information responsive to this interrogatory may be derived or ascertained, to the extent such documents and/or things exist and are reasonably available to TCCC.

**P&G INTERROGATORY NO. 11**

>Please describe the facts and circumstances surrounding any communications between Coca-Cola and P&G concerning any license or potential license of the '847 patent, including for each such communication, the persons and specific corporate entities involved, the date(s), and the substance of the communication.

**ANSWER NO. 11**

Subject to and without waiving its General Objections, TCCC states that P&G approached TCCC multiple times throughout the 1990's in an effort to license the so-called "calcium citrate malate" technology, which involved the '847 patent. Persons involved in these communications included, *inter alia*, Dr. Ajai Puri and Dennis Braswell from TCCC, and Thomas P. Minnick from P&G. P&G should have information regarding all licensing attempts, as P&G initiated contact with TCCC. While investigations are still being undertaken, TCCC states that P&G initiated such contacts on at least three separate occasions in 1996, 1997, and 1998.

TCCC states that, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, TCCC will produce, at a mutually-convenient time, copies of documents and/or things in TCCC's possession, custody, or control that are not otherwise protected from disclosure, such as by privilege exceptions, and from which information responsive to this interrogatory may be derived or ascertained, to the extent such documents and/or things exist and are reasonably available to TCCC.

## P&G INTERROGATORY NO. 12

> If Coca-Cola contends that any of the products identified in response to Interrogatory No. 1 above do not meet one or more of the limitations of one or more claims of the '847 patent, please state the basis for that contention (including an identification of each element of the claim(s) that is allegedly missing from Coca-Cola product(s)) and identify all documents that refer or relate to that contention.

## ANSWER NO. 12

TCCC objects to this interrogatory as being unduly broad and burdensome and as seeking information that is irrelevant for the reasons asserted in TCCC's Answer to Interrogatory No. 1. Despite the fact that information concerning the products identified in the Answer to Interrogatory No. 1 is readily available to P&G through, *inter alia*, acquisition of the publicly sold products or inspection of the ingredients on the package labels, P&G has made no accusation of infringement for products other than Minute Maid Premium Calcium Original and Minute Maid Premium Calcium Home Squeezed Style. TCCC objects to providing detailed discovery responses on products that are not at issue in this lawsuit.

In addition to the General Objections, TCCC further objects to this interrogatory because it prematurely seeks TCCC's legal contentions in this action. It is especially premature to seek TCCC's noninfringement contentions when P&G identified its infringement contentions for the first time on October 18, 2002. Prior to this, P&G had not even identified the patent claims that were allegedly infringed. TCCC further objects to this interrogatory to the extent that it prematurely seeks TCCC's legal contentions in this action.

Subject to and without waiving its specific and General Objections, TCCC states that the products identified in P&G's Complaint do not meet the citric acid:malic acid ratio limitation of the asserted claims of the '847 patent because such identified accused beverages do not comprise any added citric or malic acid. These claims require that a mixture of both citric acid and malic

14

acid be added to the juice product. This noninfringement defense is dispositive of all asserted claims. TCCC may supplement this response once it has an opportunity to assess P&G's infringement contentions, which were provided less than two weeks ago.

**P&G INTERROGATORY NO. 13**

> Other than matters already set forth in response to interrogatories 6-12 above, if Coca-Cola contends that for any other reason it is not liable for infringement of the '847 patent, please state the basis for that contention and identify all documents that refer or relate to that contention.

**ANSWER NO. 13**

In addition to the General Objections, TCCC further objects to this interrogatory because it prematurely seeks TCCC's legal contentions in this action. Subject to and without waiving its specific and General Objections, TCCC asserts that P&G has not demonstrated compliance with 35 U.S.C. § 287(a) and, thus, is not able to collect damages for any alleged infringement. TCCC expressly reserves the right to supplement this response based upon information learned in discovery, which has yet to begin in earnest.

**P&G INTERROGATORY NO. 14**

> For each opinion Coca-Cola has received concerning the validity, enforceability or infringement of the '847 patent, please state whether the opinion was oral or written, state the date upon which Coca-Cola received the opinion, identify the person(s) who rendered the opinion, identify each person to whom the opinion was delivered, state whether the opinion was directed to the issue of validity, enforceability, or infringement, or to some or all of such issues, identify each person who was informed of the substance or conclusion of the opinion, and identify each person who received a copy of the opinion, if it was written.

**ANSWER NO. 14**

In addition to the General Objections, TCCC objects to this interrogatory to the extent that it calls for information that is protected from discovery by the attorney-client privilege and the work product doctrine. TCCC still further objects to this interrogatory as seeking information that is, in part, irrelevant under the standards of Rule 26(b) of the Federal Rules of Civil Procedure. Subject to and without waiving its specific and General Objections, TCCC will provide to P&G an index of withheld documents at an agreed upon time providing properly discoverable information concerning any opinions of counsel received on the '847 patent.

**P&G INTERROGATORY NO. 15**

> If Coca-Cola has a contention as to what amount of a reasonable royalty would be for Coca-Cola's infringement of any of the claims of the '847 patent, assuming that infringement is found and that those claims are found not invalid and not unenforceable, please state and explain in detail the basis for that contention and identify all documents which refer or relate to that contention.

**ANSWER NO. 15**

In addition to the General Objections, TCCC further objects to this interrogatory because it prematurely seeks TCCC's contentions in this action. Subject to and without waiving its specific and General Objections, TCCC states that it is P&G's burden to assert what it considers to be a reasonable royalty, and P&G has failed to provide any information in this regard.

**P&G INTERROGATORY NO. 16**

> Please identify all products that Coca-Cola contends are acceptable substitutes for the '847 patent sold by Coca-Cola.

16

## ANSWER NO. 16

TCCC objects to this interrogatory because the phrase "acceptable substitutes" is vague and ambiguous. TCCC still further objects to this interrogatory as being nonsensical in that it calls for "acceptable substitutes for the '847 patent." TCCC does not understand the meaning of this interrogatory.

## P&G INTERROGATORY NO. 17

> Please describe in detail any test or investigation that Coca-Cola, or anyone on its behalf, has undertaken to determine whether any of its products marketed within the United States potentially infringed the '847 patent, and identify each person who was involved or assisted with each test or investigation, the product that was at issue, and the results of each test or investigation.

## ANSWER NO. 17

In addition to the General Objections, TCCC objects to this interrogatory to the extent that it calls for information that is protected from discovery by the attorney-client privilege and the work product doctrine. TCCC further objects to this interrogatory to the extent that it seeks information that is protected from discovery by Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure. Still further, TCCC objects to the term "investigation" as being vague and ambiguous.

Subject to and without waiving its specific and General Objections, TCCC incorporates by reference the Answers to Interrogatory Nos. 5, 12, and 14 concerning knowledge and legal analysis of the '847 patent. The specific details of any such legal analysis constitute privileged and/or work product information.

AS TO THE OBJECTIONS

By: /s/ Roger J. Makley
Roger J. Makley
Trial Attorney (Reg. No. 0018702)
COOLIDGE, WALL. WOMSLEY & LOMBARD
33 West First Street, Suite 600
Dayton, Ohio 45402
Telephone: 937-223-8177
Facsimile: 937-223-6705

COUNSEL FOR DEFENDANT AND COUNTERCLAIM-PLAINTIFF
THE COCA-COLA COMPANY

Of Counsel:

Donald R. Dunner, Esq.
Gerald F. Ivey, Esq.
Christopher P. Isaac, Esq.
Robert L. Burns, Esq.
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
1300 1 Street, N.W., Suite 700
Washington, DC 20005-33 15
Telephone:   (202) 408-4000
Facsimile:   (202) 408-4400

Russell S. Bonds, Esq.
Litigation Counsel
Michael V. Kruljac, Esq.
Patent and Technology Counsel
The Coca-Cola Company
P.O. Box 1734
Atlanta, GA 30301
Telephone: (404) 676-3162
Facsimile:  (404) 676-7636

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of DEFENDANT'S ANSWERS AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-17) was served via facsimile and Federal Express, on this 30th day of October 2002, upon the following:

Mark A. Vander Laan  
Dinsmore & Shohl LLP  
1900 Chemed Center  
255 East Fifth Street  
Cincinnati, Ohio 45202-3172  
(513) 977-8200  

William F. Lee  
David B. Bassett  
Vinita Ferrera  
Hale and Dorr LLP  
60 State Street  
Boston, Massachusetts 02109  
(617) 526-6000  

_____  
Christopher P. Isaac