UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
*Western Division*

| | |
|---|---|
| THE PROCTER & GAMBLE COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE COCA-COLA COMPANY, )<br><br>Defendant. ) | CIVIL ACTION NO. C-1-02-393<br><br>Chief Judge Walter Herbert Rice<br>Hon. Sharon Ovington (Magistrate) |

### PROCTER & GAMBLE COMPANY'S MOTION TO STRIKE THE "SUPPLEMENTAL EXPERT REPORT OF DANA KRUEGER" AND TO PRECLUDE ANY ASSOCIATED TESTIMONY

## I.    INTRODUCTION

Plaintiff The Procter & Gamble Company ("P&G") requests that the Court: (1) strike the defendant The Coca-Cola Company's ("Coca-Cola") untimely filed "Supplemental Expert Report of Dana Krueger" (the "Supplemental Krueger Report"); (2) strike all references to the Supplemental Krueger Report in the rebuttal report of Dr. Eric Wilhelmsen, Ph.D.; and (3) preclude Mr. Krueger or any other Coca-Cola expert from testifying about the topics addressed in the Supplemental Krueger Report at any deposition, hearing or trial in this matter. Coca-Cola served the Supplemental Krueger Report on November 24, 2003, the date on which the parties had agreed to exchange *rebuttal* expert reports. However, even a cursory review of the Supplemental Krueger Report reveals that, rather than rebutting the opinions of any of P&G's experts, the Supplemental Krueger Report consists entirely of primary expert opinions that, pursuant to the Court's Scheduling Order, were required to have been provided *more than a month earlier*, on October 20, 2003. By serving the Supplemental Krueger Report more than

one month after the deadline for submitting "primary expert reports" (without legitimate

explanation or excuse), Coca-Cola ignored the Court's deadlines, unfairly sandbagged P&G by

attempting to manipulate the expert report deadline to its own advantage, and prejudiced P&G's

ability to conduct expert discovery. The Court should not countenance Coca-Cola's unilateral

decision to revise the discovery schedule to its own advantage in an ambitious attempt to gain an

unfair advantage in this case. The Court should strike the tardy Supplemental Krueger Report.

## II.    **BACKGROUND**

On August 12, 2003, at the request of the parties, the Court amended the Scheduling

Order in this case to require the parties to identify expert witnesses and submit "primary expert

reports" by October 8, 2003 and to submit "rebuttal expert reports" by November 7, 2003.

Thereafter, Coca-Cola asked P&G to agree to extend the deadline to October 14, 2003 to allow

Coca-Cola to complete the deposition of Dr. Mary Bolich, a former P&G employee, who had

been unavailable prior to that date. On October 13, 2003, Coca-Cola contacted P&G seeking a

second extension of the expert report deadline to October 17, 2003, purportedly to permit it to

analyze the deposition transcript of Dr. Mary Bolich and 33 pages from a laboratory notebook of

Dr. Bolich (formerly Dr. Fox) that P&G had produced prior to her October 10, 2003 deposition.[1]

Thereafter, Coca-Cola again contacted P&G and sought still a third extension of the deadline to

October 20, 2003. P&G assented to each of these requests.

On October 20, 2003, P&G and Coca-Cola exchanged initial expert reports. At that time,

Coca-Cola served a lengthy report from Dana Krueger opining on various tests he performed

directed to the validity of the patent-in-suit.

---

[1]    For ease of reference, these documents and the deposition testimony of Dr. Bolich will hereafter be referred
to as the "Fox materials".

The various extensions of the deadline for serving primary expert reports, all at the request of Coca-Cola, drastically shortened the time the parties had for preparation of rebuttal reports and for conducting expert depositions. Accordingly, P&G sought Coca-Cola's assent to modify the Scheduling Order to afford additional time for completion of expert discovery. Despite repeated letters and telephone calls, Coca-Cola's counsel simply failed to respond to P&G's proposal (in marked contrast to P&G's responses to Coca-Cola's numerous prior requests for modifications to the discovery deadlines). Coca-Cola's silence forced P&G to file an emergency motion for an extension of time to complete expert discovery. The Court granted P&G's motion and set November 19, 2003 as the deadline to exchange expert "rebuttal" reports.

In spite of having initially resisted the modification of the rebuttal report deadline to November 19, Coca-Cola subsequently asked P&G for yet a fourth extension to November 24, 2003 to afford it extra time to complete its rebuttal reports. Out of professional courtesy, P&G again agreed to Coca-Cola's request. On November 24, 2003, Coca-Cola sent P&G two reports: (1) a Rebuttal Expert Report from Dr. Wilhelmsen and (2) the Supplemental Krueger Report.

The Supplemental Krueger Report does not contain any reference to any opinions expressed by any P&G expert. Instead, it reports the results of additional testing that Coca-Cola conducted relating to the validity of the patent-in-suit, including: (1) testing of various juices from oranges; (2) testing of samples that purportedly practiced the teachings of U.S. Patent No. 2,629,665 (the "'665 patent"), one of the prior art references that Coca-Cola contends anticipates the patent-in-suit and which Dr. Wilhelmsen discussed in his primary expert report served on October 20; and (3) testing purportedly duplicating certain analysis described in the Fox materials. The "Supplemental Test Report" attached to the Supplemental Krueger Report states that Mr. Krueger and Dr. Wilhelmsen performed these various tests on or about November 7,

2003. (Supplemental Krueger Report, Supplemental Test Report at 1.) There can be no reasonable dispute that, pursuant to the Court's Scheduling Order, the information and opinions expressed in the Supplemental Krueger Report should have been provided no later than October 20, 2003.[2]

Dr. Wilhelmsen's rebuttal report incorporates an almost identical copy of the "Supplemental Test Report" attached to the Supplemental Krueger Report. (Wilhelmsen Rebuttal Report at 13 & Supplemental Test Report at 1.) In addition, in his rebuttal report, Dr. Wilhelmsen indicates that he may provide testimony at trial in reliance on this Supplemental Test Report.

After receiving and reviewing the Supplemental Krueger Report, P&G promptly wrote to Coca-Cola to request that Coca-Cola voluntarily withdraw the Supplemental Krueger Report because it did not constitute a valid rebuttal report, and because Coca-Cola had failed to seek either assent from P&G or approval of the Court to serve such a report after the primary expert report deadline. In response, Coca-Cola merely asserted that: (1) the Supplemental Krueger Report was necessitated by P&G's production of the Fox materials; and (2) that P&G could file a rebuttal report to the Supplemental Krueger Report, and that, therefore, there was no prejudice to P&G from Coca-Cola's actions. Coca-Cola offered no explanation for its failure to advise P&G earlier of its supposed need for additional time to complete this report or to seek leave from the Court to do so. Because Coca-Cola has refused to withdraw the Supplemental Krueger Report and because the excuses offered by Coca-Cola for its late service of this report are without merit and cannot justify the prejudice to P&G, P&G is forced to file the instant motion.

---

[2]    Coca-Cola implicitly recognized this fact by titling the second report of Mr. Krueger a "supplemental" report rather than a "rebuttal" report.

## III.   ARGUMENT

### A.   Coca-Cola's Delay In Submitting The Supplemental Krueger Report Is A Flagrant Violation Of the Scheduling Order.

Federal Rule of Civil Procedure 26(a)(2) requires parties to disclose expert reports according to a schedule established by the district court. *See* Fed. R. Civ. P. 26(a)(2)(C) (stating that "[t]hese disclosures shall be made at the times and in the sequence directed by the court"). Among other things, these expert reports must contain "a ***complete*** statement of all the opinions to be expressed and the basis and reasons therefore [and] the data of other information considered . . . in forming [the opinion]. *See id.* at 26(a)(2)(B) (emphasis added).

In this case, the Court entered a Scheduling Order that required the parties to simultaneously exchange "primary expert reports." (November 12, 2002 Scheduling Order at ¶ 5, most recently amended on November 11, 2003.) The parties have understood this to require each party to provide an initial expert report for any expert who will offer opinions on an issue on which that party has the burden of proof. Thus, P&G submitted, *inter alia*, an expert report demonstrating that the accused Coca-Cola products infringe the patent-in-suit, an issue on which P&G bears the burden of proof, while Coca-Cola submitted expert reports that purported to demonstrate that the patent-in-suit is invalid, an issue on which Coca-Cola bears the burden of proof. Under the Scheduling Order, as amended, the deadline for exchange of such primary expert reports was October 8, 2003. This deadline was extended, by agreement of the parties, to October 20, 2003. Any primary expert reports served after that date are plainly untimely.

Coca-Cola's lone excuse for submitting the Supplemental Krueger Report more than one month past the initial expert report deadline is that the tardy submission was required because P&G belatedly produced the Fox materials. This excuse fails for several reasons.

- 5 -

*First*, the majority of the Supplemental Krueger Report relates to testing and analysis that is wholly unrelated to the Fox materials. Therefore, Coca-Cola's delay in providing such information cannot be excused based on the production of the Fox materials. Specifically, the Supplemental Krueger Report refers to three sets of testing that were completed subsequent to the deadline for serving primary expert reports. One set involved testing of the juices of several varieties of orange. The second set involved duplication of the products of the '665 patent, a prior art reference that Coca-Cola itself identified in interrogatory responses served approximately two months prior to the Supplemental Krueger Report and discussed in Dr. Wilhelmsen's primary expert report. (Coca-Cola's Second Supplemental Response To P&G's Interrogatories Supplemental Answer No. 6 at 12) (served September 23, 2003); Wilhelmsen Primary Report at 20, 27-28.) The third set purported to duplicate some analyses performed by Dr. Bolich and reported in the handful of laboratory notebook pages produced prior to her deposition. Clearly, Coca-Cola could have completed the first two sets of testing well in advance of the primary expert report deadline. Accordingly, regardless of the merits of Coca-Cola's position with respect to the last set of tests, P&G's production of the Fox materials can in no way explain or excuse Coca-Cola's delay in performing the other testing described in the Supplemental Krueger Report.

*Second*, the sole stated reason for the modification of the initial expert report deadline from October 8 to October 20 was precisely to permit Coca-Cola to review the Fox materials. Had Coca-Cola needed additional time to complete its review of these materials, it should have sought such time prior to October 20, rather than lulling P&G into serving primary expert reports in a timely fashion, while unilaterally granting itself additional time to complete such reports.

*Third*, the Supplemental Krueger Report indicates that Mr. Krueger and Dr. Wilhelmsen conducted the tests that are the subject of the Supplemental Krueger Report on November 7, 2003 – approximately *four weeks* after Coca-Cola received the documents which it now claims it needed in order to conduct such testing. To date, Coca-Cola has not offered any explanation for this delay. Even if Coca-Cola merely needed more time to review the Fox materials (that it received on or before October 11), it certainly did not need to wait a month before even beginning such testing.

Coca-Cola's actions have blatantly ignored Court's Scheduling Order. The Federal Circuit has affirmed a district court's decision to strike a supplemental expert report that included information that, pursuant to the district court's scheduling order, should have been submitted before the primary expert report deadline. *See Trilogy Comm. Inc. v. Times Fiber Comm., Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997) (stating that Fed. R. Civ. P. 16(b) allows courts to control pretrial discovery and prohibit parties from introducing evidence in violation thereof and stating that "[a]dherence to reasonable court deadlines in critical to restoring integrity in court proceedings. We will not lightly disturb a court's enforcement of those deadlines"). The Sixth Circuit has likewise endorsed this approach. *See Pride v. Bic Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Trilogy* with approval and stating that district courts can exercise discretion to exclude "untimely disclosed" expert testimony). Permitting the Supplemental Krueger Report and any references thereto or testimony based thereon to stand would "not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders". *Trilogy* 109 F.3d at 745. Rather, failing to strike the Supplemental Krueger Report simply would reward Coca-Cola's illegitimate litigation tactics.

**B.    Coca-Cola's Unilateral Submission Of The Krueger Report Prejudices P&G.**

Contrary to Coca-Cola's assertion, P&G is prejudiced by Coca-Cola's willful violation of the Scheduling Order in this case. Coca-Cola contends that P&G's ability to serve a rebuttal report to the Supplemental Krueger Report obviates any prejudice resulting from Coca-Cola's improper actions. There are at least three fundamental problems with this reasoning. First, the time for serving rebuttal reports has passed, such that P&G cannot simply submit a rebuttal report. Second, it places P&G in the untenable position of deposing Coca-Cola's experts before it has had an opportunity to thoroughly analyze their reports. Finally, and perhaps most importantly, Coca-Cola's unilateral decision to submit the Supplemental Krueger Report approximately one month past the deadline means that P&G would have to prepare a rebuttal report in the midst of taking and defending numerous expert depositions. Doing this would impose an unfair burden not only on P&G in terms of time and expense, but on its experts as well.

Indeed, under Coca-Coca's logic, P&G could have waited until November 24, 2003 to submit the report of its expert, Robert A. Baker, concerning Coca-Cola's infringement of the patent-in-suit. So long as Coca-Cola could rebut Mr. Baker's report by December 23, it could not claim prejudice, even though the Court-ordered deadline for the ***completion*** of expert depositions is the same day. There is little doubt that Coca-Cola would have rightfully balked at this arrangement.

There is no serious dispute that Coca-Cola's submission of the Supplemental Krueger Report was untimely and in violation of the Scheduling Order entered by the Court. At the end of the day, Coca-Cola cannot provide any adequate explanation for its actions. In the absence of a plausible excuse, Coca-Cola offers as its "remedy" a suggestion that P&G violate the Court's Scheduling Order as well. Not only is this improper, but would unfairly force P&G to spend

- 8 -

significant – and unnecessary – time and expense on a rebuttal expert report when the Court's Scheduling Order mandates that P&G be spending its time on depositions.

## III.    Conclusion

For the aforementioned reasons, P&G respectfully requests that the Court enter an order:

1.    Striking the Supplemental Krueger Report and precluding any testimony on the contents thereof.

2.    Striking those portions of Dr. Wilhelmsen's rebuttal report that incorporate the Supplemental Krueger Report any precluding any testimony on the contents thereof.

3.    If the Court declines to strike the above-referenced opinions and chooses to permit testimony by Coca-Cola's experts based thereon, P&G requests that the Court grant P&G two weeks from the date of such order to submit an expert report in rebuttal to the opinions and information expressed in the Supplemental Krueger Report.

4.    In either event, awarding P&G its costs and expenses incurred in bringing this motion.

Respectfully submitted,

THE PROCTER & GAMBLE COMPANY

By its attorneys,

/s/ Mark A. Vander Laan
Mark A. Vander Laan
Trial Attorney (Reg. No. 0013297)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH  45202-3172
(513) 977-8200

William F. Lee (admitted *pro hac vice*)
David B. Bassett (admitted *pro hac vice*)
Vinita Ferrera (admitted *pro hac vice*)
Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109

Dated:  December 11, 2003

## LOCAL RULE 7.3(b) CERTIFICATION

I, Vinita Ferrera, Esq., counsel for the plaintiff The Procter & Gamble Company in this case, hereby certify that I have conferred with Robert L. Burns, Esq., counsel for the defendant The Coca-Cola Company, in an attempt to narrow the issues raised by this motion and that no resolution has been reached.

/s/  Vinita Ferrera
Vinita Ferrera

BOSTON 1795208v1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served electronically by the Court and served by Facsimile this 11th day of December, 2003 on the following:

Roger J. Makley, Esq.
Coolidge, Wall, Womsley & Lombard Co., L.P.A.
33 West First Street, Suite 600
Dayton, OH 45402

Robert L. Burns, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675

/s/ Mark A. Vander Laan

BOSTON 1795208v1