## EXHIBIT 15 TABLE OF CONTENTS

**Exhibit 15A**: "P&G's Amendment and Response dated Dec. 20, 1991," pp. 1-13;

**Exhibit 15B**: "P&G's Amendment and Response dated Dec. 20, 1991," pp. 14-23 and Appendix of "New Claims" pp. 1-3

# Exhibit 15A



# TER MEER - MÜLLER - STEINMEISTER & PARTNER PATENTANWÄLTE

EUROPEAN PATENT ATTORNEYS

Dipl.-Chem. Dr. Nicolaus ter Meer
Dipl.-Ing. Frithjof E. Müller
Dipl.-Ing. Helmut Steinmeister
Manfred Wiebusch
Dipl.-Phys. Peter Umer

ter Meer - Müller - Steinmeister · Mauerkircherstr. 45, D-8000 München 80

**European Patent Office**
Erhardtstraße 27

D-8000 München 2

Mauerkircherstrasse 45
D-8000 MÜNCHEN 80

Telefon: (089) 98 44 37
Telex: 5-24 869 trio d
Telefax: (089) 98 79 52

European Patent 0 244 903 (Application No. 87 200 775.2)          tM/ri
Patent Owner: The Procter & Gamble Company                        20.12.1991
Opponents: Niederrhein-Gold Tersteegen GmbH & Co. KG, Deutsche Granini,
Peter Eckes KGmbH
Case: 3528

This is in response to the Communication dated June 18, 1991, and the opposition statements of the opponents Niederrhein-Gold Tersteegen GmbH & Co. KG, Deutsche Granini and Peter Eckes KGmbH.

**A.   Requests**

The requests of July 24, 1991, are amended to read that it is herewith requested to

1. Reject the oppositions filed by

   I.   Niederrhein-Gold Tersteegen GmbH & Co. KG, Moers (DE), dated April 10, 1991;
   II.  Deutsche Granini, Bielefeld (DE), dated April 26, 1991, and
   III. Peter Eckes KGmbH, Nieder-Olm (DE), dated April 26, 1991,

   and to maintain the patent on the basis of the new claims 1 to 19 herewith enclosed;

2. as an auxiliary motion to provide for oral proceedings in accordance with Article 116 EPC.

The new claims 1 to 19 herewith submitted have been modified to provide further distinction over the prior art cited and specifically US-A-2 325 360.

The modification comprises a recitation of the basic components already disclosed in

Büro Bielefeld: Artur-Ladebeck-Str. 51, D-4800 BIELEFELD 1
Telefon: (0521) 15 00 36   Telex: 9-32 777 trio d   Telefax: (0521) 15 00 38

**TER MEER - MÜLLER - STEINMEISTER & PARTNER**                      36
European Patent 0 244 903 (Application No. 87 200 775.2)                    20.12.1991

this prior art document in the preamble of claim 1 and a disclaimer excluding beverages and concentrates comprising 0.3 vol. or more of $CO_2$.

This disclaimer is based on the lowest level of carbonation disclosed in US-A-2 325 360 in column 1, line 50. Furtheron, reference is made to the fact that the patent attacked clearly points out that carbonation of the juice is undesired and should be removed so that there is no residual carbonation (c.f. page 4, lines 6 to 8, page 6, lines 61 and 62 and page 8, lines 5 and 6 of the European Patent as published). Such undesirable carbonation of the juice can be prevented by manufacturing the products by the method claimed.

Claim 14 has been modified by directing it to the manufacture of the products according to claims 1 to 13 and subclaims 9 to 12 have been revised with respect to their dependencies from preceding claims.

Therefore, the new claims herewith filed are based upon the original disclosure and therefore in accordance with Article 123 (2) EPC.

B.  The Reasons Substantiating the above Requests

1.  Problem

In the introductory part of the description of the patent it is pointed out that before the patent under discussion there was a desire to provide calcium to the human body not only by milk or milk products, which are not generally accepted, but by fruit juice beverages. However, the addition of calcium to fruit juice beverages or juice concentrates leads to problems, such as the generation of undesirable cooked/browned-off flavours or the stripping of desirable aroma and flavour compounds from the fruit juice product.

Therefore, the **problem** underlying the present invention is the overcoming of significant difficulties which are caused by the direct addition of calcium sources to fruit juices or fruit juice concentrates, i.e. the solubilization of substantial levels of calcium in the juice or juice concentrate, while avoiding the generation of cooked/browned-off flavours or the inclusion of undesirable species, such as chloride ions, the removal of carbon dioxide generated by the reaction of calcium carbonate with the acid, so that an undesirable carbonation of the juice does not occur, and the provision of an absorbability/bioavailability of calcium from such a fruit juice product which is at least as good as that of calcium from milk.

TER MEER - MÜLLER - STEINMEISTER & PARTNER

European Patent 0 244 903 (Application No. 87 200 775.2)                    20.12.1991

## 2. Solution

The above problem is solved by the calcium-supplemented single-strength fruit juice beverage, the calcium-supplemented fruit juice concentrate according to claims 1 and 5 and the method for preparing a calcium supplemented fruit juice product according to claim 14.

The basic idea of the invention is the presence in a fruit juice product of specific amounts of solubilized calcium, the specific acid component comprising a mixture of citric acid and malic acid, fruit juice and sugar and the absence of chloride ions and added protein.

The calcium present in an amount of 0.05 to 0.26 % needs to be "solubilized", i.e., to be dissolved, in the single-strength fruit juice beverage or fruit juice concentrate. Accordingly, the amount of calcium included in the beverages and concentrates of the present invention is referred to in terms of "solubilized calcium, i.e. the amount of calcium ion dissolved in the beverage or concentrate" (page 4, lines 49 to 52 of the patent specification).

In contrast to the most thermodynamically stable and therefore also the most insoluble calcium citrate species which form when a calcium source is directly added to orange juice, the solubilized calcium present according to the invention is soluble in the fruit juice product and in combination with the acid component provides for the unexpected results obtained, i.e. avoiding the generation of cooked / browned off-flavors and the unexpectedly high absorbability/bioavailability of calcium from this fruit juice product.

The acid component present in an amount of 0.04 to 4 % by weight comprises a "mixture of citric acid and malic acid in a weight ratio of citric acid : malic acid of from about 5 : 95 to 90 : 10".

A further important subject matter of the patent is a method for preparing a calcium-supplemented fruit juice product by means of a specific **premix process** which comprises the formation of a premix by reacting calcium carbonate with a mixture of citric and malic acid dissolved in a very small amount of water, which causes the formation of the above "solubilized calcium", i.e. highly soluble calcium citrate and calcium malic species, which, being basically unstable, are stabilized by a small amount of fruit juice material.

This premix process overcomes the generation of undesirable cooked/browned off-flavors or the imparting of the juice with undesirable brackishness and prevents or retards the precipitation of insoluble calcium salts, which problems are encountered

TER MEER - MÜLLER - STEINMEISTER & PARTNER — 4 —

20.12.1991

European Patent 0 244 903 (Application No. 87 200 775.2)

when directly adding calcium sources, such as calcium carbonate or calcium hydroxide, to orange juice or when adding calcium salts such as calcium chloride at high levels to such fruit juice.

3. **The Claims**

3.1. The **new claims herewith submitted** comprise the following independent product claims 1 and 5 and method claim 14:

1. A calcium-supplemented single-strength fruit juice beverage comprising a cation component and an acid component **characterized in that** it is substantially free of added protein and comprises:
a. from 0.05 to 0.26 % by weight solubilized calcium as the cation component
b. from 0.4 to 4 % by weight of a mixture of citric acid and malic acid in a weight ratio of citric acid:malic acid of from about 5:95 to 90:10 as the acid component;
c. at least 45% fruit juice;
d. a sugar content from 2 to 16° Brix; and
e. no more than 0.07 % by weight chloride ion,
with the exclusion of beverages comprising 0.3 vol. or more of $CO_2$.

5. A calcium-supplemented fruit juice concentrate **characterized in that** it is substantially free of added protein and comprises:
a. from 0.15 to 1.30 % by weight solubilized calcium as the cation component
b. from 1.2 to 20 % by weight of a mixture of citric acid and malic acid in a weight ratio of citric acid:malic acid of from about 5:95 to 90:10 as the acid component;
c. concentrated fruit juice; and
d. a sugar content from 6 to 75° Brix, the content of the concentrated fruit juice being such that reconstitution with water yields a fruit beverage comprising at least 45% fruit juice.

14. A method for preparing a calcium-supplemented fruit juice product according to anyone of claims 1 to 13, **characterized in that** it comprises the steps of:

   a. forming an at least meta-stable aqueous premix solution of solubilized calcium from water, an acid component comprising from 0 to 90% by weight citric acid and from 10 to 100% by weight malic acid, and calcium source selected from the group consisting of

TER MEER - MÜLLER - STEINMEISTER & PARTNER

European Patent 0 244 903 (Application No. 87 200 775.2)                    20.12.1991

calcium carbonate, calcium oxide, and calcium hydroxide; and

b. combining the premix solution of solubilized calcium with fruit juice material comprising concentrated fruit juice having a sugar content of from 20 to 80°Brix, to provide a calcium-supplemented fruit juice product having: (1) at least 0.05% solubilized calcium; (2) at least 45% fruit juice; and (3) a sugar content of from 2 to 75°Brix.

Subclaims 2 to 4, 6 to 13 and 15 to 19 cover preferred embodiments of the subject matter of said independent claims.

### 4. The Prior Art Cited

The opponents object the novelty and the inventive step of the subject matter claimed making reference to the following documents:

(1) EP-B-0 117 653 (Nakel)
(2) GB-A-1 440 161 (Nishiyama)
(3) US-A-3 114 641 (Sperti)
(4) US-A-3 657 424 (Aktins)
(5) JP-A-54-8767 (Kaji)
(6) JP-A-56-97248 (Kawai)
(7) Chemical Abstracts, No. 23, (1979), 90:185216z (= (5))
(8) EP-A-0 227 174 (Nakel)
(9) US-A-2 325 360 (Ayers)
(10) RSK-Werte, Verlag Flüssiges Obst GmbH (1987), 43-51
(11) GB-A-2 095 530 (De Rham)

Document (1) as cited by the opponent Deutsche Granini is as such not a pre-published document being published only on July 22, 1987. However, it is assumed that the opposing party wanted to make reference to EP-A-0 117 653. However, for the sake of simplicity in the following reference is made to the document as cited, i.e. EP-B-0 117 653.

Document (7) comprises the Chemical Abstract of Document (5).

Document (8), EP-A-0 227 174, has been published on July 1, 1987, and therefore after the filing date of the European Patent 0 244 903 and is relevant therefore only as far as novelty is concerned.

Document (10) is not a prior art document being published according to the statement of the opponent Peter Eckes KGmbH in 1987, i.e. after the priority date of the

**TER MEER - MÜLLER - STEINMEISTER & PARTNER**

European Patent 0 244 903 (Application No. 87 200 775.2)                                    20.12.1991

present case.

**Documents (3), (4), (9) and (11)** have already been cited during the examination proceedings or are being discussed in the introductory part of the description, respectively.

It is herewith respectfully stated that the subject matter claimed is both novel and based upon an inventive step over the disclosure of the prior art references cited.

**5. Insufficient Disclosure**

The opponent **Niederrhein-Gold Tersteegen GmbH & Co. KG** has argued that the European Patent attacked does not disclose the invention in a manner sufficiently clear and complete for it to be carried out by a person skilled in the art.

The arguing of the opponent Niederrhein-Gold Tersteegen GmbH & Co. KG is somewhat unclear not only with respect to the grounds for opposition according to Article 100 (b). With respect to this it is stated that it is obvious for the man of the art that the "values provided are for example not applicable to apple juice, currant-juice, multivitamin juices and so on", so that claim 1 does not disclose the invention in a manner sufficiently clear (?). This opponent furtheron argues that also the subject matter of claims 11 and 12 cannot be carried out by the man of the art.

It is herewith respectfully submitted that the independent product claims 1 to 5 and the method claim 14 clearly provide the man of the art with all the necessary information to obtain a calcium-supplemented single-strength fruit juice beverage and a calcium-supplemented fruit juice concentrate solving the above problem, i.e. comprising the required content of calcium without having the disadvantages of the prior art products of this type. The subclaims attacked by this opponent are dependent from preceding independent claims and cover preferred embodiments of the subject matter claimed and therefore are sufficiently clear as well.

With respect to the question raised by the opponent **Peter Eckes KG mbH** on page 5 of their statement as to how to distinguish a 40% fruit juice solution from a 45% fruit juice solution, is not posed correctly, because the teaching of the present invention is not the making use of a solution of fruit juice containing either 40% fruit juice or 45% fruit juice but the provision of a product comprising fruit juice in the amount defined, which in the single-strength fruit juice beverage is at least 45% and in the fruit juice concentrate is such, that after the constitution with water a fruit juice beverage comprising at least 45% fruit juice is obtained. Furtheron, the patent provides a definition of the term "fruit juice" under the heading B. Definitions and furtheron states in page 7, lines 30 to 45 as to how fruit juice and fruit juice concentrates are being



**TER MEER - MÜLLER - STEINMEISTER & PARTNER**
European Patent 0 244 903 (Application No. 87 200 775.2)                    20.12.1991

made.

Therefore, the European Patent 0 244 903 clearly teaches the man of the art to use at least 45% fruit juice in the manufacture of a calcium-supplemented single-strength fruit juice beverage, which should enable the man of the art to carry out the invention. It is clear that when making use of a fruit juice concentrate, an amount of water has to be added corresponding to the amount of water removed from the fruit juice during the manufacture of the concentrate. Therefore, there should be no doubt that the European Patent under discussion clearly discloses the invention in a manner sufficiently clear and complete for it to be carried out by a person skilled in the art, so that the ground for opposition according to Article 100 (b) does not apply.

### 6. Novelty

#### 6.1. EP-B-0 117 653 (1) (Nakel)

This Document relates to beverage compositions, in particular carbonated soft drinks (page 2, line 1), which are already excluded by means of the disclaimer, because carbonated beverages as disclosed in this document contain 1.0 to 4.5 vol. of carbon dioxide (c.f. page 7, lines 20 to 23).

Claim 1 is directed to a **beverage composition suitable for preparing a liquid beverage**, comprising a flavor component, a cation component and an edible acid component (c.f. claim 1). On page 7 under the heading "E. Beverage Preparation" reference is made as to how beverages are prepared from the beverage compositions disclosed. It is stated here that the beverage compositions can be in the form of **dry tablets or powders** which can be added to water to form a liquid beverage or said beverage compositions can already be in a **liquid form**. The actual beverage obviously is made by dissolving or diluting the beverage composition such as by forming a beverage concentrate containing from 40 to 70% by weight of water, which concentrate is furtheron diluted (c.f. page 7, lines 9 to 19). Therefore, this document clearly distinguishes between **beverage compositions** and the **liquid beverages** prepared therefrom, a fact, which is already reflected in the first line of claim 1 of this reference.

One of the major components of the beverage composition is the **flavor component**, which can be derived from natural sources, such as fruit juices and flavor oils or can be synthetically prepared (page 4, lines 40 and 41). It is stated in page 4, lines 49 to 51 that fruit juices can be used "in the flavor component". Claim 13 and the first three lines of page 5 teach that in case fruit juices are used, the flavor component can comprise from 5 to 50 % by weight of the beverage composition. However, this relates to the beverage **composition** and not to the beverage, because the beverage compositions are added to water to form a liquid beverage (page 7, lines 2 and 3). Even for the

TER MEER - MÜLLER - STEINMEISTER & PARTNER

European Patent 0 244 903 (Application No. 87 200 775.2)

20.12.1991

manufacture of a carbonated beverage, the beverage concentrate contains 40 to 70% of water (page 7, lines 9 and 10), which concentrate is mixed with appropriate quantity of water to form the final single-strength liquid beverage using a weight ratio of water:sirup of at least 1:1 and preferably from 3:1 to 5:1 (page 7, lines 13 and 14). Therefore, even in case the flavour component of the beverage composition referred to in claim 13 comprises fruit juice in an amount of from 5 to 50% by weight of the composition, the final single-strength beverage comprises at best half of this amount by being mixed with water in a ratio of at least 1:1.

Therefore, this document **does not disclose** a calcium-supplemented single-strength fruit juice beverage comprising **at least 45 % fruit juice**, because the fruit juice composition disclosed is in any case diluted with water to a much lower fruit juice content, which in the actual beverage is much lower than the lower limit of the present invention, i.e. 5 to 10 % by weight in case of a carbonated beverage as referred to in claim 17. Since also all the examples on file do not make reference to any beverage having a fruit juice content even coming close to the lower limit defined in the present invention, the subject matter claimed is novel over this document.

The specific embodiments of this document do not fall within the scope of the claims herewith submitted, because they comprise **carbonated** beverages comprising more than 0.3 volumes of $CO_2$ and **less than 0.05 %** by weight of solubilized calcium, in that the highest level of calcium that can be and has been calculated from the examples by the opponent Deutsche Granini is 0.046 % by weight (embodiment 4 of this reference), which is substantially lower than the lower limit defined in the present invention.

Furtheron, there is no refernce to a calcium-supplemented fruit juice concentrate in this document.

Therefore, the subject matter claimed clearly comprises the necessary novelty over this document.

### 6.2. GB-A-1 440 161 (2) (Nishiyama)

This document describes a fruit juice composition and a milk drink containing it. There is **no disclosure** in this document as to the fact **that the fruit juice composition comprises calcium**. The milk drink disclosed therein differs from the subject matter of the present invention that it certainly is not substantially free of added protein.

### 6.3. US-A-3 114 641 (3) (Sperti)

This document covers a citrus juice product comprising sugar, citric acid, a buffering agent and a small quantity of a trace mixture consisting of in admixture sodium succinate, tartaric acid and potassium acetate. There is **no reference** whatsoever to the presence of "**solubilized calcium**". It is only stated in claim 3 that an orange juice product designed for extension by the addition of water as an extender may additionally contain 0.06 % of calcium chloride, which is well below the lower limit of the amount of calcium for the calcium-supplemented fruit juice concentrate of the present invention to be compared with this product, which must comprise 0.15 to 1.30 % by weight of solubilized calcium. Therefore, already on the basis of this fact the subject matter claimed comprises the necessary novelty over this document.

### 6.4. US-A-3 657 424 (4) (Aktins)

This document discloses a fortified citrus juice comprising natural citrus juice and besides further components "about **0-0.04 weight % added calcium chloride**". Therefore, this document cannot be detrimental to the novelty of the subject matter as well.

### 6.5. JP-A-54 8767 (5) (Kaji)

This document - herein discussed in the English translation submitted by the opponent Niederrhein-Gold Tersteegen GmbH & Co. KG - describes a calcium enriched soft-drink containing calcium salts of food organic acids, such as calcium citrate, calcium malate, calcium lactate, calcium tartrate, etc. (c.f. the claim). There is **no disclosure** in this document as to the presence **of the solubilized calcium**, the defined acid component and the fruit juice in the amounts defined in the claims of the European Patent 0 244 903.

### 6.6. JP-A-56-97248 (6) (Kawai)

This document - which is considered in the form of the German translation provided by the opponent Niederrhein-Gold Tersteegen GmbH & Co. KG - makes reference to refreshing drinks comprising added calcium. The rather unclear translation of this document discloses in page 3 a mixture comprising 3% of a mixture of calcium citrate, calcium malate and calcium lactate, 3% sugar, 4% natural fruit juice (orange juice:lemon juice = 3 : 1) and 90% of water. Therefore, this document **does not disclose** the important feature of the present invention, i.e. that the fruit juice beverage must comprise at **least 45% fruit juice**.

TER MEER - MÜLLER - STEINMEISTER & PARTNER                                    20.12.1991

European Patent 0 244 903 (Application No. 87 200 775.2)

### 6.7. Chemical Abstracts Ref. 185216z (7) (= (5))

This document comprises the Chemical Abstracts Referate of Document (5) and is not detrimental to the novelty of the subject matter claimed.

### 6.8. EP-A-0 227 174 (8) (Nakel)

This document, which is relevant only as far as novelty is concerned, discloses a beverage which is clearly defined to **not contain more than 40% fruit juice** by weight on a single-strength basis (claim 1, feature d).

Even when the opponent Peter Eckes KGmbH argues that this clear definition also includes the use of higher percentages of fruit juice, this cannot be accepted, because even the passage in page 7, lines 41 to 43 it is clearly defined:

"When fruit juices are used, the flavor component can comprise, on a single-strength basis, up to 40% fruit juice by weight of the beverage..."

The word "can" does not mean that the fruit juice may be used in a higher percentage, but that the flavor component can comprise the fruit juice and this up to an upper limit of 40% by weight. This is substantiated by the clear disclosure of claims 1 and 8 and the description in page 3, lines 29 to 40 of the description, where fruit juice contents of more than 40% are clearly excluded.

Therefore, the subject matter claimed comprises the necessary novelty over this reference and not only "bogus novelty" as the opponent Peter Eckes KGmbH alleges.

### 6.9. US-A-2 325 360 (9) (Ayers)

This document covers a method for treating an acid-containing potable fruit juice by deaerating the juice, heating the deaerated juice to a pasteurizing temperature, adding a carbonate to the hot juice in a container in such a small quantity that when the container is sealed and the juice cooled, the carbon dioxide content of the juice subsequently exposed under ordinary room conditions will substantially be the same as the gaseous content of the original juice, and sealing the treated hot juice in the container (claim 1).

It is clearly disclosed in the specific embodiments of this document that the lowest level of carbonization to be obtained is 0.3 vol. $CO_2$, i.e. an embodiment which has been excluded by means of the disclaimer introduced into claims 1 and 5 herewith submitted.


While there is reference made to using calcium carbonate in combination with citric acid and the fact that malic acid may be used "in place" of the preferred citric acid (page 1, righthand column, lines 34 and 35), there is **no disclosure** in this document as to the specific amount and weight ratio **of the acid component** used which according to the patent under attack is a mixture of citric acid and malic acid.

This reference as well does not describe any fruit-juice concentrate at all.

Therefore, also this document cannot be detrimental to the novelty of the subject matter claimed.

### 6.10. RSK-Werte, Verlag Flüssiges Obst GmbH (1987) (10)

This document has been published only in 1987 and therefore after the priority date of the European Patent 0 244 903 and therefore cannot be a bar to the novelty.

### 6.11. UK-A-2 095 530 (11) (De Rham)

This document discloses a process for the production of an acid beverage **enriched in protein** (c.f. claim 1), so that it cannot disclose the subject matter of the present European Patent, which covers a product substantially free of added protein.

### 6.12. Result

From the above discussion it is clear that none of the references cited discloses the subject matter of the claims of the European Patent as granted or the subject matter of the claims according to the auxiliary request so that in contrast to the allegations of the opponents Niederrhein-Gold Tersteegen GmbH & Co. KG and Peter Eckes KGmbH the subject matter claimed clearly **comprises the necessary novelty**.

### 7. Inventive Step

The references cited by the opposing parties as well do not make obvious the subject matter claimed, so that it is also based upon an inventive step.

As already pointed out above, the problem underlying the present invention is solved by a **combination of features** comprising the presence of a specific amount of solubilized calcium, a specific amount of an acid component comprising a specific mixture of citric acid and malic acid, a fruit juice content of at least 45% in the single-strength fruit juice beverage, a specific sugar content and a maximum amount of chloride ions and the fact that the products are substantially free of added protein.

This combination of features defines a product which has a nutritionally supplemented content of calcium comparable to that of milk and which has at the same time desirable taste qualities by being free of undesirable cooked/browned-off flavors and undesirable brackishness and shows an absorbability and bioavailability of calcium approaching or exceeding that of milk.

It is respectfully submitted that none of the references cited leads the man of the art to the solution of the above problem by the features of the present claims on file.

### 7.1. EP-B-0 117 653 (1) (Nakel)

It is disclosed in the introductory part of this document that in the manufacture of beverage compositions and particular carbonated soft drinks it is necessary to provide the beverage with "body", i.e. fullness, roundness and richness of the flavor impression generated. Therefore, the problem to be solved according to this prior art document is the provision of a beverage, especially a **carbonated beverage**, which has improved overall flavor impression, sweetness intensity, increased body even at decreased sugar level or with no sugar, a controllable sourness and stability against precipitation of salts (page 2, lines 9 to 22).

This problem is solved according to this Document (1) which primarily deals with carbonated beverage technology

> "...through the use of **mixtures of certain cations** (calcium, magnesium, potassium) in combination with certain edible acids (citric, malic, phosphoric acid)." (page 2, lines 32 to 34) (enhancement added).

It is furtheron pointed out in page 4, lines 3 to 6:

> "The cation component which contains a **mixture of key cations** (calcium and potassium or preferably calcium, magnesium and potassium) in combination with the acid component which contains key edible acids (citric acid, malic acid / succinic acid and phosphoric acid), provide improved overall flavor impressions in liquid beverages, especially carbonated soft drinks" (enhancement added).

Therefore, it is clear that the cation component does not only contain calcium but must contain a mixture of the above key cations, i.e. calcium and potassium or calcium, magnesium and potassium.

The effective amount of the cation component is defined in this Document (1) by the following formula:

**TER MEER - MÜLLER - STEINMEISTER & PARTNER**

European Patent 0 244 903 (Application No. 87 200 775.2)                                  20.12.1991

---

$$(8.0 \times Ca) + (7.1 \times Mg) + (7.0 \times K) + (3.0 \times Ca \times Mg) + (12.9 \times Ca \times K) + (11.5 \times Mg \times K) + (20.3 \times Ca \times Mg \times K) = B$$

Since B is defined to have a value of from about 10.0 to about 11.3, this formula clearly excludes the possibility that calcium is used alone as the cation component.

The use of the mixture of the cations defined in combination with the edible acid component defined in this document is critical in that it is stated in page 4, lines 15 to 21 the following:

> "By using a selected **mixture of these cations** in conjunction with a selected mixture of edible acids the effect of the individual off-notes is surprisingly attenuated even when high levels of cations such as potassium are used. Moreover, solubility problems occasioned by the formation of precipitates when some of the cations (especially calcium) are added to certain of the acids (especially citric acid) are unexpectedly minimized. By avoiding such solubility problems, the liquid beverage compositions of the present invention not only have improved flavor (e.g. no chalky note due to insoluble calcium salts), but can also be formulated into storage-stable concentrate and syrup forms." (enhancement added)

Therefore, Document (1) clearly teaches the man of the art away from the subject matter claimed, i.e. the single use of solubilized calcium and to the use of a combination of specific cations, i.e. calcium and potassium or calcium, magnesium and potassium. Therefore, this document cannot lead the man of the art to the subject matter claimed. This fact is furtheron substantiated by Figures 1, 3 and 4 of this document and by the information provided in page 5, lines 56 to 64 stating that the combination of both the cations and the acids selected **is necessary** to provide for the desired effect. Also in view of the fact that all of the Examples and the ternary diagrams provided in Document (1) direct the man of the art to beverages containing calcium, magnesium and potassium as the cation component and citric, malic and phosphoric acid as the edible acid component, considerable departure from the disclosure of this document would be necessary to arrive at the subject matter of the European Patent 0 244 903.

As noted by the opponent Deutsche Granini, this document does make a **general disclosure** that, when fruit juices are used, the flavour component can comprise from 5-50 % by weight of the beverage composition. However, what this opponent fails to point out is that this reference is primarily directed at **carbonated beverages** which contain **no or minimal** levels (i.e. from 5-10%) of juice. This is particularly shown by the specific embodiments (1-9) of this Document (1) that involve carbonated beverages containing **no juice**. Accordingly, Granini's effort to tie this general disclosure of juice content to other features of the technology referred to in this document, particularly those taught for the specific embodiments, is improper.