# Exhibit 17

Supplementation of Reasons for Trial Request

Job No.: 1074-89475
Translated from Japanese by the Ralph McElroy Translation Company
910 West Avenue, Austin, Texas 78701 USA

Supplementation of Reasons for Trial Request

January 31, 1996

To: Chief Examiner of Patent Office

1. Indication of the case
      Trial No. Hei 6[1994]-11568

2. Title of the invention
      Fruit juice drink and juice concentrate supplemented with calcium

3. Trial requester
      The Procter and Gamble Company

4. Agent (Post No. 100)
         Kazuo Sato, patent attorney (6428) [seal]
         Address: Kyowa Patent Legal Service
                3-2-3 Marunouchi, Chiyoda-ku, Tokyo
         Phone: Tokyo (3211)2321


[seal] Received by Makiguchi, Patent Application Division, Patent Office, February 1, 1996


5. Reasons for request

(1) The present requester filed a Supplementation of Reasons for Trial Request on January 13, 1995, in which it is pointed out that this patent application is fully patentable on the basis of the description of its specification, and it cannot be reached easily from Exhibit No. 1 as asserted by the examiner of the preceding trial in the column of Notes of the duplicate of the Decision on Rejection. However, in the following, we would like to further explain in more detail why the invention of this patent application cannot be reached easily on the basis of said Exhibit No. 1.

(2) The invention of this patent application provides calcium by means of a fruit juice drink instead of milk or a milk product. However, as pointed out on p. 11 of the specification of this

patent application, when calcium is added to a fruit juice drink or fruit juice concentrate, undesired changes take place, such as a brown color and a strange odor, while the desired aroma and flavor compounds are stripped from the fruit juice products. This is a problem.

The purpose of this invention is to solve the aforementioned problems of the conventional methods by providing a [type of fruit juice drink] characterized by the fact that it provides calcium with good absorptivity/biological applicability, while not generating the aforementioned strange odor, and it can remove carbon dioxide generated in the reaction between calcium and acids.

The aforementioned purpose can be realized by means of a type of fruit juice drink characterized by the fact that it is virtually free of added protein, and it contains a prescribed amount of soluble calcium, a prescribed amount of acid component made of a prescribed mixture of citric acid and malic acid, at least 45 wt% of a fruit juice component, a prescribed amount of sugar component, and less than 0.07% chlorine ions.

As described on p. 22 of the specification of this patent application, it is a necessary requirement for the invention of this patent application that the calcium is "soluble," that is, it must be soluble in the single strength fruit juice drink or fruit juice concentrate. Consequently, the amount of calcium in the drink and concentrate of the invention of this patent application refers to "the amount of soluble calcium, that is, the amount of calcium that can be dissolved in the drink or concentrate."

When calcium is added in this way in the invention of this patent application, calcium does not generate a "strange odor," and it has an unexpectedly high absorptivity/biological applicability, and it remains soluble even in the presence of fruit juice and acid components. In addition, by adopting a prescribed ratio of malic acid to citric acid and using a prescribed manufacturing method, it is possible to further improve the solubility and stability of the calcium-containing product.

In the following, we will explain that the invention of this patent application with the aforementioned characteristic features cannot be reached easily from Exhibit No. 1 as asserted as by the examiner of the preceding trial.

(3) Exhibit No. 1 pertains to a drink for supplementing calcium and widely adopted as a drink for medical or health purposes.

On p. 1 of said Exhibit No.1, there is the following description: "Because calcium is deposited in bones in the form of phosphate, it is preferred that the ratio of calcium to phosphorus in the body liquid be near the ratio of calcium to phosphorus in bones. Consequently, it is believed that supplementation of calcium be carried out using calcium phosphate." Also, it points out that there are the following problems for calcium phosphate, that is, its problem with

respect to solubility in water (it is sparingly soluble), its problem with respect to absorptivity in the digestive system (very poor), and its problem with respect to taste (it is tasteless).

According to Exhibit No. 1, these problems are solved by adding organic acids to the water suspension of fine powder of calcium phosphate or calcium malate, and by adding a sugar alcohol. That is, by using this method, a transparent solution of a calcium-supplemented drink is provided.

(4) Said invention of the Exhibit differs from the invention of this patent application entirely with respect to the following points. Consequently, the invention of this patent application cannot be reached at all on the base of the invention of the Exhibit.

That is, the invention of the Exhibit has the following features:

[1] It contains added protein (as to be explained later, in Exhibit No. 1, there is a description on the added protein).

[2] It must contain calcium phosphate and/or calcium malate (as described on p. 22 of the specification of this patent application, in the invention of this patent application, the preferable calcium sources include calcium carbonate, calcium oxide, calcium hydroxide, etc. However, there is no disclosure of these calcium sources in Exhibit No. 1).

[3] It does not contain the necessary amount (at least 45 wt%) of fruit juice defined in the invention of this patent application.

[4] It does not require simultaneous use of citric acid and malic acid, and it does not require use of their mixture at a prescribed ratio.

[5] It contains a sugar alcohol as a necessary component.

[6] It has no indication on the use of a stabilizer.

[7] It is manufactured using a method entirely different from the manufacturing method of the invention of this patent application (Claims 19 and 30).

These points can be further elaborated below.

(5) In Exhibit No. 1, p. 2, upper-right column, there is the following description: " In addition to calcium phosphate ($Ca_3(PO_4)_2$, $CaHPO_4 \cdot 2H_2O$, etc.) which is believed to be insoluble in water as it is, calcium phosphate used in this invention also is contained in powder of the bones of cows, sheep, fish, etc. that have calcium phosphate as its principal component." In Application Examples 1, 2, 3 and 8 of said Exhibit, there is no doubt that cow bone powder was actually used as added protein. Also, in Application Example 3, defatted milk was used.

On the other hand, as described in the specification of this patent application, pp. 27-28, there is substantially no added protein, and it is preferred that added protein be entirely absent.

Consequently, the invention of the Exhibit did not disclose a drink "virtually free of added protein."

(6) As pointed out in said (4) [2], in the invention of the Exhibit, calcium phosphate, which is not used as a calcium source in the invention of this patent application, is a necessary component as the calcium source. On the other hand, it excludes calcium carbonate, calcium oxide, calcium hydroxide, etc., which are preferable calcium sources in the invention of this patent application. Also, as described in (5) in the above, it is described that bone power or the like with calcium phosphate as principal component is used. In the invention of the Exhibit, there is no disclosure at all on how to make calcium carbonate, calcium oxide, and calcium hydroxide soluble, and there is no indication at all on other calcium sources.

(7) The drink composition of the invention of this patent application contains at least 45 wt% of fruit juice as a principal component.

On the other hand, in the invention of the Exhibit, as can be seen from the description of Application Example 2, it is prepared by mixing 20 mL of fruit juice with 180 mL of a solution, and the proportion of the fruit juice in the drink of this Exhibit is merely about 10-11 wt%.

Consequently, this Exhibit makes no disclosure on the following important characteristic feature of the invention of this patent application, that is, "a calcium-supplemented single strength fruit juice drink or its concentrate containing at least 45% fruit juice." As described in the above, in the invention of the Exhibit, it is prepared by diluting fruit juice with water, so that the drink contains an even lower amount of fruit juice. In this Exhibit, the fruit juice is added as a sweetener (see: p. 2, lower-right column).

(8) As explained in the above, the invention of the Exhibit did no disclose at all the feature of simultaneous use of citric acid and malic acid. However, in the invention of this patent application, these two acids are necessary for forming the "soluble calcium." That is, as described in the specification of this patent application, pp. 23-24, "The key component in the fruit juice drink and juice concentrate of this invention is the acid component. This acid component contains a mixture of citric acid and malic acid." In this case, the ratio (by weight) of malic acid to citric acid influences the safety and solubility of calcium in the drink as to be explained below.

Proof 1 annexed to the present document by the present patent applicant is a graph that illustrates the stability of the calcium-supplemented fruit juice concentrate, with the ratio of malic acid to citric acid within the range of the invention of this patent application (5:95-90:10)

(the stability is determined by measuring the amount of calcium remaining in the solution after a prescribed time).

Also, Proof 2 is a graph illustrating the precipitation amount as a function of the ratio of malic acid to citric acid (after accelerated aging, that is, after 1 week at 120°F for 1 week). In addition, Proof 3 is a graph illustrating the amount of calcium that is dissolved after storage at 120°F for 3 weeks.

(9) As explained in the above, in the invention of the Exhibit, sugar alcohol is a necessary component. According to the description in Exhibit No. 1, p. 2, upper-left column, both an organic acid and sugar alcohol are needed to ensure transparency of the calcium suspension.

This description indicates that the specialists believe that "even after acid is added, calcium suspended in the solution still cannot be dissolved completely." In addition, it indicates the specialists believe that "addition of the organic acid alone is insufficient in dissolving calcium."

On the other hand, according to the invention of this patent application, calcium can be dissolved without using sugar alcohol.

Consequently, this also indicates that the invention of this patent application cannot be reached easily from the aforementioned invention of the Exhibit.

(10) Also, in the invention of the Exhibit, there is no disclosure on the stabilizer.

On the other hand, according to the invention of this patent application, as can be seen from the description in the specification of this patent application, pp. 34-35, in order to maintain calcium in the solution, it is necessary to use a stabilizer to form a complex compound with calcium.

In Exhibit No. 1, fruit juice, cane sugar, etc. are added merely as a sweetener. According to the description in the Exhibit, p. 2, lower-right column ~ p. 3, upper-left column, "When the concentration of calcium ions is 800 mg/100 mL or lower, appropriate sweetness is displayed by sugar alcohol, and appropriate sourness is displayed by the organic acid, so that a drink with excellent taste is obtained." Also, this Exhibit did not disclose that when the content of calcium is 0.8 wt% or less, cane sugar is added to the drink.

(11) According to the description in said Exhibit, p. 3, upper-left column, the drink for supplementing calcium in Exhibit No. 1 "can be manufactured by simply mixing the various components." For example, it may be manufactured by simply adding the organic acid and sugar alcohol to an aqueous suspension of fine powder of calcium phosphate. More specifically, according to the application example in said Exhibit, the desired drink is manufactured by

suspending calcium phosphate (that is, cow bone powder) in a solution containing a sugar alcohol, followed by addition of an organic acid.

On the other hand, as described in Claims 19-29 and 30-37 and in the specification of this patent application, p. 31 ~ last page (including application examples) and annexed figures of this patent application, the method for manufacturing the calcium-supplemented product in the invention of this patent application is characterized by the fact that first of all, (i) a prescribed amount of soluble calcium, (ii) a prescribed amount of a mixture of citric acid and malic acid, and (iii) premixed aqueous solution containing water are prepared.

Consequently, the calcium-supplemented product of the invention of this patent application is manufactured in a method entirely different from the method disclosed in Exhibit No. 1. In this way, it is clear that the assertion that specialists can easily reach the manufacturing method of the invention of this patent application on the basis of the Exhibit is groundless.

(12) As explained in the above, the invention of this patent application cannot be reached easily on the base of description of Exhibit No. 1 as asserted by the examiner of the preceding trial.

Consequently, the present requester hopes that on the basis of the opinion of this requester described in the Supplementation of Reasons for Trial Request that has been filed, as well as the aforementioned opinion of this requester, a judgment can be made to revoke the original decision and to grant a patent to the invention of this patent application.

6. List of annexed documents

Proofs 1-3: each 1 copy

---------------------------------------------

Proof 1

The following listed data pertain to the calcium-supplemented concentrate fruit juice product manufactured using the method of the invention of this patent application, and they indicate the influence of the ratio by weight of malic acid to citric acid on the stability/solubility of calcium in the product.

| ① ブリックス | ② カルシウム (重量%) | ③ 酸成分 (重量%) | ④ クエン酸対 リンゴ酸重量比 | ⑤ 安定性 日数 (70下) |
|---|---|---|---|---|
| 6 2 | 0. 6 3 | 3. 3 0 | 0 : 1 0 0 | 1 |
| 6 3 | 0. 6 3 | 3. 2 6 | 2 6 : 7 4 | 2 8 |
| 6 2. 2 | 0. 6 3 | 3. 2 3 | 4 9 : 5 1 | 1 4 |
| 6 1. 8 | 0. 6 3 | 3. 1 8 | 8 1 : 1 9 | 5 |
| 6 3 | 0. 6 3 | 3. 1 5 | 1 0 0 : 0 | 1 |

Key:    1        Brix
        2        Calcium (wt%)
        3        Acid component (wt%)
        4        Ratio by weight of malic acid to citric acid
        5        Stability, days (70°F)

Proof 2

The following graph pertains to the samples in Proof 1, and it indicates the amount of precipitate formed after storage at 120°F for 1 week (the precipitation rate is increased in storage at a high temperature).

From the following graph, it can be seen that the ratio of malic acid to citric acid is critical for the amount of precipitate present in the drink, that is, the stability.



Key:  1      Dry weight of precipitate (%)
       2      Weight of citric acid / (weight of citric acid + weight of malic acid) (%)

Proof 3

    The following graph indicates the amount of calcium dissolved after storage at 120°F for 3 weeks versus the ratio of malic acid to citric acid.



Key:    1        Solubility of calcium (100 mg%)
        2        Calcium citrate/[calcium citrate + calcium malate]

# 審判請求理由補充書

平成 8 年 1 月 31日

特 許 庁 審 判 長 殿 

1 事件の表示

平成 6 年 審 判 第 11568 号

2 発明の名称

カルシウムで栄養補給された果汁飲料および
ジュース濃縮物

3 審判請求人

ザ、プロクター、エンド、ギャンブル、カンパニー

4 代 理 人 (郵便番号100)

東京都千代田区丸の内3丁目2番3号

協 和 特 許 法 律 事 務 所 内

電話 東京 (3211) 2321 大代表

6428 弁理士 佐 藤 一 雄 

— 1 —



5  請求の理由

（1）　本請求人は、平成７年１月１３日付で審判請求理由補充書を提出し、本願発明は、本願明細書の記載に基づいて充分に特許性を有するものと判断されるべきであって、拒絶査定の謄本の備考欄において前審審査官殿がいわれるように引例１から容易に推考し得るようなものではないことを既にご説明致しましたが、本願発明がこの引例１に基づいて容易に想到し得るなどとは全くいえるものではないことを、以下更に詳しくご説明致します。

（2）　本願発明は、ミルクやミルク製品からではなく、果汁飲料によりカルシウムを提供しようとするものであります。しかし、果汁飲料や果汁濃縮物にカルシウムを添加すると、本願明細書の第１１頁において言及していますように、望ましくない調理／褐色化異臭を発生したり、望ましいアロマ（aroma）やフレーバー化合物を果汁製品からストリッピングさせるなどの問題が生じてしまうのであります。

よって、本願発明は、上記のような異臭の発生をなくす他、ジュースやジュース濃縮物中への実質量でのカルシウムの可溶化、炭酸カルシウムの酸との反応により生じる二酸化炭素の除去、吸収性／生物学的利用能を有するカルシウムの提供などを主たる目的としているのであります。

上記したような目的は、本願発明によれば、添加タンパク質を実質上含まず、特定量の可溶化カルシウム、クエン酸とリンゴ酸の特定な混合物からなる特定量の酸成分、少なくとも４５重量％の果汁分、特定量の糖分を含み、かつ塩化物イオンは０．０７重量％以下であることを特徴とする果汁飲料を提供することにより解決し得たのであります。

本願明細書第２２頁において記載しているように、本願発明においてカルシウムは「可溶化」していること、即ち、シングルストレングス（単一強度）果汁飲料或いは果汁濃縮物に溶解していることが必須なのであります。よって、本願発明の飲料や濃縮物におけるカルシウム量とは、「可溶化カルシウム、即ち、飲料や濃縮物中に溶解しているカルシウムイオン量」をいうのであります。

このようにカルシウムが本願発明により添加されるならば、カルシウムは“異臭”を生じることもなく、予想外に高い吸収性／生物学的利用能を有し、かつ果

汁と酸成分の存在下でも可溶性でありうるのであります。更に、クエン酸対リンゴ酸の特定な割合並びに特定な製造法により、カルシウム含有製品を溶解性及び安定性の観点において一段と増大させ得たのであります。

このような特徴を有する本願発明が前審審査官殿がいわれるように引例1から容易に推考し得るものではないことを以下説明いたします。

（3）　引例1は、医療用又は保健用飲料として広く用いられうるカルシウム補給用飲用液に関するものであります。

上記引例の第1頁には、「カルシウムは、燐酸塩の形で骨に沈着するので、体液中のカルシウムと燐の比率は骨におけるカルシウムと燐の比率に近いことが望ましいとされている。したがって、カルシウムの補給には、燐酸カルシウムを用いるのが最も好ましいと考えられた。」との記載があり、更にこの燐酸カルシウムについては次のような問題点があることが指摘されています。即ち、水に対する溶解性の問題点（ほとんど不溶である）、消化管からの吸収性の問題点（極めて悪い）、及び味の問題点（味がない）等が指摘されています。

これらの問題点は、引例1によれば、燐酸カルシウム又はリンゴ酸カルシウム微細粉末の水懸濁液に有機酸を加え、更に糖アルコールを加えることにより解決し得る、とされています。即ち、このような方法により透明な溶液のカルシウム補給用飲用液を提供し得る、とされています。

（4）　このような引例発明は以下の点において本願発明とは全く異なり、本願発明がこのような引例発明に基づいて容易に想到し得たなどとは全くいえるものではないのであります。

すなわち、引例発明は、

① 添加タンパク質を含みうるものである（引例1には後述するように添加タンパク質についての記載がある）；

② 燐酸カルシウム及び／又はリンゴ酸カルシウムは必ず含む（本願明細書第22頁の記載から明らかなように、本願発明における好適なカルシウム源は炭酸カルシウム、酸化カルシウム、水酸化カルシウム等であるが、引例1にはこのようなカルシウム源に関する教示は見出し得ない）；

③ 本願発明において必須とする量（少なくとも45重量％）もの果汁を含有す

るものではない；

④　クエン酸とリンゴ酸の同時使用を必要とせず、また特定割合のこれらの混合

物を必要としない；

⑤　糖アルコールを必須成分として含む；

⑥　安定剤の使用に関しては何ら示唆するものではない；

⑦　本願発明の製造法（請求項１９及び３０）とは全く異なる方法で製造するも

のである。

これらの点に関しては以下、更に詳しく説明いたします。

（５）　引例１の第２頁右上段には、「この発明で用いる燐酸カルシウムとして

は、一般にそれ自体では水不溶性と理解されている燐酸カルシウム

（$Ca_3(PO_4)_2$、$CaHPO_4 \cdot 2H_2O$など）のほか、燐酸カルシウム

を主成分とする牛骨、羊骨、魚骨等の骨粉が含まれる。」なる記載があり、また

同引例の実施例（１，２，３及び８）においては実際に牛骨粉を用いており、こ

れは添加タンパク質の使用に他ならないのであります。また実施例３においては

無脂乳を用いているのであります。

一方、本願発明の果汁飲料及び濃縮物は、本願明細書の第２７～２８頁の記載

から明らかなように、添加タンパク質は実質上含まないものであり、好ましくは

添加タンパク質を全く含有しないものなのであります。

よって、引例発明は「添加タンパク質を実質上含まない」飲料を教示するもの

では全くないのであります。

（６）　上記（４）の②において指摘した通り、引例発明においてはカルシウム

源として本願発明においては用いない燐酸カルシウムとリンゴ酸カルシウムを必

須成分とするものであり、本願発明において好ましいカルシウム源としている炭

酸カルシウム、酸化カルシウム、水酸化カルシウム等を排除するものであります。

しかも上記（５）において述べたように燐酸カルシウムを主成分とする骨粉等を

用いており、引例発明は炭酸カルシウム、酸化カルシウム、水酸化カルシウムを

いかに可溶化するかについて全く教示するものでも、或いは他のカルシウム源に

ついて示唆するものでも全くないのであります。

（７）　本願発明の飲料組成物は、少なくとも４５重量％の果汁を主成分の一つ

— 4 —

とするものであります。

　一方、引例発明においては、実施例2の記載から明らかなように、たった20mlの果汁が180mlの溶液と混合されており、同引例における飲料には精々10～11重量％程度の果汁が含まれているのにすぎないのであります。

　よって、この引例は、本願発明において重要な特徴の一つである「少なくとも45％の果汁を含むカルシウム補給単一強度果汁飲料或いはその濃縮物」について教示するものではないのであります。上記したように、引例発明においては、果汁は水で希釈して一段と低い果汁含有物としているのであります。この引例においては果汁は甘味剤として加えられているのであります（第2頁右下段参照）。

（8）　前記したように引例発明においてはクエン酸とリンゴ酸の同時使用については全く教示するものではないが、本願発明においては「可溶化カルシウム」を形成させるためにこれら両酸は必須なのであります。すなわち、本願明細書第23～24頁において記載しているように、「本発明の果汁飲料およびジュース濃縮物で鍵の成分は、酸成分である。この酸成分は、クエン酸とリンゴ酸との混合物を含む」のであります。その際クエン酸対リンゴ酸の比率（重量比）は飲料におけるカルシウムの安全性及び溶解性に関して、以下において説明するように、影響を与えるのであります。

　本請求人が此の度本書において添附しました証拠1は、クエン酸対リンゴ酸の比率が本願発明の範囲内（5：95～90：10）にあるカルシウム補給果汁濃縮物について安定性を示すグラフであります（安定性は、時間経過後溶液中にとどまっているカルシウム量を決定することにより求めた）。

　また、証拠2は、クエン酸対リンゴ酸の比率を関数とし、（加速エージング後の、即ち、120下で1週間後の）沈殿量について示すグラフであります。更にまた、証拠3は、120下で3週間保存後溶解しているカルシウム量を示すグラフであります。

（9）　前記したように、引例発明においては糖アルコールを必須成分とするものであります。引例1の第2頁左上段の記載によれば有機酸と糖アルコールは両者ともカルシウム懸濁液を透明にするのに必須なのであります。

　このことは、正に、当業者をして『溶液中に懸濁しているカルシウムは酸の添

加後でも完全には溶解されない』ことを信じさせるものであります。更に、当業
者をして『カルシウムの溶解を達成するには有機酸単独添加では不十分でる』[1]と
の考えを与えることになります。

　　一方、本願発明は糖アルコールを使用することなくカルシウムの可溶化を達成
しているのであります。

　　よって、この点からしても、本願発明は上記引例発明から容易に推考し得るも
のではないことが明らかであると考えます。

　（１０）　また引例発明においては安定剤に関しては何ら教示するものではあり
ません。

　　一方、本願発明においては、本願明細書の第３４～３５頁の記載から明らかな
ように、安定剤（即ち、糖、濃縮ジュース）はカルシウムと錯化し、カルシウム
を溶液中に維持するのに必要なのであります。

　　引例１においては果汁、砂糖等は甘味剤として配合しているにすぎず、引例の
第２頁右下段～第３頁左上段の記載によれば、「カルシウムイオン濃度が８００
mg／１００ml以下の場合には、糖アルコールによる適度の甘味と有機酸による適
度の酸味が発揮され、極めて口あたりのよい飲用液となる。」とあるように、同
引例は０．８重量％以下のカルシウム含量の場合には飲料中に砂糖を用いること
に関しては教示するものではないのであります。

　（１１）　引例１におけるカルシウム補給用飲用液は、同引例の第３頁左上段の
記載によれば「各成分を合わせて混合するだけで製造できる」とあるように、例
えば燐酸カルシウム微細粉末の水懸濁液に有機酸と糖アルコールとを単に加える
ことにより製造しています。より具体的には、同引例の実施例によれば、糖アル
コール含有溶液に燐酸カルシウム（即ち、牛骨粉）を懸濁し、次いで有機酸を加
えることにより目的とする飲用液を製造しています。

　　一方、本願発明のカルシウム補給製品の製造法は、請求項１９～２９及び３０
～３７の記載、本願明細書第３１頁以降最終頁に至るまでの記載（実施例を含む）
並びに添附図面から明らかなように、（i）特定量の可溶可カルシウム　（ii）特定
量のクエン酸とリンゴ酸の混合物及び（iii）水を含んでなるプレミックス水溶液
をまず調製することを特徴とするのであります。

　このように、本願発明のカルシウム補給製品は、引例1で教示するような方法とは全く異なった方法により製造するものでありまして、このような本願発明の製造法が同引例から容易に推考し得るなどとはたとえ当業者といえどもいえるものではないと確信するものであります。

（12）　以上の通りでありまして、本願発明が、前審査官殿がいわれるように引例1の記載に基づいて容易に想到し得るようなものではないことが今やはっきりとおわかり頂けたものと信ずるものであります。

　よって、本請求人は、先に提出した審判請求理由補充書において述べた本請求人の意見、並びに上記した本請求人の意見に基づいてご判断を仰ぎ、原査定を取消し、本願発明は特許すべきものと決せられますことを希望いたします。


6　添附書類の目録
　　　　証拠1～3　　　　　　　　　　　　　　　　　各1通

<u>証拠　1</u>

　下記のデータは、本願発明の方法により製造したカルシウム補給濃縮果汁製品に関して、クエン酸対リンゴ酸の重量比が製品中のカルシウムの安定性／溶解性にいかに影響を与えるかを示す。

| ブリックス | カルシウム<br>（重量%） | 酸成分<br>（重量%） | クエン酸対<br>リンゴ酸重量比 | 安定性<br>日数（70°F） |
|---|---|---|---|---|
| 62 | 0.63 | 3.30 | 0：100 | 1 |
| 63 | 0.63 | 3.26 | 26：74 | 28 |
| 62.2 | 0.63 | 3.23 | 49：51 | 14 |
| 61.8 | 0.63 | 3.18 | 81：19 | 5 |
| 63 | 0.63 | 3.15 | 100：0 | 1 |

<u>証拠　2</u>

　下記のグラフは、証拠1の試料に関して、120℉で1週間保存したとき形成された沈殿物の量を示すものである（高温保存により沈殿速度を加速している）。

　下記のグラフにより、クエン酸対リンゴ酸の比が、存在する沈殿物の量、即ち、安定性に対して臨界的であることがわかる。



％　沈　殿　乾　物　重　量

<u>証拠　3</u>

　　下記のりグラフは、１２０℉で３週間保存後溶解しているカルシウムの量を、クエン酸対リンゴ酸の比を関数として示すものである。



クエン酸カルシウム／［クエン酸カルシウム＋リンゴ酸カルシウム］