# Exhibit 5

Eric C. Wilhelmsen                                                December 19, 2003
Reston, VA

Page 246

ORIGINAL

1         IN THE UNITED STATES DISTRICT COURT

2         FOR THE SOUTHERN DISTRICT OF OHIO

3              Western Division (Dayton)

4    - - - - - - - - - - - - - - x Civil Action

5    THE PROCTOR & GAMBLE COMPANY, : No.: C-1-02-393

6              Plaintiff,         : Hon. Walter Herbert

7         vs.                     :      Rice (C.J.)

8    THE COCA-COLA COMPANY,       : Hon. Sharon Ovington

9              Defendant.         :      (Magistrate)

10   - - - - - - - - - - - - - - x Volume 2

11                        Reston, Virginia

12                        Friday, December 19, 2003

13        Continued Videotaped Deposition of ERIC C.

14   WILHELMSEN, PH.D., a witness herein, called for

15   examination by counsel for Plaintiff in the

16   above-entitled matter, pursuant to notice, the

17   witness being duly sworn by KAREN YOUNG, a Notary

18   Public in and for the Commonwealth of Virginia,

19   taken at the offices of Hale and Dorr, 11951 Freedom

     Drive, Suite 1400, Reston, Virginia, at 11:32 a.m.

20   on Friday, December 19, 2003, and the proceedings

21   being taken down by Stenotype by KAREN YOUNG, and

22   transcribed under her direction.

Eric C. Wilhelmsen                                December 19, 2003
                        Reston, VA

                                                          Page 297

1      A.   To the extent the claims are construed to
2  cover product not requiring added acid, it is my
3  opinion that the claims are invalid for failing to
4  contain a written description of such a product.
5      Q.   And where are you reading from?
6      A.   This is paragraph 49 of my report.
7      Q.   Okay. And the condition that you just
8  read -- that is the claim construction advocated by
9  Proctor & Gamble, isn't it?
10     A.   The claim construction represented by
11 Proctor & Gamble -- you tell me. That's what I
12 understand it to be, but --
13     Q.   That's your understanding of the claim
14 construction advocated by Proctor & Gamble, isn't
15 it?
16     A.   Yes.
17     Q.   And given that claim construction, it's
18 your opinion that the 847 patent lacks a written
19 description, isn't it?
20     A.   Yes, paragraph 49.
21     Q.   Now, to be clear though, even in your
22 opinion, there is an adequate written description in

Page 298

1  the 847 patent for a calcium-supplemented fruit
2  juice with added acid.
3      A.  I did not bring up any arguments about an
4  adequate written description in that other case.
5      Q.  In the case where if the 847 patent were
6  limited to calcium-supplemented fruit juice with
7  added acids, in your opinion, would there be
8  adequate written description?
9      A.  Yes, to the extent that the examples and
10 all that provided, I would think it would be in the
11 realms of patents that I have read before, so that's
12 not a question that I have rendered a specific
13 opinion on. I don't -- but I would say yes.
14     Q.  You agree with me, do you not, that the
15 claims of the 847 patent are product claims?
16     A.  In this context, Counsel, what do you mean
17 by a product claim?
18     Q.  As opposed to a method claim. Does that
19 terminology mean anything to you?
20     A.  Yes, I do understand -- I have had
21 explained to me the difference, but the prosecution
22 history of this patent with its splitting makes that

Page 305

1  understanding is as I quoted from my report. That
2  was the basis that I used.
3      Q.   When you formed your opinion about the --
4  whether or not the 847 patent has an adequate
5  written description, did any attorney tell you that
6  if the patent describes at least one method of
7  obtaining the claimed product, that it has an
8  adequate written description?
9      A.   That is a detail that I cannot answer yes
10 or no to.
11     Q.   You don't recall being told that?
12     A.   That is a detail that I don't recall. I
13 can't say yes or no. I'm sorry. That's more
14 specific.
15     Q.   Fair enough, but I want to focus a little
16 bit on what you think is lacking in the written
17 description of the 847 patent. Do you agree that
18 there is an adequate written description in the 847
19 patent -- strike that. Let's look at claim 1 of the
20 847 patent. Do you agree that there is an adequate
21 written description for a single strength fruit
22 juice beverage?

Page 306

1   A.   Those words are relatively customary.
2   Obviously you want things in context. You have to
3   be very careful when you choose a word. If I tell
4   you or ask you are you going to pick up the check,
5   there's obviously two meanings, but single strength
6   fruit juice beverage -- those are relatively common
7   words. We've had some discussion already about what
8   a beverage is, and we could go through and repeat
9   that discussion if you think it's important.
10  Q.   Is it your opinion that the phrase -- the
11  term -- strike that. Is it your opinion that the
12  claim element "A single strength fruit juice
13  beverage" lacks adequate written description?
14  A.   No, I can -- I can interpret it.
15  Q.   Okay.
16  A.   I have.
17  Q.   I'm sorry. Is it your opinion that the
18  claim element "Substantially free of added protein"
19  lacks an adequate written description?
20  A.   The patent is not as clear as I would
21  like. The concept is pretty clear. You go into the
22  specification, they talk about this tenth percent,

Page 307

1  but it's not as clean as it might be, but the intent
2  of excluding products with we'll call it dairy
3  proteins added based on the prior art seems
4  apparent.
5      Q.   So is it your opinion that it lacks an
6  adequate written description?
7      A.   Depends on how you're slicing and dicing
8  on what's adequate. I think the inventor has
9  conveyed enough information that you can understand
10 that he was asserting products that did not have
11 added protein. I go back to the original
12 understanding I was giving, must reasonably convey
13 to one of ordinary skill in the art the inventor was
14 in possession of the invention at the time the
15 application was filed. He is talking about products
16 where somebody is using other than dairy proteins.
17     Q.   Do you intend at trial in this matter,
18 Doctor, to offer the opinion that "Substantially
19 free of added protein" lacks adequate written
20 description?
21     A.   No, it's not a serious bone of contention
22 in this matter. I don't expect to, but if --

Page 310

1   made so fine as to avoid the grittiness.

2          If somebody was using a similar product in
3   a juice product, the concept of solubilized becomes
4   confusing. It would be something that would not
5   have been anticipated at the time Heckert wrote this
6   patent. These are new ingredients. But do I expect
7   to testify in this way? Not with the facts in front
8   of me.

9       Q.   Have you formed the opinion, Doctor, as
10  you sit here today, that the claim element "With
11  between point 05 and point 26 percent by weight
12  solubilized calcium" lacks an adequate written
13  description?

14      A.   In the context of our discussions, I have
15  found no reason to challenge the methodologies used.

16      Q.   Have you formed the opinion that the claim
17  element "At least 45 percent fruit juice" lacks an
18  adequate written description?

19      A.   No.

20      Q.   Have you formed the opinion that "With a
21  sugar content of between two degrees and 16 degrees
22  Brix" lacks an adequate written description?

Eric C. Wilhelmsen                                December 19, 2003
                        Reston, VA

Page 311

1    A.    The language of the patent is not as
2    specific as it should be. That statement should say
3    "sugars" perhaps, because you have the problem that
4    sugar in usage is often sucrose as opposed to
5    glucose and fructose, and Brix doesn't measure
6    exclusively sugars. It measures dissolved solids.
7    It is commonly used to measure dissolved solids, but
8    its impact by organic acids and other solutes.
9          And so if you're going to use it exactly
10   as written, there's some uncertainty. It has not
11   been a major point of discussion in this patent, so
12   here again, I don't expect to be rendering
13   testimony, but if asked about the precision of the
14   method, yes, I have concerns.
15   Q.    As you sit here today, Doctor, have you
16   formed the opinion that the claim element "With a
17   sugar content of between two degrees and 16 degrees
18   Brix" lacks an adequate written description?
19   A.    I can -- we can talk about products where
20   it would generate indefiniteness, but they're not in
21   contention in this discussion, and so I don't expect
22   to render an opinion of that nature in this case.

Eric C. Wilhelmsen                                December 19, 2003
                         Reston, VA

Page 312

1    Q.   Have you formed an opinion that the claim
2    element "Less than point 07 percent by weight
3    chloride ion" lacks an adequate written description?
4    A.   No.
5    Q.   So am I correct in understanding that the
6    key element missing, a written description, in your
7    opinion is the acid component?
8    A.   I would agree that that is the key focus
9    of discussion.
10   Q.   Would you agree, Doctor, that in
11   determining whether or not there's an adequate
12   written description for a claim element, one
13   considers not only the specification, but also the
14   original claims as they were filed with the patent
15   office?  Has anybody ever explained that to you?
16   A.   No.
17   Q.   In determining whether or not the claims
18   of the 847 patent have an adequate written
19   description, did you consider the original claims
20   that were filed with the original application that
21   led to the 847 patent?
22   A.   No.

Eric C. Wilhelmsen December 19, 2003
Reston, VA

Page 335

1  patent has to enable every method of making the
2  claimed invention or only one method of making the
3  claimed invention or some other understanding?
4      A.   The legal standard is what I just read.
5  That's what I was using.
6      Q.   So you didn't have any understanding on
7  the question I'm asking?
8      A.   Repeat your question one more time.
9      Q.   When you formed your opinion that the 847
10 patent was not enabled, did you have any
11 understanding about whether or not the law requires
12 that every method of obtaining the claimed product
13 must be enabled or only one method has to be enabled
14 or some other understanding?
15     A.   I do not recollect a specific discussion
16 of those points. I may have heard it. This is what
17 I relied on for my opinion.
18     Q.   Okay. You do not dispute, do you, Doctor,
19 that at a minimum, the 847 patent enables the premix
20 method of manufacturing the claimed products, right?
21     A.   To the extent that the premix includes
22 added citric acid and added malic acid, no.

Henderson Legal / Spherion
(202) 220-4158

Eric C. Wilhelmsen                                    December 19, 2003
                        Reston, VA

                                                              Page 336

1    Q.    So under your claim construction, the 847
2    patent is enabled, right?
3    A.    Well, no, actually, let's -- let's go back
4    and we should look at the section K of my report
5    where even if the Coca-Cola claim construction is
6    accepted, that then -- I think I have the right
7    section. No, that was the wrong section.
8    Q.    Are you on I, if you look on page 39 --
9    A.    Yes.
10   Q.    That's obviousness.
11   A.    Obviousness, okay.
12   Q.    My question has nothing to do with
13   obviousness. My question is about enablement,
14   Doctor. You've offered the opinion that the claims
15   of the 847 patent are not enabled under P&G's claim
16   construction, right?
17   A.    Uh-huh.
18   Q.    My question is under your claim
19   construction, is the 847 patent enabled.
20   A.    I think so.
21   Q.    Do you understand that P&G's claim
22   construction excludes from the scope of the patent