# United States Court of Appeals for the Federal Circuit

01-1357, -1376, 02-1221, -1256

KNORR-BREMSE SYSTEME FUER NUTZFAHRZEUGE GMBH,

Plaintiff-Cross Appellant,

v.

DANA CORPORATION,

Defendant-Appellant,

and

HALDEX BRAKE PRODUCTS CORPORATION,
and HALDEX BRAKE PRODUCTS AB,

Defendants-Appellants.

---

DECIDED: September 13, 2004

---

Before MAYER, Chief Judge, NEWMAN, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, and PROST, Circuit Judges.*

Opinion for the court filed by Circuit Judge NEWMAN. Concurring in part and dissenting in part opinion filed by Circuit Judge DYK.

NEWMAN, Circuit Judge.

Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH is the owner of United States Patent No. 5,927,445 (the '445 patent) entitled "Disk Brake For Vehicles Having Insertable

---

\*      MICHEL, Circuit Judge, took no part in the consideration or decision of this case.

Actuator," is sued on July 27, 1999. At trial to the United States District Court for the Eastern District of Virginia, the appellants Dana Corporation, Haldex Brake Products Corporation, and Haldex Brake Products AB were found liable for infringement and willful infringement.[1] No damages were awarded, for there were no sales of the infringing brakes. Based on the finding of willful infringement the court awarded partial attorney fees under 35 U.S.C. §285.

The appellants seek reversal of the finding of willful infringement, arguing that an adverse inference should not have been drawn from the withholding by Haldex of an opinion of counsel concerning the patent issues, and from the failure of Dana to obtain its own opinion of counsel. Applying our precedent, the district court inferred that the opinion of counsel withheld by Haldex was unfavorable to the defendants. After argument of the appeal we took this case en banc in order to reconsider our precedent with respect to these aspects. The parties were asked to submit additional briefing on four questions, and amicus curiae briefs were invited.[2] Knorr-Bremse, 344 F.3d 1336 (Fed. Cir. 2003) (En banc Order).

---

1    Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 133 F. Supp. 2d 833 (E.D. Va. 2001) (partial summary judgment) ("Knorr-Bremse I"); 133 F. Supp. 2d 843 (E.D. Va. 2001) (findings of fact and conclusions of law) ("Knorr-Bremse II"); Civ. A. No. 00-803-A (E.D. Va. Mar. 7, 2001) (final judgment); No. 00-803-A (E.D. Va. Apr. 9, 2001) (amended final judgment) ("Knorr-Bremse III").

2    Amicus curiae briefs were filed by the American Bar Association; American Intellectual Property Law Association; Association of the Bar of the City of New York; Association of Corporate Counsel; Association of Patent Law Firms; Bar Association of the District of Columbia; BEA Systems, Inc. and Novell, Inc.; Biotechnology Industry Organization; The City of Chicago; Computer Associates International, Inc. et al.; Conejo Valley Bar Association; Federal Circuit Bar Association; Generic Pharmaceutical Association; Houston Intellectual Property Law Association; Intellectual Property Owners Association; Lexington Patent Policy Group; Microsoft Corporation; New York Intellectual Property Law Association; Public Knowledge; Public

We now hold that no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel. Precedent to the contrary is overruled. We therefore vacate the judgment of willful infringement and remand for re-determination, on consideration of the totality of the circumstances but without the evidentiary contribution or presumptive weight of an adverse inference that any opinion of counsel was or would have been unfavorable.

## BACKGROUND

Knorr-Bremse, a German corporation, manufactures air disk brakes for use in heavy commercial vehicles, primarily Class 6-8 trucks known as eighteen wheelers, semis, or tractor-trailers. Knorr-Bremse states that air disk brake technology is superior to the previously dominant technology of hydraulically or pneumatically actuated drum brakes, and that air disk brakes have widely supplanted drum brakes for trucks in the European market.

Dana, an American corporation, and the Swedish company Haldex Brake Products AB and its United States affiliate, agreed to collaborate to sell in the United States an air disk brake manufactured by Haldex in Sweden. The appellants imported into the United States about 100 units of a Haldex brake designated the Mark II model. Between 1997 and 1999 the Mark II brake was installed in approximately eighteen trucks of Dana and various potential customers. The trucks were used in transport, and brake performance records were required to be kept and provided to Dana. Dana and

---

Patent Foundation; San Diego Intellectual Property Law Association; Securities Industry Association; Semiconductor Industry Association; and the United States Council for International Business, Center for Advanced Study & Research on Intellectual Property et al.

Haldex advertised these brakes at trade shows and in industry media in the United States.

Knorr-Bremse in December 1998 orally notified Dana of patent disputes with Haldex in Europe involving the Mark II brake, and told the appellants that patent applications were pending in the United States. On August 31, 1999 Knorr-Bremse notified Dana in writing of infringement litigation against Haldex in Europe, and that Knorr-Bremse's United States '445 patent had issued on July 27, 1999. Knorr-Bremse filed this infringement suit on May 15, 2000. In September 2000 Haldex presented to the district court a modified brake design designated the Mark III, and moved for a summary declaration of non-infringement by the Mark III brake. Knorr-Bremse in turn moved for summary judgment of literal infringement by the Mark II brake, and infringement by the Mark III either literally or under the doctrine of equivalents. After a hearing in November 2000 the district court granted Knorr-Bremse's motion for summary judgment of literal infringement by the Mark II brake, and set for trial the issues with respect to the Mark III. Before and after the judgment of infringement by the Mark II, Dana and others continued to operate trucks in the United States containing the Mark II brake. Following a bench trial in January 2001, the district court found literal infringement by the Mark III brake.

On the issue of willful infringement, Haldex told the court that it had consulted European and United States counsel concerning Knorr-Bremse's patents, but declined to produce any legal opinion or to disclose the advice received, asserting the attorney-client privilege. Dana stated that it did not itself consult counsel, but relied on Haldex. Applying Federal Circuit precedent, the district court found: "It is reasonable to conclude

that such opinions were unfavorable." The court discussed the evidence for and against willful infringement and concluded that "the totality of the circumstances compels the conclusion that defendants' use of the Mark II air disk brake, and indeed Dana's continued use of the Mark II air disk brake on various of its vehicles [after the judgment of infringement] amounts to willful infringement of the '445 patent." Knorr-Bremse II, 133 F. Supp. 2d at 863. Based on the finding of willful infringement the court found that the case was "exceptional" under 35 U.S.C. §285, and awarded Knorr-Bremse its attorney fees for the portion of the litigation that related to the Mark II brake, but not the Mark III.

The appellants appeal only the issue of willfulness of the infringement and the ensuing award of attorney fees. Knorr-Bremse cross-appeals, seeking to enjoin the appellants from retaining and using the brake performance records and test data obtained through use of the Mark II brake.

I

WILLFUL INFRINGEMENT

In discussing "willful" behavior and its consequences, the Supreme Court has observed that "[t]he word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent," McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988), the Court citing conventional definitions such as "voluntary," "deliberate," and "intentional." Id. The concept of "willful infringement" is not simply a conduit for enhancement of damages; it is a statement that patent infringement, like other civil wrongs, is disfavored, and intentional disregard of legal rights warrants

deterrence. Remedy for willful infringement is founded on 35 U.S.C. §284 ("the court may increase the damages up to three times the amount found or assessed") and 35 U.S.C. §285 ("the court in exceptional cases may award reasonable attorney fees to the prevailing party"). See generally Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 508 (1964) (the patentee "could in a case of willful or bad-faith infringement recover punitive or 'increased' damages under the statute's trebling provision").

Determination of willfulness is made on consideration of the totality of the circumstances, see Gustafson, Inc. v. Intersystems Indus. Prods., Inc., 897 F.2d 508, 510 (Fed. Cir. 1990), and may include contributions of several factors, as compiled, e.g., in Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1110 (Fed. Cir. 1986) and Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992). These contributions are evaluated and weighed by the trier of fact, for, as this court remarked in Rite-Hite Corp. v. Kelley Co., 819 F.2d 1120, 1125-26 (Fed. Cir. 1987), "'[w]illfulness' in infringement, as in life, is not an all-or-nothing trait, but one of degree. It recognizes that infringement may range from unknowing, or accidental, to deliberate, or reckless, disregard of a patentee's legal rights."

Fundamental to determination of willful infringement is the duty to act in accordance with law. Reinforcement of this duty was a foundation of the formation of the Federal Circuit court, at a time when widespread disregard of patent rights was undermining the national innovation incentive. See Advisory Committee On Industrial Innovation Final Report, Dep't of Commerce (Sep. 1979). Thus in Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380 (Fed. Cir. 1983) the court stressed the

legal obligation to respect valid patent rights. The court's opinion quoted the infringer's attorney who, without obtaining review by patent counsel of the patents at issue, advised the client to "continue to refuse to even discuss the payment of a royalty." Id. at 1385. The attorney advised that "[c]ourts, in recent years, have -- in patent infringement cases -- found the patents claimed to be infringed upon invalid in approximately 80% of the cases," and that for this reason the patentee would probably not risk filing suit. Id. On this record of flagrant disregard of presumptively valid patents without analysis, the Federal Circuit ruled that "where, as here, a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing," including "the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity." Id. at 1389-90.

Underwater Devices did not raise any issue of attorney-client privilege, while applying precedent that a finding of willfulness requires the factfinder to find by clear and convincing evidence "that the infringer acted in disregard of the patent," citing Stickle v. Heublein, Inc., 716 F.2d 1550, 1565 (Fed. Cir. 1983). The aspect of privilege arose in Kloster Speedsteel AB v. Crucible Inc., 793 F.2d 1565 (Fed. Cir. 1986), where the Federal Circuit observed that the infringer "has not even asserted that it sought advice of counsel when notified of the allowed claims and [the patentee's] warning, or at any time before it began this litigation," and held that the infringer's "silence on the subject, in alleged reliance on the attorney-client privilege, would warrant the conclusion that it either obtained no advice of counsel or did so and was advised that its importation and sale of the accused products would be an infringement of valid U.S.

patents." Id. at 1580.  Thus arose the adverse inference, reinforced in Fromson v. Western Litho Plate & Supply Co., 853 F.2d 1568 (Fed. Cir. 1988), and establishing the general rule that "a court must be free to infer that either no opinion was obtained or, if an opinion were obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention." Id. at 1572-73.  Throughout this evolution the focus was not on attorney-client relationships, but on disrespect for law.  However, implementation of this precedent has resulted in inappropriate burdens on the attorney-client relationship.

We took this case en banc to review this precedent.  While judicial departure from stare decisis always requires "special justification," Arizona v. Rumsey, 467 U.S. 203, 212 (1984), the "conceptual underpinnings" of this precedent, see id., have significantly diminished in force.  The adverse inference that an opinion was or would have been unfavorable, flowing from the infringer's failure to obtain or produce an exculpatory opinion of counsel, is no longer warranted.  Precedent authorizing such inference is overruled.

We answer the four questions presented for en banc review, as follows:

### QUESTION 1

> When the attorney-client privilege and/or work-product privilege is invoked by a defendant in an infringement suit, is it appropriate for the trier of fact to draw an adverse inference with respect to willful infringement?

The answer is "no."  Although the duty to respect the law is undiminished, no adverse inference shall arise from invocation of the attorney-client and/or work product privilege.

The Supreme Court describes the attorney-client privilege as "the oldest of the privileges for confidential communications known to common law," and has stressed the public purpose

> to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). Professor Wigmore has elaborated:

> The lawyer must have the whole of his client's case, or he cannot pretend to give any useful advice. . . . That the whole will not be told to counsel unless the privilege is confidential, is perfectly clear. A man who seeks advice, seeks it because he believes that he may do so safely; he will rarely make disclosure which may be used against him; rather than create an adverse witness in his lawyer, he will refuse all private arbitration, and take the chance of a trial.

8 J. Wigmore, Evidence in Trials at Common Law §2291 at 548 (McNaughton rev. 1961). See Hunt v. Blackburn, 128 U.S. 464, 470 (1888) (the attorney-client privilege is designed to encourage candid exchange of information).

Although this court has never suggested that opinions of counsel concerning patents are not privileged, the inference that withheld opinions are adverse to the client's actions can distort the attorney-client relationship, in derogation of the foundations of that relationship. We conclude that a special rule affecting attorney-client relationships in patent cases is not warranted. See Swidler & Berlin v. United States, 524 U.S. 399, 410 (1998) (ad hoc exceptions to privilege may cause "general erosion"). There should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public

interest in encouraging open and confident relationships between client and attorney. As Professor McCormick has explained, the attorney-client privilege protects "interests and relationships which . . . are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice."  1 McCormick on Evidence §72, 299 (5th ed. 1999).

There is precedent for the drawing of adverse inferences in circumstances other than those involving attorney-client relationships; for example when a party's refusal to testify or produce evidence in civil suits creates a presumption of an intent to withhold damaging  information that is material to the litigation.[3]  However, the courts have declined to impose adverse inferences on invocation of the attorney-client privilege. See, e.g., Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 225-26 (2nd Cir. 1999) (no adverse inference from the defendant's refusal to produce an opinion letter of counsel in a trademark dilution case), overruled on other grounds sub nom. Moseley v. Secret Catalogue, 537 U.S. 418 (2003); Parker v. Prudential Insurance Co., 900 F.2d 772, 775 (4th Cir. 1990) (no negative inference from assertion of attorney-client privilege).  We now hold that this rule applies to the same extent in patent cases as in other areas of law.  A defendant may of course choose to waive the privilege and produce the advice of counsel.  However, the assertion of attorney-client and/or work-product privilege and

---

[3] For example, in Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) the Court confirmed that in civil proceedings fact finders may draw adverse inferences against a party who refuses to testify.  See also, e.g., International Chemical Workers Union v. Columbian Chemicals Co., 331 F.3d 491, 497 (5th Cir. 2003) ("when a subpoena is ignored, a party can draw an adverse inference"); Penalty Kick Management, Ltd. v. Coca Cola Co., 318 F.3d 1284, 1294 (11th Cir. 2003) (adverse inference drawn from a party's failure to preserve evidence when predicated on bad faith); MacNaughton v. United States, 888 F.2d 418, 423 (6th Cir. 1989) (permitting adverse inference from failure to call witnesses peculiarly within the party's power to produce).

the withholding of the advice of counsel shall no longer entail an adverse inference as to the nature of the advice.

## QUESTION 2

> When the defendant had not obtained legal advice, is it appropriate to draw an adverse inference with respect to willful infringement?

The answer, again, is "no." The issue here is not of privilege, but whether there is a legal duty upon a potential infringer to consult with counsel, such that failure to do so will provide an inference or evidentiary presumption that such opinion would have been negative.

Dana Corporation did not seek independent legal advice, upon notice by Knorr-Bremse of the pendency of the '445 application in the United States and of the issuance of the '445 patent, followed by the charge of infringement. In tandem with our holding that it is inappropriate to draw an adverse inference that undisclosed legal advice for which attorney-client privilege is claimed was unfavorable, we also hold that it is inappropriate to draw a similar adverse inference from failure to consult counsel. The amici curiae describe the burdens and costs of the requirement, as pressed in litigation, for early and full study by counsel of every potentially adverse patent of which the defendant had knowledge, citing cases such as Johns Hopkins Univ. v. Cellpro, Inc., 152 F.3d 1342, 1364 (Fed. Cir. 1998), wherein the court held that to avoid liability for willful infringement in that case, an exculpatory opinion of counsel must fully address all potential infringement and validity issues. Although other cases have imposed less rigorous criteria, the issue has occasioned extensive satellite litigation, distorting the "conceptual underpinnings" of Underwater Devices and Kloster Speedsteel. Although

there continues to be "an affirmative duty of due care to avoid infringement of the known patent rights of others," L.A. Gear Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1127 (Fed. Cir. 1993), the failure to obtain an exculpatory opinion of counsel shall no longer provide an adverse inference or evidentiary presumption that such an opinion would have been unfavorable.

## QUESTION 3

> If the court concludes that the law should be changed, and the adverse inference withdrawn as applied to this case, what are the consequences for this case?

### A

The district court based its willfulness determination on several factors in addition to the adverse inference arising from the assertion of attorney-client privilege by Haldex and the failure of Dana to obtain legal advice. This court has explained that "there are no hard and fast per se rules" with respect to willfulness of infringement. Rolls-Royce, 800 F.2d at 1110. Precedent illustrates various factors, some weighing on the side of culpability and some that are mitigating or ameliorating. See Read v. Portec, supra.

The district court found, on the evidence presented, that literal infringement by the Mark II brake was reasonably clear and did not present close legal or factual questions. As for the validity of the '445 patent, the court found that "given the quantity and quality of the evidence presented by defendants at trial on the issues of obviousness and indefiniteness, it cannot fairly be said that defendants, throughout the litigation, had a good faith belief that the '445 patent would ultimately be found invalid on these grounds." Knorr-Bremse II, 133 F. Supp. 2d at 863. The court also found that the appellants failed to take prompt remedial action to terminate infringement after the

judgment of literal infringement by the Mark II, stating that "Dana deliberately yielded to market pressures in deciding to continue using the infringing Mark II air disk brakes on test vehicles pending future receipt of replacement Mark III air disk brakes." Id. The court also found that "although Haldex indeed developed the Mark III air disk brake in a good faith effort to design around the '445 patent, Haldex nonetheless continued to use the Mark II air disk brake throughout the redesign effort, including displaying Mark II air disk brakes at various automotive conferences in the United States and distributing Mark II promotional literature to potential customers at these conferences," id.; the court also noted that infringement was not then enjoined. Knorr-Bremse III, at 2.

The district court also considered Haldex's invocation of the attorney-client privilege in order to withhold its opinions of counsel, and Dana's failure to obtain an independent legal opinion despite the warning and notice of infringement. The appellants argue that but for the adverse inference of unfavorable opinions drawn from these actions, the finding of willfulness of infringement is not supported. Knorr-Bremse responds that willful infringement is well supported by the remaining findings. Because elimination of the adverse inference as drawn by the district court is a material change in the totality of the circumstances, a fresh weighing of the evidence is required to determine whether the defendants committed willful infringement. This determination is the primary responsibility and authority of the district court. We therefore vacate the finding of willful infringement and remand for redetermination of the issue.

Several amici curiae raised the question of whether the trier of fact, particularly a jury, can or should be told whether or not counsel was consulted (albeit without any inference as to the nature of the advice received) as part of the totality of the

circumstances relevant to the question of willful infringement. The amici pointed to various hypothetical circumstances in which such information could be relevant, even when there was no issue of attorney-client privilege. That aspect is not raised by this case, was not before the district court, and has not been briefed on this appeal. Today we resolve only the question of whether adverse inferences of unfavorable opinions can be drawn, and hold that they can not.

### B

The appellants also argue that the award of attorney fees is a matter of punitive damages, and is therefore improper. Precedent and statute do not support this position. 35 U.S.C. §285 provides that "the court in exceptional cases may award reasonable attorney fees to the prevailing party"; and the court has confirmed that a finding of willful infringement may qualify a case as exceptional under §285. See, e.g., Modine Mfg. Co. v. The Allen Group, Inc., 917 F.2d 538, 543 (Fed. Cir. 1990). That there were not actual damages does not render the award of attorney fees punitive. Attorney fees are compensatory, and may provide a fair remedy in appropriate cases. Upon a finding of willful infringement, the award of attorney fees is within the district court's sound discretion.

In view of our vacatur of the finding of willful infringement, the award of attorney fees is also vacated. On remand the award may be reconsidered, should the judgment of willful infringement be restored.

### QUESTION 4

> Should the existence of a substantial defense to infringement be sufficient to defeat liability for willful infringement even if no legal advice has been secured?

The answer is "no." Precedent includes this factor with others to be considered among the totality of circumstances, stressing the "theme of whether a prudent person would have sound reason to believe that the patent was not infringed or was invalid or unenforceable, and would be so held if litigated," SRI Int'l, Inc. v. Advanced Tech. Labs. Inc., 127 F.3d 1462, 1465 (Fed. Cir. 1997). However, precedent also authorizes the trier of fact to accord each factor the weight warranted by its strength in the particular case. We deem this approach preferable to abstracting any factor for per se treatment, for this greater flexibility enables the trier of fact to fit the decision to all of the circumstances. We thus decline to adopt a per se rule.

II

THE CROSS APPEAL

The district court rejected Knorr-Bremse's request for destruction of the technical data that were obtained by the appellants for the Haldex air disk brakes. The court found that much of the data were obtained before issuance of the patent, and that some of the data relate to non-infringing aspects including design-around efforts and safety studies. Knorr-Bremse III, at 2. We do not discern reversible error in the court's decision of this issue. That decision is affirmed.

SUMMARY

An adverse inference that a legal opinion was or would have been unfavorable shall not be drawn from invocation of the attorney-client and/or work product privileges or from failure to consult with counsel. Contrary holdings and suggestions of precedent are overruled.

This case is remanded for redetermination of the issue of willful infringement and any remedy therefor.

Costs

Each party shall bear its costs.

<u>**VACATED AND REMANDED; CROSS-APPEAL AFFIRMED**</u>